Petition No. _____

IN THE UNITED STATES COURT
OF APPEALS FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., and CHRISTOPHER YOUNG | )<br>)<br>)<br>) |
| Petitioners, | )<br>) |
| v. | )<br>) |
| US DRUG ENFORCEMENT ADMINISTRATION; MERRICK B. GARLAND, Attorney General of the United States of America; ANN MILGRAM, Acting Administrator of the U.S. Drug Enforcement Administration, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Respondents. | )<br>) |

**PETITION FOR REVIEW**

Pursuant to 21 U.S.C. § 877 and Fed.R.App.P. Rule 15, Petitioners SOUL QUEST CHURCH OF MOTHER EARTH, INC., et al. [hereinafter "Soul Quest"] and CHRISTOPHER YOUNG [hereinafter "Young"], hereby petition for review of the Drug Enforcement Authority's [hereinafter "DEA'] final agency action issued on April 16, 2021 [hereinafter "Agency Action"]. A true and correct copy of the Agency Action is attached hereto as Exhibit 1 [hereinafter "Final Agency Decision"].

This Petition for Review [hereinafter "Petition"] regards the incapacity of the DEA to comply with the provisions of the Religious Freedom Restoration Act [hereinafter "RFRA"], 42 U.S.C. § 2000bb, *et seq.*, as well as the Administrative Procedures Act [hereinafter "APA"], 5 U.S.C. § 553, *et seq.* This incapacity by the DEA – especially, in terms of the instant Petition for Review – is anchored on the clear pronouncements of the other, co-equal branches of Government (both legislative and judicial).

Moreover, this Petition for Review is further affixed to the fundamental incapacity – procedurally and substantively – of this executive agency, the DEA, to scrutinize and determine matters impacting the fundamental constitutional rights and related statutory protections of the Petitioners.

In the case-at-bar, the Petitioners assert that the Respondents are not legally empowered to render determination on the *major issue* arising in the case-at-bar: the sincerity of the Petitioners' religious beliefs; the Respondents wholly and absolute lack the core competency on issues involving such a transformative issue: the sincerity of the Petitioners' religious beliefs and practices.

Further, as pertains directly to the Agency Action, has demonstrated such incapacity, all while exercising such authority in an arbitrary and capricious manner, and in complete deviation from established law. Likewise, the Respondents' actions are contrary to a constitutional right, power, privilege or immunity; in excess of

2

statutory jurisdiction, authority, limitation or short of statutory right; without observance of procedure required by law; and/or otherwise unsupported by substantial evidence.

Underlying the failure of the Respondents' exercise of authority in this matter is Congress' clear instructions pursuant to its passage of RFRA. In section 2, Congress issued specific findings and a declaration of its purpose for RFRA's passage including, in relevant part:

    1. References to the Constitution's Framers as "recognizing free exercise of religion as an unalienable right," as secured by First Amendment protection.

    2. "[G]overnments should not substantially burden religious exercise without compelling justification."

    3. "[T]he compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests."

42 U.S.C.A. § 2000bb

Thereafter, Congress declared that RFRA was designed to (a) restore the "compelling interest test set for in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and *to guarantee its application in all cases where free exercise of religion is substantially burden*; and (b) to provide a claim or defense to persons whose religious exercise is substantially burdened by government." *Id*. (Emphasis added).

3

Later, at sec. 3 of RFRA, Congress declared the branch of government capable of adjudicating issues under RFRA: the judiciary. 42 U.S.C.A. § 2000bb. The judiciary is the exclusively the only branch designed to adjudicate relief against the government for claims that the latter has burdened religious exercises.

Section 6 of RFRA 'supercharges' the statute, stating that "[t]his Act applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after the enactment of this Act." 42 U.S.C. § 2000bb. Furthermore, Congress provided that "[n]othing in this Act shall be construed to authorize any government to burden any religious belief." 42 U.S.C. § 2000bb.

Effectively, RFRA, its affirmative protections and its delegation of review to the judiciary, supersedes any other expressions of authority to determine the exercise of religious beliefs. This position was reaffirmed by the Supreme Court's ruling in *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) [hereinafter "*UDV*"].

In *UDV*, the Supreme Court recognized that – in a case also involving the DEA's unlawful efforts to regulate psychotropic substances under the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. [hereinafter "CSA"] – the DEA's burden of not encroaching upon the protected religious freedoms safeguarded under RFRA. *UDV*, at 432. Further, the *UDV* Court recognized the 'super-charged' nature of

4

RFRA, asserting that RFRA contemplates religious exemptions to prohibited substances under the CSA. *UDV*, at 433.

> As Chief Justice Roberts, writing for the Court in *UDV* remarked:
>
> "the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance. *See* 42 U.S.C. § 2000bb(a)(4). And in fact, the Government has not offered evidence demonstrating that granting the *UDV* an exemption would cause the kind of administrative harm recognized as a compelling interest in *Lee*, *Hernandez*, and *Braunfeld*."
>
> *UDV*, at 436-37.

Later, the *UDV* Court further rejected the Government's repeated invocations to Congressional findings and purposes underlying the CSA and asserted that:

> "Congress had a reason for enacting RFRA, too. Congress recognized that "laws `neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise," and legislated "the compelling interest test" as the means for the courts to "strik[e] sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. §§ 2000bb(a)(2), (5)."
>
> *UDV*, at 439.

In short, the Respondents are quite familiar with its failings to adhere to Congress' RFRA mandate; however, the Respondents keep returning to the woodshed to attempt to carve out new methods to undermine RFRA protections.

The Respondents do so despite internal guidance memoranda instructing them not to encroach on religious freedoms. In October 2017, Attorney General Jeff Sessions issued an internal directive to the Department of Justice, titled "Federal

5

Law Protections for Religious Liberty," attached hereto as Petitioners' <u>Exhibit 2</u>. In this Memorandum, Attorney General Sessions made no 'bones' about the RFRA prohibition on the Executive Branch in attempting to interfere with or 'second-guess' an individual's sincere religious beliefs. Specifically, Attorney General Sessions directed that:

> "[The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition. Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is not competent to assess the reasonableness of such lines drawn, nor would it be appropriate for government to do so. Thus, for example, a government administration may not second-guess the determination of a factory worker that, consistent with his religious precepts, he can work on a line producing steel that might someday make its way into armaments but cannot work on a line producing the armaments themselves. Nor may the Department of Health and Human Services second-guess the determination of a religious employer that providing contraceptive coverage to its employees would make the employer complicit in wrongdoing in violation of the organization's religious precepts."
>
> *Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4.

It would seem that the Respondents should understand how it has overstepped all legal authority in its issuance of its Agency Action. Indeed, in 2021 – the same year as its issuance of its Agency Action, herein, the DEA embraced the arguments that it lacked specific statutory authority to take action pursuant to the authority it is now purporting to wield in the case-at-bar: the CSA.

6

*Advanced Integrative Medicine Science Institute v. DEA*, Docket No. 21-70544 (9th Cir. 2021) [hereinafter, "*AIMS*"], involves a challenge to an administrative ruling involving the compassionate use of psilocybin. The DEA, in a non-religious, non-RFRA context, refused to grant an exemption are what have been deemed "Right to Try" [hereinafter "RTT"] laws. In refusing to grant such an exemption, the DEA has asserted – in materials filed with the Ninth Circuit – that "absent an explicit statutory exemption to the Controlled Substances Act (CSA), DEA has no authority to waive any of the CSA's requirements to the RTT [Act]." *AIMS*, *supra*, at ECF No. 18, pp. 16-17 (Petitioner's Opening Brief, quoting DEA correspondence); ECF No. 19, pp. 8-9 (correspondence of DEA Deputy Asst. Administrator Diversion Control Division Thomas Prevoznik).

Indeed, this approach of DEA (as articulated by it in the *AIMS* case) appears consistent with an approach from at least one earlier case. See *Olsen v. DEA*, 878 F.2d 1458, 1460-61 (D.C. Cir. 1989) ("[u]ltimately, the courts cannot escape the obligation to address his plea that the exemption he seeks in mandated by the first amendment's religion clauses"). If so, then DEA in the case-at-bar, is certainly flexing authority which it – in no fashion possesses.

Further bolstering the Petitioners' assertion that the Respondents are engaged in arbitrary and capricious action, as well as one exceeding any lawful authority, is the fact that it issued its Agency Action, herein, without ever adhering to the

7

requirements of the Administrative Procedures Act, 5 U.S.C. § 553, *et seq.* ("APA"). Where, as asserted above, RFRA accords no authority to the Executive Branch to exercise authority to make determinations under RFRA, it would be expected that the Respondents – in rebuttal – might assert that it has promulgated regulations pursuant to the requirements of the APA. However, no such regulations exist.

Rather, the Respondents only present its one and one-half (1½) page "RFRA Guidance." For such a critical issue, implicating fundamental constitutional rights, and under the assertion (albeit unlawful) of authority under the 'super-charged' RFRA statute, it is impossible that the Respondents now choose to issue its "Agency Action," without publicly consulting, promulgating and subjecting for Congressional approval regulations that it purports would somehow authorize it to take the action it did, herein.

Yet, nothing exists. Instead, the Respondents acted in ad hoc form – arbitrarily and capriciously concocting unpublished, unknown standards upon which Respondents feel it can take action – both under CSA and RFRA – with petitions for religious exemptions. In addition, the facts underlying the Respondents' issuance of its Agency Action are important to briefly raised in the instant Petition for Review.

In May 2020, the Petitioners filed their lawsuit against the Respondents in the Middle District of Florida (Case No. 6:20-cv-000701-WBB-DCI). At that time, the Petitioners had been waiting for the Respondents – since August 2017 – to respond

8

to its request for a religious exemption. Following the filing of their lawsuit, the Respondents requested that the matter be stayed so as to engaged in settlement discussions.

The Petitioners entered into such discussions with the Respondents in good-faith, believing that it would drive a case resolution. Unbeknownst to the Petitioners, the Respondents were surreptitiously engaging in a different process – one resulting in the Respondents' surprise issuance of its Agency Action, as well as their argument that continued action before the Middle District of Florida was no longer valid, but that – now – jurisdiction rested exclusively in the Eleventh Circuit and through the process underlying the filing of this Petition for Review.

The Respondents' filed a Motion to Dismiss the Middle District of Florida action; the Petitioners' contested this Motion. Unfortunately, on March 4, 2022, the District Court granted the Respondents' Motion to Dismiss – ordering that:

> "because the DEA has provided a final decision that rests, at least in part, on a determination under the CSA that is separate and apart from any decisions under RFRA, it appears that this Court is divested of jurisdiction pursuant to § 877 over that determination, which is inextricably intertwined with the issues raised and the relief requested in this case. Thus, this case must be dismissed for lack of jurisdiction."
>
> Order at 6, *Soul Quest Church of Mother Earth, et al, v. U.S. Durg Enforcement Administration, et al*, 6:20-cv-000701-WWB-DCI, (M.D. Fla. March 4, 2022) (ECF No. 74).

That ruling is presently the subject of a separate, notice of appeal, being contemporaneously filed before the Eleventh Circuit. Notwithstanding, in order to

9

preserve Eleventh Circuit review, herein, the Petitioners are also pursuing the instant relief.

In closing, Petitioners re-assert their request that the Eleventh Circuit review the final agency decision rendered by Respondents on the grounds that it is arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law; that it is contrary to constitutional right, power, privilege or immunity; that it is in excess of statutory jurisdiction, authority or limitations, or short of statutory right; that it lacks adherence to procedure required by law; and/or it is otherwise unsupported by substantial evidence.

Petitioners respectfully request that this Court hold unlawful, vacate, and enjoin the final agency decision and mandate that, pursuant to RFRA, *supra*; the APA, *supra*; and controlling jurisprudence that the Respondents' decision be

reversed and that the Respondents be instructed to expeditiously issue the requested religious exemption.

Respectfully submitted this 4th day of April, 2022.

*s/Derek B. Brett, Esq.*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Petitioners

s/A. Brian Phillips, Esq.
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Telecopier: (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Petitioners

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed.R.App.P. 26.1, the undersigned counsel of record for Soul Quest Church of Mother Earth, Inc. ("Soul Quest Church") hereby certifies that Soul Quest Church is a registered, not-for-profit entity and does not have any parent companies, subsidiaries, or affiliates that have issued shares to the public.

Respectfully submitted this 4th day of April, 2022.

*/s/ Derek B. Brett, Esq.*
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email: dbb@burnsidelaw.net
Counsel for Petitioners

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Petition for Review and Corporate Disclosure Statement has been filed with the Court via the Court's electronic filing system, and that a true and correct copies of the foregoing was sent to the Clerk's Office for service on to the following parties pursuant to Fed.R.App.P. Rule 15(c)(3):

The Honorable Merrick Garland
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Anne Milgram
Administrator, Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

Chief Counsel
Office of General Counsel
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

*s/A. Brian Phillips, Esq.*
A. Brian Phillips, P.A.