UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

PETITION NO. 22-11052

_____

_____

SOUL QUEST CHURCH OF MOTHER EARTH, INC., AND
CHRISTOPHER YOUNG,

PETITIONERS,

VS.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA, AND ANNE MILGRAM, ADMINISTRATOR OF THE
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,

RESPONDENTS.

_____

PETITION FOR REVIEW OF AGENCY DECISION

_____

BRIEF OF PETITIONERS, SOUL QUEST CHURCH
OF MOTHER EARTH, INC., AND CHRISTOPHER YOUNG

_____

Derek B. Brett, Esq.
Fla. Bar No. 0090750
BURNSIDE LAW GROUP
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Lead Counsel for Petitioners

A. Brian Phillips, Esq
Fla. Bar No. 0067113
A. BRIAN PHILLIPS, P.A.
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Local Counsel for Petitioners

## PETITIONERS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-3, the undersigned hereby certifies that the following persons and entities have an interest in the outcome of this case:

1.    Arnold, James, DEA Investigating Unit Chief;

2.    Barkley, Mary, former associate attorney at the firm of A. Brian Phillips, P.A. and former co-counsel for Petitioners;

3.    Berger, Wendy W., United States District Court Judge;

4.    Brett, Derek B., Attorney for Petitioners;

5.    Gaffney, Michael James, United States Attorney;

6.    Graumlich, James, DEA Agent;

7.    Hancock, Kevin P., Former Attorney for Respondents;

8.    Irick, Daniel C., United States Magistrate Judge;

9.    McDermott, William, DEA Assistant Administrator - Diversion Control Division;

10.    Moreno, Karen, DEA Agent;

11.    Phillips, Andrew Brian, attorney for Petitioners;

12.    Straus-Harris, Julie, United States Attorney;

13.    Sturgill, Lowell V., United States Attorney;

14.    Young, Christopher, Petitioner;

15.    Young, Verena, Officer and Member of Soul Quest Church of Mother Earth, Inc.,

No publicly traded company or corporation has an interest in the outcome of this appeal.

| | |
|---|---|
| *s/Derek B. Brett, Esq.* | s/A. Brian Phillips, Esq. |
| **DEREK B. BRETT, ESQ.** | **A. BRIAN PHILLIPS, ESQ.** |
| Fla. Bar No. 0090750 | Fla. Bar No. 0067113 |
| **BURNSIDE LAW GROUP** | **A. BRIAN PHILLIPS, P.A.** |
| 202 Brownlow Avenue, Suite 400 | 912 Highland Avenue |
| Dartmouth, NS, Canada B3B 1T5 | Orlando, Florida 32803 |
| Telephone: (902) 468-3066 | Telephone: (407) 872-0777 |
| Telecopier: (902) 468-4803 | Telecopier: (407) 872-0704 |
| Email:dbb@burnsidelaw.net | Email: |
| Lead Counsel for Petitioners | Brian.Phillips@Phillips-Law-Firm.com |
| | Local Counsel for Petitioners |

## STATEMENT REGARDING ORAL ARGUMENT

Petitioners SOUL QUEST CHURCH OF MOTHER EARTH, INC., and CHRISTOPHER YOUNG, respectfully request that this Court permit oral argument in this case pursuant to Fed.R.App.P. 34(a)(1). Petitioners believe that an oral presentation offering the opportunity to expand on both the intricate nature of the underlying factual predicate in this matter and the intricate legal analysis that flows from the same would afford the Court valuable aid in its decisional process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . C-1-C-2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A.    Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Statement of the Standard of Review . . . . . . . . . . . . . . . . . . . . . .6

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT AND CITATIONS OF AUTHORITY . . . . . . . . . . . . . . . . . . . . .8

    A.    The DEA Has No Authority Whatsoever to Rule Upon Petitions for Religious Exemption. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    The DEA Attempted to Supersede the Courts' Authority to Review Petitions for Religious Exemption Under RFRA. . . . . . . . . . . . . . . .14

    C.    Assuming the DEA had the Authority to Review and Issue/Deny a Petition for Religious Exemption, the DEA Failed to Properly Review the Petitioners' Request for the Same. . . . . . . . . . . . . . . . . . . . . . . .18

    D.    In the Alternative, Petitioners' Request that this Court Review this Petition Under the Guise of 28 U.S.C. § 1631 . . . . . . . . . . . . . . . . . .21

ii

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## Table of Citations

**Cases**                                            **Page(s)**

Advanced Integrative Medicine Science Institute vs. DEA, Docket No. 21-70544
(9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020) . . . . . . . . . . . . . . . 15

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) . . . . . . . . . . . . . . 14-15

Cath. Diocese of Beaumont v. Sebelius, 10 F.Supp.3d 725 (E.D. Tex. 2014). . . . . 17

Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210 (D. Or.
2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,16-17

Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 874
(1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal, 546 U.S. 418
(2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,8-9,16

McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991) . . . . . . . . . . . . . . .11

O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 282 F. Supp. 2d 1236
(D. N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Olsen v. DEA, 878 F.2d 1458 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 10

Soul Quest Church of Mother Earth, *et al, v.* Garland, *et al*, 6:20-cv-000701-WWB-
DCI, (M.D. Fla. April 22, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7,13,20-21

*W. Virginia v. Envtl. Prot. Agency*, 20-1530, 2022 WL 2347278, (U.S. Feb. 28, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes, Legislative History, and Rules**

5 U.S.C. § 551. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5

5 U.S.C. § 553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11-12

21 U.S.C. § 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

21 U.S.C. § 877 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii,6-7,11,13,16,20-21

28 U.S.C. §1631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. § 2000bb. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5-6,9,12,14-16

11th Cir. R. 26.1-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

11th Cir. R. 26.1-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Fed. R. App. P. 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii,6

Fed. R. App. P. 26(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Fed. R. App. P. 32(a)(7)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. App. P. 32(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. App. P. 34(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**Other Authorities**

Office of the Attorney General, *Federal Protections for Religious Liberty*, (Oct. 6, 2017) https://web.archive.org/web/20220319150915https://www.justice.gov/opa/press-release/file/1001891/download. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17-18

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The following brief and petition for review is made pursuant to 21 U.S.C. § 877 and Fed.R.App.P. Rule 15, wherein the Petitioners' petition this Court for review of the Drug Enforcement Authority's [hereinafter "DEA'] final agency action issued on April 16, 2021 [hereinafter "Agency Action"].

## STATEMENT OF THE ISSUES

The Petitioners assert the following as issues:

1.      Whether the Respondents have the authority to issue and/or enforce the Agency Action in question.

2.      Whether Respondents' agency action was a legitimate and sufficient review of the Petitioners' request for religious exemption.

## STATEMENT OF THE CASE

### A.      Course of the Proceedings and Disposition Below

Petitioners SOUL QUEST CHURCH OF MOTHER EARTH, INC. (hereinafter, "Soul Quest Church"), and CHRISTOPHER YOUNG (hereinafter, "Young") commenced proceedings before the United States District Court, Middle District of Florida, on April 22, 2020.  This lawsuit had followed a three (3) year period where Soul Quest Church had filed a "Petition for Religious Exemption" with Respondent, Drug Enforcement Administration (hereinafter, "DEA"), but had received neither response, update, nor input regarding the same.

The underlying basis for the Petitioners' Initial Complaint, and its later amendments, involved Respondents' failure to issue a "religious exemption" to permit for the Petitioners' practicing of their sincere religious beliefs involving the sacramental use of ayahuasca.  Ultimately, through multiple permitted amendments to the Initial Complaint, the Petitioners' underlying cause(s) of action in their

1

District Court matter remained as follows:

1.    Respondents' RFRA violations, as premised upon their assertion of RFRA jurisdiction over the Petitioners' sincere religious practices involving the sacramental use of ayahuasca.

2.    The Respondents' violations of the provisions of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* [hereinafter, "APA"], as premised upon Respondents' assertion of jurisdictional authority to render decision making under Religious Freedom Restoration Act [hereinafter, "RFRA"], 42 U.S.C. § 2000bb, *et seq.*; the absence of written regulations subject to public review and comment; and the lack of any congressional approval for any such regulatory authority.

3.    The Respondents' violations of the First Amendment's Free Exercise Clause, as premised by its abridgement of the Petitioners' rights to practice their sincere religious beliefs through the sacramental use of ayahuasca.  Third Amended Complaint, *Soul Quest v. Garland*, (M.D. Fla. July 22, 2021) (ECF No. 59).

**B.    Statement of the Facts**

Petitioner Soul Quest Church is a church whose members engage in the ritual use of sacramental ayahuasca during religious ceremonies held at the Church's location in Orange County, Florida.  Petitioner Young is both a member of Soul

2

Quest Church and its spiritual leader.  This case touches on a grave, serious matter concerning the religious freedom rights of a small church, which Respondents have obliterated.  The crux of this case involves Respondents' attempts to interfere with and deny Petitioners' religious exercise with ayahuasca, a brew made from the *Banisteriopsis caapi* vine and the *Psychotria viridis* shrub, and widely used in ceremonial settings during religious exercises both domestically and abroad. The underlying religious and historic significance of ayahuasca to Soul Quest Church and its members has been described throughout this litigation, and within materials previously submitted to the DEA.

The sincerity of religious exercise with ayahuasca has been uniformly upheld by the courts.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (hereinafter, *"O Centro")*; *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009).  As such, the DEA has consistently viewed religious exercise with ayahuasca as a low law enforcement priority and one devoid of issues related to diversion, or health and safety to religious adherents or members of the general public.

On approximately August 1, 2016, Petitioner, Soul Quest Church, received written correspondence from Respondent, DEA, advising Soul Quest Church to apply for a religious exemption to the CSA, or otherwise risk prosecution. Subsequently, in August 2017, Soul Quest Church filed an "application for religious

exemption."  The only guidance from the DEA – purporting to act under color of lawful authority – pertaining to the "process" of filing for a religious exemption was a 1½ page item located on the DEA's website and titled "*Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act*" (hereinafter, "DEA RFRA Guidance"). (Emphasis added).  No other "process" exists from DEA (or any identifiable source) on this purported religious exemption process, nor was any additional process or guidance ever asserted by Respondents throughout the course of the underlying litigation.

Soul Quest Church's application for religious exemption provided a comprehensive understanding of the religious foundations of Church beliefs; its religious practices; the sacred nature of ayahuasca; and the protocols in place to ensure the safe use and the security over the ayahuasca blended for use as a ritual tea.  Over the course of the ensuing three (3) years, DEA failed to take action on or communicate with Petitioners as to the merits of their petition.

Over this period, from initial receipt of the DEA's 2016 correspondence, through the filing of the August 2017, application, and up to and including the present, Petitioners have lived under constant fear that the practice of their sincere religious beliefs via the ayahuasca sacrament would result in DEA criminal enforcement action.  From the initial outset of the Petitioners' initial petition to the

4

DEA and until April 2021, Respondents maintained the façade that Petitioners were engaged in a settlement negotiation process, albeit while refusing to discuss any mutual strategy or guidelines to achieve positive case resolution with the issuance of some form of "religious exemption." Further, the DEA failed to engage the Petitioners or any of Soul Quest Church's members on any level pertaining to the sincerity of their religious beliefs.  Instead, the DEA was represented by and through two (2) DEA agents lacking any ability to assess and understand religious practices. Indeed, these agents focused their inquiries with Soul Quest Church, and one of its lawyers, on 'control-diversion' aspects, which are purportedly designed to limiting the prospect of ayahuasca being readily accessed by persons not immediately engaged in use for religious sacramental purposes.

Consequently, by issuing their DEA Denial Letter under the factually and legally questionable rubric of a "Final Agency Decision," Respondents violated the Petitioners' rights as articulated under RFRA and the First Amendment, and contrary to Respondents' own internal guidelines.  Respondents seized powers to act under the RFRA, despite no congressional grant of authority, specific or otherwise; no published regulations by Respondents; no submission by Respondents to APA requirements; no public comment on, or distribution of any guidelines for DEA's review; and all while cloaking their actions from the District Court and Petitioners under the false notion of negotiating mutual terms for resolution of the matter.

### C.    Statement of the Standard of Review

Under 21 U.S.C. § 877 and Fed.R.App.P. Rule 15, this Court has the authority to review what is determined to be a final agency decision[1].

### SUMMARY OF THE ARGUMENT

Petitioners respectfully submits that the Respondents' denial of the Petitioners' request for religious exemption be vacated by the Eleventh Circuit. Specifically, Petitioners state that in light of the DEA's total lack of authority to rule upon petitions for religious exemptions, Respondents' routine actions amounts to a violation of the Administrative Procedures Act, RFRA's nature as a "super-statute" and its jurisdictional clause, and the Major Rules Doctrine, and, as a result, should not be allowed to stand.

This Petition for Review [hereinafter, "Petition"] regards the incapacity of the DEA to comply with the provisions of RFRA as well as the APA.  This incapacity by the DEA – especially, in terms of the instant Petition for Review – is anchored on the clear pronouncements of the other, co-equal branches of Government (both legislative and judicial).

---

[1]The Petitioners argue that, until the District Court made a final determination on the underlying Lawsuit, no 'final agency determination' could have been properly issued.  Therefore, under 21 U.S.C. § 877 and Fed.R.App.P. Rule 15, the Petitioners' deadline for filing a petition for review of the DEA's Final Agency Decision was April 4, 2022, the date of the filing of the instant Petition.

Moreover, this Petition for Review is further affixed to the fundamental incapacity – procedurally and substantively – of this executive agency, the DEA, to scrutinize and determine matters impacting the fundamental constitutional rights and related statutory protections of the Petitioners.

In response to the Petitioners' attempts at identifying these issues in their Third Amended Complaint in the underlying District Court action following the DEA's Denial Letter, Respondents filed an Amended Motion to Dismiss, raising similar arguments to those advanced against Petitioners' Second Amended Complaint.  Motion to Dismiss, *Soul Quest v. Garland*, (M.D. Fla. August 26, 2021) (ECF No. 61).    Generally, Respondents' arguments reflect total reliance upon misperceived strengths of 21 U.S.C. § 877, and the Controlled Substances Act's, 21 U.S.C. § 801, *et seq.* (hereinafter, "CSA"), status as a "neutral law of general applicability." *Id.* at pp. 10-19.

Respondents were not authorized to adjudicate the Petitioners' RFRA claims as the Respondents lack any statutory, regulatory or constitutional authority to do so.  Despite this, the District Court issued an Order granting, the Respondents' Motion to Dismiss the Petitioners' Third Amended Complaint, which, Petitioners have established as a finalization of the Agency Action.  Order at 4-5, *Soul Quest v. Garland*, (M.D. Fla. March 4, 2022) (ECF No. 74).  Consequently, the instant petition followed, as the agency decision had become enforceable.

## LEGAL ARGUMENT

### A. The DEA Has No Authority Whatsoever to Rule Upon Petitions for Religious Exemption

In the case at bar, the DEA's Denial Letter is premised upon the existence of a "framework" that, it claims, allows it to accept, and render decisions upon, petitions for religious exemption. DEA Denial Letter, at p. 1. The DEA sources this "framework" to RFRA, a guidance memorandum from the Attorney General titled "Federal Protections for Religious Liberty"[2] ("AG Memorandum"), *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418 (2006) ("*UDV*"), the DEA's own "Guidance," and "subsequent case law." *Id.* However, as will be demonstrated, *none of these authorities* permit the DEA to accept, review, or make any decision whatsoever upon any petition for religious exemption.

The DEA alleges that the AG Memorandum somehow grants it the authority to rule upon petitions for religious exemption. DEA Denial Letter, at p. 1. However, at no point in the document does the Attorney General mention the DEA, religious exemptions to the CSA, ayahuasca, or give any authority to any agency whatsoever. *See* AG Memorandum. The DEA also claims that the Supreme Court in *UDV* grants it authority to receive and rule upon petitions for religious exemption. DEA Denial Letter, at p. 1. However, *UDV* itself began with a filing in a district court, and *not* a

---

[2]https://web.archive.org/web/20220319150915/https://www.justice.gov/opa/press-release/file/1001891/download (accessed on 20220518).

petition for a religious exemption. *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1236 (D. N.M. 2002). Furthermore, *nothing* in the *UDV* decision references, empowers, or in any other way *enables* the DEA to receive and render decisions upon petitions for religious exemption.

Further, the DEA claims that its own Guidance permits it to receive petitions for religious exemption. DEA Denial Letter, at p. 1. The Guidance itself states that the authority for *its* issuance arises from RFRA and *UDV*; however, as discussed, *supra*, neither RFRA or *UDV* support, reference, or empower the DEA to receive and render decisions upon petitions for religious exemption.

In light of the above, the DEA's reference to "subsequent case law" as being a basis for its authority to receive, and render decisions upon, petitions for religious exemption, is, at best, a general catch-all. DEA Denial Letter at p. 1. Also, the DEA has never set forth what these "subsequent case[s]" are, nor has it ever sought to cite any basis for its authority to rule on petitions for religious exemption. Accordingly, the DEA cannot rely upon this mysterious, ambiguous citation to "subsequent case law" for any basis of authority.

In *Advanced Integrative Medicine Science Institute vs. DEA*, 21-70544 (9th Cir. 2021) (hereinafter, "*AIMS v. DEA*") the plaintiffs were challenging an administrative ruling involving the compassionate use of psilocybin. In the DEA's refusal to grant an exemption under what are deemed "Right to Try" laws, the DEA

asserted that "absent an explicit statutory exemption to the Controlled Substances Act (CSA), DEA *has no authority to waive any of the CSA's requirements*...." Petitioner's Brief at 16-17, DEA Correspondence, at 8-9, *AIMS v. DEA*, (9th Cir. May 11,14, 2021) (ECF Nos. 18, 19) (Emphasis added).[3] At a minimum, the DEA's assertion in *AIMS v. DEA* is consistent with its approach taken in earlier case challenges. *See Olsen v. DEA*, 878 F.2d 1458, 1460-61 (D.C. Cir. 1989).[4]

DEA's incongruous approach between what the Respondents assert in the case-at-bar, versus what it asserts in *AIMS v. DEA*, demonstrates the Respondents' propensity to argue whatever it requires to justify its end game. Whereas Respondents assert, herein, that the DEA strongly asserts its authority to rule on a subject where there is *no* Congressional grant of authority (specifically, as pertains to religious uses of controlled substances), in *AIMS v. DEA*, the DEA strongly rejected any such authority to rule upon a subject lacking a specific grant of authority by Congress – in any statute or regulation.

---

[3] The DEA makes this assertion under the CSA, where its authority seems rather clear – as opposed to the void of any such authority under the RFRA to make such determinations.

[4]*Olsen* is also notable for then-Judge (later Justice) Ginsberg's acknowledgment that "even if the DEA were not empowered or obliged to act, Olsen would be entitled to a judicial audience. Ultimately, the courts cannot escape the obligation to address his plea that the exemption he seeks is mandated by the first amendment's religion clauses." *Id.* at 1460.

In *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Court

examined an Immigration & Nationality Act provision that, akin to 21 U.S.C. § 877,

provided only a single level of review in the courts of appeals. The District Court

explained its ruling on retained jurisdiction to hear constitutional and statutory

challenges to INS procedures:

> it is unlikely that a court of appeals would be in a position
> to provide meaningful review of the types of claims raised
> in this litigation. Not only would a court of appeals most
> likely not have an adequate record but it also would lack
> the factfinding and record-developing capabilities of a
> federal district court. [S]tatutes that provide for only a
> single level of judicial review in the court of appeals "are
> traditionally viewed as warranted only in circumstances
> where district court factfinding would unnecessarily
> duplicate an adequate administrate record--circumstances
> that are not present where district court fact-finding is
> essential given the inadequate administrative record.

*Id.* at 497 (citation omitted).

*McNary* demonstrates that forcing the instant petition to be reviewed by the

Appellate Court is not the correct path, and the Petitioners' instant attempts to have

a District Court review the legitimacy of their petition is the favored route.

Further bolstering the Petitioners' assertion that the Respondents are engaged

in arbitrary and capricious action, as well as one exceeding any lawful authority, is

the fact that it issued its Agency Action, herein, without ever adhering to the

requirements of the Administrative Procedures Act. Where, as asserted above,

RFRA accords no authority to the Executive Branch to exercise authority to make

determinations under RFRA, it would be expected that the Respondents – in rebuttal

– might assert that it has promulgated regulations pursuant to the requirements of the APA; however, no such regulations exist.

Further, in congruous approach, the Supreme Court in *W. Virginia v. Envtl. Prot. Agency*, 20-1530, 2022 WL 2347278, (U.S. Feb. 28, 2022),[5] stated that the EPA was not given an express delegation of authority from Congress to create its own 'regulatory scheme,' not dissimilar to the 'regulatory scheme' utilized by the DEA in the instant matter. The Court applied this 'major questions doctrine' and stated as follows:

> *Under this body of law, known as the major questions doctrine, given both separation of powers principles and a practical understanding of legislative intent, the agency must point to "clear congressional authorization" for the authority it claims.*

*Id.*, at *3. (Emphasis added).

Justice Gorsuch continues in a concurring opinion, stating that:

> *When Congress seems slow to solve problems, it may be only natural that those in the Executive Branch might seek to take matters into their own hands. But the Constitution does not authorize agencies to use pen-and-phone regulations as substitutes for laws passed by the people's representatives. In our Republic, "[i]t is the peculiar province of the legislature to prescribe general rules for the government of society." Fletcher v. Peck, 6 Cranch 87, 136, 3 L.Ed. 162 (1810). Because today's decision helps safeguard that foundational constitutional promise, I am pleased to concur.*

*Id.*, at *27. (Emphasis added).

_____

[5]The Supreme Court issued its opinion in this matter on June 30, 2022.

Such a decision is highly relevant and applicable to the instant matter and the viability of the DEA's position – that it had the authority to issue a final agency decision on Petitioners' petition for religious exemption – in its Motion to Dismiss the same in this matter.

Notwithstanding Respondents' strategic maneuvering, the Petitioners assert that, unquestionably, the DEA's decision, herein, is reflecting of *ultra vires* action premised upon a secretive and *ad hoc* process. The DEA possessed no legal authority to issue a final agency determination at all, and certainly no final agency determination could be deemed to have been made during the ongoing Lawsuit. The Respondents' assertions under 21 U.S.C. § 877 are simply another method intended to further its subterfuge.

Unfortunately, on March 4, 2022, the District Court granted the Respondents' Motion to Dismiss the Petitioners' underlying Third Amended Complaint – ordering that:

> because the DEA has provided a final decision that rests, at least in part, on a determination under the CSA that is separate and apart from any decisions under RFRA, it appears that this Court is divested of jurisdiction pursuant to § 877 over that determination, which is inextricably intertwined with the issues raised and the relief requested in this case. Thus, this case must be dismissed for lack of jurisdiction.
>
> Order at 6, *Soul Quest Church of Mother Earth, et al, v. U.S. Durg Enforcement Administration, et al*, 6:20-cv-000701-WWB-DCI, (M.D. Fla. March 4, 2022) (ECF No. 74).

13

That ruling is presently the subject of a separate, notice of appeal, being contemporaneously filed before the Eleventh Circuit. Notwithstanding, in order to preserve Eleventh Circuit review, herein, the Petitioners are also pursuing the instant relief.

**B.      The DEA Attempted to Supersede the Courts' Authority to Review Petitions for Religious Exemption Under RFRA**

Jurisprudence surrounding the Free Exercise Clause of the First Amendment to the United States Constitution was upended in 1990, when the Supreme Court decided the case of *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 874 (1990). This case "largely repudiated the method of analyzing free-exercise claims that had been used in cases like *Sherbert v. Verner* and *Wisconsin v. Yoder*." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 691 (2014) (internal citations omitted). In response to *Employment Div., Dept. of Human Resources of Oregon v. Smith*, the United States Congress passed RFRA three years later. 42 U.S.C. § 2000bb(a)(4).

RFRA operates to explicitly restore the "compelling-interest test as set forth in *Sherbert v. Verner*, and *Wisconsin v. Yoder*." 42 U.S. Code § 2000bb(b)(1). To succeed upon a free-exercise claim under this test, plaintiff[s] must show the existence of three (3) separate elements:

(1)     That the Plaintiff[s]' religious practice has been substantially burdened by a governmental act;

(2)    Once the Plaintiff[s] have demonstrated that their religious practice has been substantially burdened by governmental acts, the Defendants must demonstrate that its actions serve a compelling governmental interest; and

(3)    The Defendants must also show that the governmental acts performed in furtherance of this compelling interest are the least restrictive means available to further that governmental interest.

*Burwell*, 573 U.S. at 705.

For purposes of the issue at hand, a critical feature of RFRA is found at Section (c), providing relief for substantial burden of religious exercise. Under this particular provision, Congress provided for exclusive judicial relief, *to wit*:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense *in a judicial proceeding* and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution. 42 U.S.C. §§ 2000bb-1(c).

(Emphasis added). In other words, nowhere within RFRA was it anticipated that the DEA would be vested with the power and authority to determine which adherents are entitled to a religious exemption.

RFRA is "a kind of super-statute." *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1754 (2020). Accordingly, the protections granted under RFRA apply to "all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. §

2000bb-3. As 21 U.S.C. § 877 is a federal law, RFRA protections apply to limit any conflicting scope and requires other statutes to yield to RFRA's clear language.

A key RFRA protection is the right to seek *judicial* relief for an alleged violation 42 U.S.C. § 2000bb-1(c). Further, standing to bring an RFRA claim "shall be governed by the general rules of standing under Article III of the Constitution," and *not* 21 U.S.C. § 877, the DEA's preferred statute, herein. *Id*. The seminal case involving RFRA protection from Government efforts to curb religious institution and its members' right to engage in religious-based use of ayahuasca is *UDV*, *supra*; *UDV* has several parallels with the case-at-bar.

As the Supreme Court noted, by enacting RFRA, "Congress has determined that *courts* should strike sensible balances, pursuant to a compelling interest test that requires the Government to address the particular practice at issue." *UDV*, 546 U.S. at 440. (Emphasis added). Thus, RFRA provides that the *courts* are required to conduct this analysis on a case-by-case basis, and not the DEA. *Id*. at 436. This same RFRA procedural mandate has been followed in other cases involving the religious use of ayahuasca-like substances. *See, e.g., Church of Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009) (hereinafter, "CHLQ"). Interestingly, *CHLQ* also began with its plaintiffs attempting to seek a religious exemption, albeit from the Department of Justice and *not* the DEA. *Id*, at p. 1214. However, unlike in the underlying District Court case, once the DOJ had turned

down the *CHLQ* plaintiffs' request, the DOJ did *not* contest the District Court's jurisdiction over the *CHLQ* plaintiffs' RFRA claim. *Id.*

As it stands, under RFRA, Congress provided for one exclusive method for adjudicating such claims: within the courts. Petitioners properly sought court relief in the District Court in the absence of any actual administrative regulatory scheme, and in the wholesale absence of any 'administrative record.' *See Catholic Diocese of Beaumont v. Sebelius*, 10 F.Supp.3d 725, 729, 734-35 (E.D. Tex. 2014) (citing *McNary* in case with RFRA implications and stating that "[s]ince Plaintiffs are alleging interference with important constitutional rights, the court will consider the evidence presented by Plaintiffs"; discussion of significance of Government-imposed substantial burdens).

The Respondents do so despite internal guidance memoranda instructing them not to encroach on religious freedoms. In his AG Memorandum, Attorney General Sessions made no 'bones' about the RFRA prohibition on the Executive Branch in attempting to interfere with or 'second-guess' an individual's sincere religious beliefs. Specifically, Attorney General Sessions directed that:

> [The Religious Freedom Restoration Act] applies to all sincerely held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition. Religious adherents will often be required to draw lines in the application of their religious beliefs, and government is not competent to assess the reasonableness of such lines drawn, nor would it be appropriate for government to do so. Thus, for example, a government administration may not second-guess the determination of a factory worker that, consistent with his religious precepts, he can work on a line producing steel that might someday make its way into armaments but cannot work on a line producing the

armaments themselves. Nor may the Department of Health and Human
Services second-guess the determination of a religious employer that
providing contraceptive coverage to its employees would make the
employer complicit in wrongdoing in violation of the organization's
religious precepts.

*Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff
Sessions, October 6, 2017, at 4.

It would seem that the Respondents should understand how it has overstepped all

legal authority in its issuance of its Denial Letter.

Rather, the Respondents only present its one and one-half (1½) page "RFRA

Guidance." For such a critical issue, implicating fundamental constitutional rights,

and under the assertion (albeit unlawful) of authority under the 'super-charged'

RFRA statute, it is impossible that the Respondents now choose to issue its "Agency

Action," without publicly consulting, promulgating and subjecting for

Congressional approval regulations that it purports would somehow authorize it to

take the action it did, herein. Yet, nothing exists. Instead, the Respondents acted in

*ad hoc* form – arbitrarily and capriciously concocting unpublished, unknown

standards upon which Respondents feel it can take action with petitions for religious

exemptions.

### C. Assuming the DEA had the Authority to Review and Issue/Deny a Petition for Religious Exemption, the DEA Failed to Properly Review the Petitioners' Request for the Same

On June 15, 2020, the Parties filed a Joint Motion to Stay Proceedings in the

underlying District Court proceedings, in an attempt to engage in negotiations that

would be premised upon a positive resolution of the underlying Court matter and the Petitioners' petition for religious exemption. Unfortunately, this did not occur. Rather, without any prior knowledge or notice to Petitioners, the Respondents issued – on April 6, 2021, with a delivery to Petitioners' counsel on April 16, 2021 – a denial of Petitioner, Soul Quest Church's Petition for Religious Exemption.

The DEA Denial Letter asserted that it had:

> evaluated Soul Quest's petition in accordance with DEA has evaluated Soul Quest's petition in accordance with the framework set forth in the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1; the Attorney General's guidance memorandum, "Federal Law Protections for Religious Liberty" (October 6, 2017) (AG Memorandum)1; the Supreme Court decision in *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal,* 546 U.S. 418 (2006) ("*O Centro*"); DEA's "Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act.

DEA Denial Letter, at p. 1. However, as Petitioner Young explained in his Affidavit attached to the Petitioners' Second Amended Complaint in the underlying District Court matter, the DEA never inquired about his, or any other member of Soul Quest Church's, religious sincerity.

Responsive to Respondents' surreptitious actions culminating in issuance of the DEA Denial Letter, on May 11, 2021, Petitioners filed their Second Amended Complaint, which included an affidavit from Petitioner Young that provided necessary factual background regarding the Respondents' underlying behavior

throughout the entirety of the stay period leading up to issuance of the DEA Denial Letter. Further, the affidavit contemplated the wholesale failure of the Respondents to conduct any investigation involving the sincerity of the Petitioners' religious use of ayahuasca. Second Amended Complaint, at Ex. 5, *Soul Quest v. Garland*, (M.D. Fla. May 11, 2021) (ECF No. 42).

After making these "findings" – never substantively investigated by any DEA or DOJ personnel – on religious sincerity, as well as on control-diversion issues, the Respondents rendered determinations and purported to issue a denial of Soul Quest Church's petition for religious exemption and proceeded to declare its actions as "a final determination under 21 U.S.C. § 877," and then sought to argue that the issuance of their "Final Determination" mandated removal to the Appellate Court. Second Motion to Dismiss, *Soul Quest v. Garland*, (M.D. Fla. June 1, 2021) (ECF No. 44) (citing to 21 U.S.C. § 877). In so doing, the Respondents erroneously asserted that the Petitioners' arguments were directed against their "Final Determination," and not as a challenge to the DEA's authority to make such a decision in the first place. *Id.* at p. 11. The Respondents' unwritten and *ad hoc* process for "investigation" was defective in practice, yet, on a *de jure* level, the actions of the Respondents fall prey to their severe constitutional and statutory defects.

### D.    In the Alternative, Petitioners' Request that this Court Review this Petition Under the Guise of 28 U.S.C. § 1631.

In the alternative, the Petitioners readopt and reallege from their underlying, initial Petition that should this Honorable Court determine the Petition to be untimely, this Court may, under 28 U.S.C. § 1631, transfer this action to any other such Court in which the Petition could have been brought, "and the action [or appeal] shall proceed as if it has been filed in or noticed for the court to which it is transferred." 28 U.S.C. § 1631.  The Respondents state, in their Motion to Dismiss the initial Petition, that the Petitioners, "knowingly and intentionally chose to pursue a district court civil action *in lieu of* timely petitioning for review under 21 U.S.C. § 877."  Motion to Dismiss at 10, *Soul Quest Church of Mother Earth, et al, v. Garland, et al*, 22-11052, (11th Cir. 2022) (ECF No. 7).

However, this is categorically *false*.  Petitioners instituted their 'district court civil action' in April 2020.  The DEA's RFRA Order was issued on April 16, 2021. Petitioners did not file a Petition for Review thirty (30) days thereafter only on the premise that the issues presented in a Petition for Review were, at the time, being concurrently litigated and soon to be readily determined in District Court.  Once the District Court made a jurisdictional ruling on the same, the Petitioners then determined that a 'final agency decision', from which rights or obligations could have been determined or legal consequences could have flown, had been made.

As a result, in the interest of justice to have their right to religious exercise properly reviewed – whether it be in this Honorable Court or any other that is deemed appropriate – the Petitioners should be allowed to have that review go forward.  In short, the Petitioners should not be divested of their right to an appellate review of the DEA's supposed 'final agency determination' due to a theoretical oversight on their behalf in allowing the District Court time to adjudicate their Lawsuit.  The Petitioners were forced to wait for a determination of their claims in the District Court for nearly (2) years, during which the DEA issued the RFRA Order, and should not be stripped of their right to judicial review of the same on procedural grounds.

## **<u>CONCLUSION</u>**

In closing, Petitioners re-assert their request that the Eleventh Circuit review of the final agency decision rendered by Respondents on the grounds that it is arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law; that it is contrary to constitutional right, power, privilege or immunity; that it is in excess of statutory jurisdiction, authority or limitations, or short of statutory right; that it lacks adherence to procedure required by law; and/or it is otherwise unsupported by substantial evidence.

Petitioners respectfully request that this Court hold unlawful, vacate, and enjoin the final agency decision and mandate that, pursuant to RFRA, *supra*; the APA, *supra*; and controlling jurisprudence that the Respondents' decision be vacated and that the Respondents be instructed to expeditiously issue the requested religious exemption.

Respectfully submitted this 28th day of November 2022.

<div style="display:flex">

*s/Derek B. Brett, Esq.*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Petitioners

s/A. Brian Phillips, Esq.
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Telecopier: (407) 872-0704
Email:
brian.phillips@phillips-law-firm.com
Local Counsel for Petitioners

</div>

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that this brief complies with the type-volume limitation, in accordance with Fed.R.App.P. 32(a)(7)(B), because this brief contains 5,225 words, excluding the parts of the motion exempted by Fed.R.App.P. 32(f).

| | |
|---|---|
| *s/Derek B. Brett, Esq.* | *s/A. Brian Phillips, Esq.* |
| **DEREK B. BRETT, ESQ.** | **A. BRIAN PHILLIPS, ESQ.** |
| Fla. Bar No. 0090750 | Fla. Bar No. 0067113 |
| **BURNSIDE LAW GROUP** | **A. BRIAN PHILLIPS, P.A.** |
| 202 Brownlow Avenue, Suite 400 | 912 Highland Avenue |
| Dartmouth, NS, Canada B3B 1T5 | Orlando, Florida 32803 |
| Telephone: (902) 468-3066 | Telephone: (407) 872-0777 |
| Telecopier: (902) 468-4803 | Telecopier: (407) 872-0704 |
| Email:dbb@burnsidelaw.net | Email: |
| Lead Counsel for Petitioners | Brian.Phillips@Phillips-Law-Firm.com |
| | Local Counsel for Petitioners |

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022, a true and correct copy of the foregoing brief was filed using CM/ECF that will automatically send a copy of this document to Assistant United States Attorney Lowell V. Sturgill.

*s/A. Brian Phillips*_____

A. Brian Phillips, Esq.
Local Counsel for Petitioners