No. 22-11052

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

SOUL QUEST CHURCH OF MOTHER EARTH, INC.,

Petitioners,

v.

UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, *et al.*,

Respondents.

_____

On Petition for Review from a Final Decision
of the Drug Enforcement Administration

_____

## BRIEF FOR RESPONDENTS

Brian M. Boynton
  *Principal Deputy Assistant Attorney General*
Roger Handberg
  *United States Attorney*
Mark Stern
  (202) 514-5089
Lowell V. Sturgill Jr.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

***SOUL QUEST CHURCH OF MOTHER EARTH, INC. ET AL. V. U.S.
DRUG ENFORCEMENT ADMINISTRATION, ET AL.*, NO. 22-11052
(11TH CIR.)**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for respondents U.S. Drug Enforcement Administration; U.S. Attorney General; and Administrator, U.S. Drug Enforcement Administration hereby certify that the following have an interest in the outcome of this appeal:

Soul Quest Church of Mother Earth, Inc. (petitioner)

Young, Christopher (petitioner)

U.S. Drug Enforcement Administration (respondent)

U.S. Attorney General (respondent)

Administrator, U.S. Drug Enforcement Administration (respondent)

Brett, Derek Benjamin (counsel for petitioner)

The Burnside Law Group (petitioner's counsel's law firm)

Phillips, Andrew Brian (counsel for petitioner)

A. Brian Phillips PA (petitioner's counsel's law firm)

Sturgill Jr., Lowell V. (counsel for respondents)

Stern, Mark B. (counsel for respondents)

Harris, Julie Strauss (counsel for defendants in CA11 No. 22-11072)

Hancock, Kevin P. (counsel for defendants in CA11 No. 22-11072)

Gaffney, Michael James (counsel for defendants in CA11 No. 22-11072)

United States Department of Justice

Submitted this 5th day of May, 2022.

s/s Lowell V. Sturgill Jr.
Lowell V. Sturgill Jr.
  *Attorney, Civil Division*
  *Appellate Staff, Room 7241*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*
  *Counsel for Respondents*

C-2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

Respondents believe oral argument is unnecessary in this matter and for the Court to deny the petition for review. Respondents stand ready to participate, however, if the Court decides to schedule oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons

Statement Regarding Oral Argument

Statement of Jurisdiction ..................................................................................1

Statement of the Issues .....................................................................................2

Statement of the Case .......................................................................................3

    A. Statutory and Regulatory Background ....................................................3

    B. Religious-Exemption Request ...............................................................6

    C. District Court Civil Action ....................................................................8

    D. Petition for Review ...............................................................................9

Summary of Argument ...................................................................................10

Statement of the Standard of Review ............................................................12

Argument .........................................................................................................13

    I.     The Petition for Review Should Be Dismissed as Untimely..........................13

        A. The Finality of DEA's Decision Under Section 877 Does Not Turn on the District Court's Dismissal of Petitioners' Civil Action ......................................................................................13

        B. Petitioners Identify No Equitable Grounds to Excuse Their Untimely Filing...............................................................................15

        C. Petitioners' Request, in the Alternative, for a Transfer Under 28 U.S.C. § 1631 Is Similarly Without Merit ................................18

    II.    If This Court Were to Conclude that the Petition in this Case was Timely, It Is Clear that DEA Lawfully Denied Petitioners' Religious-Exemption Request .............................................................22

        A. DEA Had Statutory Authority to Consider Petitioners' Request for a Religious Exception ...............................................23

i

B. DEA Lawfully Denied Petitioners' Request for a Religious Exemption to the CSA.......................................................................25

1. DEA's Denial of Petitioners' Request for a Religious Exception is Consistent with RFRA ......................................25

a. Petitioners Failed to Show That Their Ayahuasca Use Is a Sincere Exercise of Religion .......................................26

b. DEA's Denial of Petitioners' Religious-Exemption Request Was the Least Restrictive Means to Further a Compelling Government Interest ......................................30

2. Petitioners' APA Claim Lacks Merit.......................................32

3. Petitioners' Reference to the Major Questions Doctrine Does Not Advance Their Position.........................................32

Conclusion.............................................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDA

# TABLE OF AUTHORITIES

**Cases:**

*A.L. v. Jackson Cty. Sch. Bd.,*
  635 F. App'x 774 (11th Cir. 2015) ............................................29

*Adorers of the Blood of Christ v. FERC,*
  897 F.3d 187 (3d Cir. 2018) ........................................... 19, 20

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland,*
  24 F.4th 1249 (9th Cir. 2022) .....................................14

*BedRoc Ltd., LLC v. United States,*
  541 U.S. 176 (2004) ................................................32-33

*Bennett v. Spear,*
  520 U.S. 154 (1997) ...................................................14

*Boggs v. U.S. R.R. Ret. Bd.,*
  725 F.2d 620 (11th Cir. 1984) .......................................16

*Bostock v. Clayton County,*
  140 S. Ct. 1731 (2020) ................................................20

*Bowles v. Russell,*
  551 U.S. 205 (2007) ...................................................17

*Brazoria County v. E.E.O.C.,*
  391 F.3d 685 (5th Cir. 2004) .........................................18

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014) ...........................................26, 28, 30

*Catholic Diocese of Beaumont v. Sebelius,*
  10 F. Supp. 3d 725 (E.D. Tex. 2014) ...............................22

*Church of the Holy Light of the Queen v. Mukasey,*
  615 F. Supp. 2d 1210 (D. Or. 2009), *vacated on other grounds sub nom.*
  *Church of the Holy Light of the Queen v. Holder,*
  443 F. App'x 302 (9th Cir. 2011) ...............................25, 28

*Cutter v. Wilkinson,*
    544 U.S. 709 (2005) ..................................................................30

*Danko v. Director, Office of Workers' Comp. Programs,*
    846 F.2d 366 (6th Cir. 1988) ...................................................18

*De Ping Wang v. Department of Homeland Sec.,*
    484 F.3d 615 (2d Cir. 2007) ....................................................18

*Dew v. Hardin,*
    432 F.2d 926 (4th Cir. 1970) .....................................................1

*Drummond Coal Co. v. Watt,*
    735 F.2d 469 (11th Cir. 1984) .............................................13-14

*Elgin v. Department of Treasury,*
    567 U.S. 1 (2012) .....................................................................21

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ................................................................33

*Flores v. U.S. Dep't of Educ.,*
    619 F. App'x 244 (4th Cir. 2015) ..............................................1

*Fry v. DEA,*
    353 F.3d 1041 (9th Cir. 2003) .................................................17

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ..............................................4, 5, 24, 28, 31

*Gonzales v. Raich,*
    545 U.S. 1 (2005) .......................................................................3

*Greene v. U.S. Attorney Gen.,*
    840 F. App'x 450 (11th Cir. 2020) ..........................................12

*Hallstrom v. Tillamook County,*
    493 U.S. 20 (1989) ..................................................................17

*Hardesty v. Benefits Review Bd. of the U.S. Dep't of Labor,*
    783 F.2d 138 (8th Cir. 1986) ...................................................18

*Hemp Indus. Ass'n v. U.S. DEA,*
 539 F. Supp. 3d 120 (D.D.C. 2021)........................................................ 16, 17

*Hemp Indus. Ass'n v. DEA.,*
 36 F.4th 278 (D.C. Cir. 2022)...................................................................19

*Henderson ex rel. Henderson v. Shinseki,*
 562 U.S. 428 (2011)..................................................................................18

*John Doe, Inc. v. DEA,*
 484 F.3d 561 (D.C. Cir. 2007).......................................................13, 17, 19

*La Voz Radio de la Communidad v. FCC,*
 223 F.3d 313 (6th Cir. 2000).............................................................. 19, 20

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
 140 S. Ct. 2367 (2020) .....................................................................24, 33, 34

*Matson Navigation Co., Inc., v. U.S. Dep't of Transp.,*
 895 F.3d 799 (D.C. Cir. 2018)...................................................................18

*McNary v. Haitian Refugee Center, Inc.,*
 498 U.S. 479 (1991)..................................................................................20

*National Ass'n of Mfrs. v. Department of Def.,*
 138 S. Ct. 617 (2018)...............................................................................32

*Noland v. U.S. Civil Serv. Comm'n,*
 544 F.2d 333 (8th Cir. 1976).......................................................................1

*Nutt v. DEA,*
 916 F.2d 202 (9th Cir. 1990)................................................ 1, 14-15, 17

*Odei v. U.S. Dep't of Homeland Sec.,*
 937 F.3d 1092 (7th Cir. 2019) ........................................................... 19, 20

*Oregon v. Ashcroft,*
 368 F.3d 1118 (9th Cir. 2004), *aff'd on other grounds,*
 *Gonzales v. Oregon,* 546 U.S. 243 (2006)....................................................19

*Penick Corp., Inc. v. DEA,*
    491 F.3d 483 (D.C. Cir. 2007) ................................................................12

*Ramirez v. Collier,*
    142 S. Ct. 1264 (2022) ...........................................................................26

*Sharma v. DEA,*
    511 F. App'x 898 (11th Cir. 2013)..............................................13, 17, 19

*Sossamon v. Texas,*
    563 U.S. 277 (2011).................................................................................19

*Soul Quest Church of Mother Earth, Inc. v. Garland,*
    No. 6:20-cv-00701 (M.D. Fla.)..................................................................5

*St. John's United Church of Christ v. City of Chicago,*
    502 F.3d 616 (7th Cir. 2007) ............................................................ 20, 21

*Tanzin v. Tanvir,*
    141 S. Ct. 486 (2020)...............................................................................24

*United States v. Carlson,*
    87 F.3d 440 (11th Cir. 1996)...................................................................17

*United States v. Dunkel,*
    927 F.2d 955 (7th Cir. 1991)...................................................................29

*United States v. Quaintance,*
    608 F.3d 717 (10th Cir. 2010) ................................................................28

*Utility Air Regulatory Grp. v. EPA,*
    573 U.S. 302 (2014)................................................................................33

*Warshauer v. Solis,*
    577 F.3d 1330 (11th Cir. 2009) ..............................................................32

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ...................................................................... 33, 34

**U.S. Constitution:**

Free Exercise Clause ....................................................................................9

**Statutes:**

Administrative Procedure Act:

5 U.S.C. § 553 .........................................................................................32

Religious Freedom Restoration Act (RFRA):

42 U.S.C. § 2000bb ....................................................................................5
42 U.S.C. § 2000bb(a)(2) .........................................................................24
42 U.S.C. § 2000bb(a)(5) .........................................................................24
42 U.S.C. § 2000bb-1(a) ..................................................................... 23, 25
42 U.S.C. § 2000bb-1(b) ...........................................................23, 25, 28
42 U.S.C. § 2000bb-1(c) ...........................................................................23
42 U.S.C. § 2000bb-2(1) ...........................................................................23
42 U.S.C. § 2000bb-3 ................................................................................19
42 U.S.C. § 2000bb-3(a) ...........................................................................23

Religious Land Use and Institutionalized Persons Act:

42 U.S.C. § 2000cc ............................................................................ 19, 26

21 U.S.C. § 801 *et seq.* ...............................................................................1
21 U.S.C. § 811 ............................................................................................3
21 U.S.C. § 812 ............................................................................................4
21 U.S.C. § 812(a) ................................................................................... 2, 4
21 U.S.C. § 812(b)(1) .........................................................................2, 4, 31
21 U.S.C. § 812(c) ................................................................................... 2, 4
21 U.S.C. § 812 sched. I(c)(6) .............................................................. 2, 4
21 U.S.C. § 821 ............................................................................................3
21 U.S.C. §§ 822-24 ...................................................................................3
21 U.S.C. § 822(d) ......................................................................................5
21 U.S.C. § 823(a)(1) .................................................................................4
21 U.S.C. § 831 ............................................................................................3
21 U.S.C. § 841 ............................................................................................3
21 U.S.C. § 871(b) ......................................................................................3
21 U.S.C. § 877..........................................1, 2, 3, 8, 10, 11, 12, 13, 15, 16, 18, 20, 22, 29

28 U.S.C. § 1631 ..................................................................... 11, 18
28 U.S.C. § 2344 ...........................................................................17

42 U.S.C. § 6972(b)(1) ..................................................................17

The Comprehensive Drug Abuse Prevention and Control Act of 1970,
    Pub. L. No. 91-513, 84 Stat. 1236 .......................................... 3

**Regulations**:

21 C.F.R. §§ 1300-1316 ................................................................. 4
21 C.F.R. § 1307.03 ...................................................................... 5
21 C.F.R. § 1307.31 ...................................................................... 5

28 C.F.R. § 0.100 ........................................................................ 4

**Rules:**

Federal Rule of Appellate Procedure 4(a).....................................16
Fed. R. App. P. 15(a)(1) ............................................................... 1

**Miscellaneous:**

Diversion Control Division, DEA, *Guidance Regarding Petitions for Religious
    Exemption from the Controlled Substances Act Pursuant to the Religious Freedom
    Restoration Act (Revised)*, https://perma.cc/VE74-SQMH
    (updated Nov. 20, 2020) .............................................5, 6, 21, 32

viii

## Statement of Jurisdiction

Petitioners invoke this Court's jurisdiction under 21 U.S.C. § 877. Pet. 1. Section 877 provides that

> [a]ll final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision.

"[T]his subchapter" in Section 877 refers, among other things, to the Controlled Substances Act (CSA), which is codified at various provisions at 21 U.S.C. § 801 *et seq.*

The petition also asserts jurisdiction in this Court under Federal Rule of Appellate Procedure 15. *See* Pet. 1, 6. That Rule, however, merely prescribes the procedure for seeking direct review of agency orders where a court of appeals is otherwise authorized to review such an order. *See Flores v. U.S. Dep't of Educ.*, 619 F. App'x 244, 245-46 (4th Cir. 2015); *Noland v. U.S. Civil Serv. Comm'n*, 544 F.2d 333, 334 (8th Cir. 1976); *Dew v. Hardin*, 432 F.2d 926, 926 (4th Cir. 1970). Rule 15 also provides that petitions for review must be filed in the appropriate court of appeals "within the time prescribed by law." Fed. R. App. P. 15(a)(1). Section 877, quoted above, prescribes the time limits for filing a petition for review from a Drug Enforcement Administration (DEA) final decision: thirty days after notice of a DEA decision. *See Nutt v. DEA*, 916 F.2d 202, 203 (9th Cir. 1990). Several courts have held that time limit to be jurisdictional. *See infra* p. 17.

1

## Statement of the Issues

Petitioners Soul Quest Church of Mother Earth, Inc. (Soul Quest) and its spiritual leader, Christopher Young, engage in what they allege to be religious use of ayahuasca, a tea that contains a Schedule I controlled substance, Dimethyltryptamine (DMT). *See* 21 U.S.C. §§ 812(a), (b)(1), (c), sched. I(c)(6). In 2017, petitioners requested a religious exemption from the Controlled Substances Act permitting them to import, possess, and distribute plants containing DMT to make ayahuasca. DEA denied that request on April 16, 2021, advising petitioners that the decision constituted a final determination of petitioners' exemption request under 21 U.S.C. § 877.

Section 877 vests judicial review of final action by DEA exclusively in the appropriate court of appeals, via a petition for review filed within 30 days of notice of the order challenged. Instead of filing a timely petition for review, however, petitioners elected to challenge DEA's denial of their exemption request in district court. They did so by amending the complaint in an existing suit, which they had previously filed seeking a religious exemption from the CSA, to add a claim challenging DEA's denial of their religious-exemption request. The district court dismissed that civil action, holding that Section 877 vested judicial review over the matter exclusively in the courts of appeals. Petitioners appealed that decision to this Court, *see* No. 22-11072, and on the same day filed the present petition "to preserve Eleventh Circuit review" if this Court affirms the dismissal of their civil complaint, Pet. 9-10.

The questions presented are:

1.      Whether the petition for review should be dismissed because it was filed well beyond the 30 days prescribed by 21 U.S.C. § 877.

2.      Assuming, arguendo, that the petition was timely filed, whether DEA lawfully denied petitioners' request for a religious exemption from the CSA.

## Statement of the Case

### A.      Statutory and Regulatory Background

**1.**      The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236, creates a comprehensive federal scheme regulating the handling of controlled substances. *See Gonzales v. Raich*, 545 U.S. 1, 10, 12-13 (2005). Title II of that Act contains statutory provisions known as the CSA, which establish a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id.* at 12-13.

Subchapter I of the CSA provides the Attorney General regulatory and enforcement authority over controlled substances and their handling, including authority to determine who may manufacture, distribute, dispense, or possess any controlled substance and in what manner. *See, e.g.*, 21 U.S.C. §§ 811, 822-24, 831, 841. The CSA also grants the Attorney General authority to "promulgate rules and regulations . . . relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances." *Id.* § 821; *see also id.* § 871(b) (providing that "[t]he Attorney General may promulgate and enforce any rules, regulations, and

3

procedures which he may deem necessary and appropriate for the efficient execution of his functions under this subchapter"). The Attorney General has delegated this authority to DEA, *see* 28 C.F.R. § 0.100, and DEA has promulgated regulations related to controlled substances, *see* 21 C.F.R. §§ 1300-1316.

The CSA establishes five schedules of controlled substances. *See* 21 U.S.C. § 812. Schedule I regulates substances with "a high potential for abuse" and "no currently accepted medical use in treatment in the United States," and concerning which "[t]here is a lack of accepted safety for use . . . under medical supervision." *Id.* § 812(b)(1). The controlled substance at issue here—DMT (short for Dimethyltryptamine)—falls under Schedule I of the CSA. *See id.* § 812(a), (b)(1), (c), sched. I(c)(6). That section applies to "any material, compound, mixture, or preparation[] which contains any quantity" of those substances. *Id.* Ayahuasca—which petitioners seek permission to import, possess, and distribute—contains the Schedule I controlled substance DMT, which is "exceptionally dangerous." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 432 (2006).

**2.** The CSA authorizes the Attorney General to register an applicant to manufacture or distribute a Schedule I controlled substance where, among other requirements, the registrant maintains effective controls against diversion of that substance into other than legitimate medical, scientific, research, or industrial channels. *See* 21 U.S.C. § 823(a)(1). The CSA also authorizes the Attorney General to waive, by regulation, the registration requirement for certain manufacturers, distributors, or

4

dispensers if he finds granting a waiver consistent with public health and safety. *See id.* § 822(d).

Pursuant to 21 C.F.R. § 1307.03, any person also may apply for an exception to particular CSA regulations (as opposed to the CSA as a whole). *See* Doc. 59-11, pg. 2 (Office of Diversion Control, DEA, *Guidance Regarding Petitions for Religious Exemption from the CSA Pursuant to the Religious Freedom Restoration Act* (2018) (hereinafter *DEA Guidance*)).[1] Prior to the Supreme Court's decision in *O Centro*, however, no process existed by which an individual who wished to use a controlled substance for religious purposes (other than members of the Native American Church using peyote in bona fide religious ceremonies of that Church, *see* 21 C.F.R. § 1307.31) could obtain permission to do so under the CSA. At that time, DEA considered such individual-use exceptions on the basis of religion categorically barred by the CSA. *See O Centro*, 546 U.S. at 423.

In *O Centro*, the Supreme Court held that the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, requires DEA to provide individualized consideration to requests for religious exemptions to the CSA. 546 U.S. at 437. In response to *O Centro*, DEA created a petition process for RFRA exemption requests. *See* Doc. 59-11, pg. 2 (*DEA Guidance*). That process, which remains in place today, is open to anyone who

---

[1] All docket cites in this brief are to the docket in *Soul Quest Church of Mother Earth, Inc. v. Garland*, No. 6:20-cv-00701 (M.D. Fla.). Soul Quest's appeal in that case is related to this petition. Petitioners' Appendix includes most of the documents from that case cited in this brief; an addendum to this brief provides copies of the others cited here.

wishes to manufacture, distribute, import, export, use, or possess any controlled substance for religious purposes—including ayahuasca. *See* Diversion Control Division, DEA, *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)*, https://perma.cc/VE74-SQMH (updated Nov. 20, 2020).

## B.    Religious-Exemption Request

In 2016, DEA became aware that Soul Quest was "involved in offering 'retreats' through [its] website, www.soulquest-retreat.com," during which ayahuasca and other controlled substances are provided to its "clientele.'" Doc. 13-3, pg. 2. DEA invited Soul Quest to petition DEA to consider granting an exemption pertaining to that activity, *see id.*, and in 2017, Soul Quest sought an exemption to the CSA with respect to "the ritual use by Soul Quest of ayahuasca for its sacramental activities," Doc. 59-10, pg. 2.

On April 16, 2021, after conducting a thorough investigation, DEA denied Soul Quest's exemption request. Doc. 59-2, pg. 1. DEA determined that Soul Quest "has not satisfied its burden under RFRA of demonstrating that its use of ayahuasca is pursuant to a religious exercise and based on a sincerely held religious belief." *Id.* at 5. DEA concluded that Soul Quest "promotes ayahuasca to the public for self-help and therapeutic reasons, rather than solely to fellow believers for . . . religious ritual purposes." *Id.*; *id.* at 4 (noting, *e.g.*, that Soul Quest's website shows that Soul Quest

6

"advertises the use and distribution of ayahuasca to the public as fundamentally medicinal").

DEA also concluded that denying Soul Quest's exemption request is the least restrictive means of furthering two compelling interests: "the need to protect public health and safety from potentially dangerous substances, and the need to prevent diversion of controlled substances into the illicit market." Doc. 59-2, pg. 6. For example, while Soul Quest "described detailed screening procedures for participants" in its ayahuasca retreats and "monitoring of ayahuasca consumption by trained health care professionals," DEA's investigation revealed "troubling allegations that Soul Quest has failed to follow its own procedures." *Id.* at 8. DEA noted allegations in a wrongful-death action filed against Soul Quest regarding an individual who died after ingesting ayahuasca and another substance (kambo, the secretion of a South American frog) at a Soul Quest retreat. *Id.* The agency also noted assertions by another individual that Soul Quest staff members delayed calling 911 when she experienced adverse effects from an unknown substance administered to her during a Soul Quest ceremony. *See id.*

DEA also emphasized that Soul Quest "lacks adequate measures to safeguard either the imported plants in its custody or the tea, once manufactured." Doc. 59-2, pg. 8. In addition, during DEA's preregistration investigation, Soul Quest "made no commitment to lawfully import or acquire the plant material containing DMT within the comprehensive regulatory system established under the CSA," *id.*, which is

necessary to allow the DEA to "track these shipments to ensure that none are diverted into illicit channels," *id.* at 6.

## C.    District Court Civil Action

DEA's April 16, 2021 letter stated that its denial of Soul Quest's request for a religious exemption from the CSA "is a final determination under 21 U.S.C. § 877," Doc. 59-2, pg. 9, and Soul Quest received notice of that letter the same day, *see* Dkt. 31, pg. 9. Despite that notification, Soul Quest elected not to file a petition for review in any court of appeals within the 30 days Section 877 prescribes. Instead, petitioners elected to challenge DEA's decision in district court, by amending their complaint in a pending lawsuit in which petitioners also sought an exemption to the CSA. *See* Doc. 42, pgs. 13, 33-34, 36.[2]

DEA moved to dismiss petitioners' amended complaint for lack of jurisdiction under 21 U.S.C. § 877, *see* Doc. 44, and subsequently moved to dismiss a third amended complaint that also challenged the April 16, 2021 letter (*see* Doc. 59, pgs. 2, 8-10), on the same ground, *see* Doc. 61. The district court granted the motion, holding that DEA's letter constituted final agency action reviewable exclusively in the court of appeals under

---

[2]    At the outset of the civil lawsuit, the parties jointly obtained a stay of proceedings while DEA conducted the investigation necessary to issue a determination regarding petitioners' administrative petition for a religious exemption from the CSA. Petitioners' brief (at 4-5) asserts that this stay was for the purpose of negotiating a settlement that would result in the issuance of a religious exemption, and that DEA treated that process as a mere "façade." The record supports neither contention, and neither assertion is true.

section 877 and that petitioners' claims are all inescapably intertwined with the issues presented in that letter and relief requested in their administrative-exemption request. *See* Doc. 74, pg. 6. Petitioners appealed that decision to this Court. That appeal, at No. 22-11072, is fully briefed and was argued on January 25, 2023.

### D.    Petition for Review

After the district court dismissed their civil action, petitioners filed this petition for review. The petition requests an order vacating, reversing, and enjoining DEA's "final agency decision" of April 16, 2021, as well as an order directing respondents to grant petitioners' request for an exemption from the CSA that would permit petitioners to import, possess, and distribute plants containing DMT in order to make ayahuasca. *See* Pet. 10-11.

Those requests ask for the same relief that petitioners seek in their separate civil action: an order voiding DEA's denial of petitioners' religious-exemption request; an injunction barring defendants "from taking any action prohibiting [them] from importing, possessing, manufacturing, and distributing ayahuasca"; and related declaratory relief. Doc. 59, pg. 38. The grounds on which the petition challenges DEA's denial of petitioners' request for a religious exemption also closely track the claims petitioners assert in their civil action, focusing on the same asserted violations of RFRA, the Administrative Procedure Act (APA), and the Free Exercise Clause. Accordingly, the arguments petitioners advance here materially track the contentions their briefs advanced in appeal No. 22-11072. Indeed, the petition acknowledges that petitioners

filed the petition for review "to preserve Eleventh Circuit review" if this Court affirms the dismissal of their civil complaint. Pet. 9-10.

On May 5, 2022, DEA moved to dismiss the petition for review as untimely because it was filed more than 30 days after DEA's April 16, 2021 final decision. Petitioners opposed the motion, and after DEA filed a reply, this Court notified the parties that the jurisdictional question would be carried with the case. *See* Order of September 16, 2022.

## Summary of Argument

1.      The petition for review should be dismissed as untimely. The statute petitioners invoke to support jurisdiction here, 21 U.S.C. § 877, provides that a petition for review must be filed within 30 days of notice of a DEA final decision. DEA denied petitioners' request for a religious exemption from the CSA on April 16, 2021, and petitioners received notice of the decision the same day. Petitioners filed the petition for review on April 4, 2022, almost a year later.

Rather than file a timely petition for review, petitioners amended a civil complaint they had previously filed in district court to add a claim challenging DEA's denial of their religious-exemption request. Petitioners now contend that DEA's April 16, 2021 action did not become final for purposes of 21 U.S.C. § 877 until the district court dismissed their civil case. That argument is without basis. DEA's denial represented the culmination of its consideration of the matter, and thus constituted final agency action under section 877. The finality of the district court's decision for

purposes of appealing that decision has no bearing on the finality of DEA's consideration of petitioners' religious-exemption request for purposes of section 877.

Nor is there any equitable ground for excusing petitioners' failure to file a timely petition for review. In filing an amended complaint, rather than a petition for review, petitioners were aware that DEA would argue that section 877 vests judicial review of DEA's denial of petitioners' religious-exemption request exclusively in the courts of appeals. If petitioners disagreed, they could have protected their right to pursue a petition for review by filing a timely petition for review in this Court and moving for a stay of proceedings in that matter pending the resolution of their civil suit.

In the alternative, petitioners request the Court to transfer this matter to another (presumably a district) court under 28 U.S.C. § 1631. That statute, however, only allows transfer to a court "in which the action or appeal could have been brought at the time it was filed or noticed." Section 1631 is inapplicable here because this action could not have been brought in any other court "at the time it was filed," since it was filed long after the time specified in 21 U.S.C. § 877. Petitioners argue that section 877 is inapplicable, but petitioners' arguments—which DEA has fully rebutted in appeal No. 22-11072—are no stronger as repackaged here. Section 877 plainly vests judicial review of DEA decisions exclusively in the appropriate courts of appeals, and RFRA does not override that rule.

2.    Assuming this Court were to address the merits, petitioners' claims that DEA's denial of their religious-exemption request violated RFRA and the APA are without foundation.

Petitioners' RFRA claim fails because DEA lawfully concluded that petitioners failed to identify a substantial burden on the sincere exercise of religion and because even if they had, denying their religious-exemption request is the least restrictive means of furthering multiple compelling interests. Petitioners provide no persuasive response to either point. Petitioners' APA claim fails because the guidance document DEA issued for how to seek a religious exemption from the CSA is an interpretive rule, which does not require notice and comment.

### Statement of the Standard of Review

This Court reviews de novo whether a petition for review was timely filed. *See Greene v. U.S. Attorney Gen.*, 840 F. App'x 450, 451 (11th Cir. 2020).

On a petition for review properly filed under 21 U.S.C. § 877, the agency's findings of fact are conclusive "if supported by substantial evidence," 21 U.S.C. § 877, and the agency's reasoning may be set aside only if it "is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *Penick Corp., Inc. v. DEA*, 491 F.3d 483, 488 (D.C. Cir. 2007) (quotation marks omitted).

**Argument**

## I.     The Petition for Review Should Be Dismissed as Untimely.

The Petition seeks review of DEA's "final agency action issued on April 16, 2021," Pet. 1, and recites that it is filed pursuant to 21 U.S.C. § 877, *see id.*, which provides as follows:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General[3] may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General *within thirty days after notice of the decision.*

21 U.S.C. § 877 (emphasis added). Petitioners received notice of the decision on the date of its issuance. *See* Doc. 31, pg. 9. The Petition, filed on April 4, 2022, is untimely because it was filed almost a year after that decision, and thus not remotely within the 30-day time limit specified in 21 U.S.C. § 877.

### A.     The Finality of DEA's Decision Under Section 877 Does Not Turn on the District Court's Dismissal of Petitioners' Civil Action.

Section 877 channels to the courts of appeals judicial review of agency action that reflects the culmination of the agency's consideration of a matter. *See, e.g., Sharma v. DEA*, 511 F. App'x 898, 903 (11th Cir. 2013) (per curiam); *John Doe, Inc. v. DEA*, 484 F.3d 561, 568 (D.C. Cir. 2007). *See generally Drummond Coal Co. v. Watt*, 735 F.2d 469

---

[3] As noted above, the Attorney General has delegated his authority to enforce the CSA to the DEA. *See supra* p. 4.

(11th Cir. 1984). DEA's consideration of petitioners' religious exemption request culminated on April 16, 2021, the date of DEA's letter denying that request. The letter marked the consummation of DEA's decisionmaking process regarding petitioners' request for a religious exemption to the CSA, and definitively reflects DEA's determination of how the law applies to the facts of petitioners' religious-exemption request. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *cf. Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1260-61 (9th Cir. 2022) (informational letter was not final under section 877 because it was not preceded by agency factfinding and had no legal consequences).

The Letter noted that DEA's denial of petitioner's religious-exemption request followed a "thorough review of the entire record," Doc. 59-2, pg. 9, and that DEA had given "full consideration" to petitioners' exemption request, their supplemental submissions, and the information DEA learned as a result of its investigation of petitioners' request, *id.* at 3. The Letter discussed those materials in considerable detail, *see id.* at 3-8, and is in no way tentative, preliminary, or without legal consequence. The letter was final with respect to section 877, therefore, when it was issued. Accordingly, the time for filing a timely petition for review of DEA's decision under section 877 began to run when petitioners received notice of that decision.

Petitioners contend that DEA's denial of their religious-exemption request did not become final for purposes of section 877 until the district court dismissed their civil action challenging that denial, *see* Br. 6 n.1, but that is incorrect. *See Nutt v. DEA*, 916

14

F.2d 202, 203 (5th Cir. 1990) (holding that petitioner's time to file a petition for review under section 877 began running from the date of the DEA decision petitioner challenged, and that the petitioner failed to timely file petition for review of DEA action by filing the petition for review in *district court* within 30 days of DEA's final decision). The date of the district court's dismissal marked the beginning of the period in which petitioners could notice an appeal of that order.  It has no bearing whatsoever on the finality of DEA's administrative ruling.

### B. Petitioners Identify No Equitable Grounds to Excuse Their Untimely Filing.

Petitioners contend they "should not be divested of their right to an appellate review of the DEA's supposed 'final agency determination' due to a theoretical oversight on their behalf in allowing the [d]istrict [c]ourt time to adjudicate their [l]awsuit." Br. 22. Petitioners' decision to file in district court rather than to file a timely petition was not in any sense a "theoretical oversight." DEA's denial letter expressly stated that it represented "a final determination under 21 U.S.C. § 877." *See supra* p. 8. And petitioners' motion to amend their complaint to challenge the April 16, 2021, decision expressly acknowledged that DEA "will argue that 21 U.S.C. § 877 divests [the district court] of jurisdiction to hear the [p]laintiffs' claims," Doc. 30, pg. 3 n.1.

Furthermore, petitioners could have acted to protect their right to direct review in the court of appeals by filing their petition for review within 30 days of the DEA's April 16, 2021 Letter and requesting this Court to stay that proceeding pending

resolution of their district court action. Indeed, the D.C. Circuit recently allowed another plaintiff to protect its right to judicial review under 21 U.S.C § 877 in this way. *See Hemp Indus. Ass'n v. U.S. DEA*, 539 F. Supp. 3d 120, 125 (D.D.C. 2021).

Petitioners dispute none of these key facts, and their opening brief reiterates that they knowingly and intentionally elected to file a civil action in district court rather than a timely petition for review. *See* Br. 21 (reciting that "[p]etitioners did not file a [p]etition for [r]eview thirty (30) days" after DEA's denial of their religious-exemption request because "the issues presented in a [p]etition for [r]eview were, at the time, being concurrently litigated and soon to be readily determined in [d]istrict [c]ourt").

The circumstances of this case bear no resemblance to those in *Boggs v. U.S. R.R. Ret. Bd.*, 725 F.2d 620 (11th Cir. 1984), on which petitioners seek to rely. In *Boggs*, a benefits claimant filed a timely petition for review but mistakenly filed in the district court rather than the court of appeals. Concluding that the error did not compel dismissal, the Court noted that under Federal Rule of Appellate Procedure 4(a), a notice of appeal mistakenly filed in the court of appeals is deemed to have been filed in district court. The Court concluded that the same result should obtain when a petition is mistakenly filed in district court. *See* 725 F.2d at 621-22. Petitioners here, by contrast, deliberately amended a district court complaint rather than file a timely petition for review.

Because petitioners are not entitled to equitable tolling, the Court need not reach the question whether section 877's 30-day filing requirement is jurisdictional and thus not subject to equitable exceptions. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 31 (1989) (dismissal of citizen suit for failure to comply with 60-day notice provision under 42 U.S.C. § 6972(b)(1) was appropriate regardless of whether that provision is considered jurisdictional). Two courts of appeals have held that the statute is jurisdictional, and we are unaware of any contrary decision. *See Fry v. DEA*, 353 F.3d 1041, 1044 (9th Cir. 2003); *Nutt*, 916 F.2d at 203 (5th Cir. 1990); *see generally Bowles v. Russell*, 551 U.S. 205, 210, 214 (2007). That conclusion follows from section 877's text, which directly links, in a single clause, that section's 30-day filing requirement to Congress's provision for jurisdiction in the courts of appeals for review of the agency orders that section 877 governs. That latter provision is plainly jurisdictional, *see, e.g.*, *Sharma*, 511 F. App'x at 902; *John Doe, Inc.*, 484 F.3d at 565; *United States v. Carlson*, 87 F.3d 440, 446 (11th Cir. 1996); *Hemp Indus.*, 539 F. Supp. 3d at 127, and there is no grammatically proper way to divorce section 877's 30-day filing rule from section 877's assignment of judicial review exclusively to the appropriate federal courts of appeals.

In that respect, section 877 resembles the Hobbs Act's 60-day time limit for filing a petition for review of certain final agency decisions, which states that "[a]ny party aggrieved by [a final order reviewable under this chapter] may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. § 2344. The courts of appeals have "uniformly held" that section 2344's time

17

limit for filing a petition for review is jurisdictional. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 437 (2011); *see, e.g.*, *Matson Navigation Co., Inc., v. U.S. Dep't of Transp.*, 895 F.3d 799, 803 (D.C. Cir. 2018); *Brazoria County v. E.E.O.C.*, 391 F.3d 685, 688 (5th Cir. 2004).

### C.    Petitioners' Request, in the Alternative, for a Transfer Under 28 U.S.C. § 1631 Is Similarly Without Merit.

Petitioners urge that if the Court concludes that their petition for review is untimely, it should transfer this action to another (and presumably a district) court under 28 U.S.C. § 1631. *See* Br. 21-22. This argument is similarly without basis.

Section 1631 allows transfer only to a court "in which the action or appeal could have been brought *at the time it was filed or noticed*." 28 U.S.C. § 1631 (emphasis added). This action was filed after the time specified in 21 U.S.C. § 877. Accordingly, it could not have been brought in any other court of appeals "at the time it was filed." Section 1631 is designed to permit transfer of cases that were filed in the wrong court, not to resurrect proceedings that were untimely filed. *See, e.g.*, *De Ping Wang v. Department of Homeland Sec.*, 484 F.3d 615 (2d Cir. 2007); *Danko v. Director, Office of Workers' Comp. Programs*, 846 F.2d 366 (6th Cir. 1988) (per curiam); *Hardesty v. Benefits Review Bd. of the U.S. Dep't of Labor*, 783 F.2d 138 (8th Cir. 1986) (per curiam).

Petitioners contend that their challenge to the denial of their religious-exemption request was properly filed in district court notwithstanding 21 U.S.C. § 877, repeating contentions they also have asserted in their pending appeal from the district court order

dismissing their claims, No. 22-11072 (11th Cir.). Those arguments lack merit. As our brief in that appeal explains, this Court and all the other courts to have addressed this issue have held that section 877 vests judicial review of DEA decisions applying the CSA exclusively in the appropriate court of appeals, via a timely filed petition for review. *See, e.g.*, *Sharma*, 511 F. App'x at 903; *John Doe, Inc.*, 484 F.3d at 568; *Oregon v. Ashcroft*, 368 F.3d 1118, 1120 & n.1 (9th Cir. 2004), *aff'd on other grounds*, *Gonzales v. Oregon*, 546 U.S. 243 (2006). "Thus, claims falling within the ambit of section 877—those challenging a final decision of the DEA under the CSA—are considered by the courts of appeals, not the district courts." *Hemp Indus. Ass'n v. DEA.*, 36 F.4th 278, 286 (D.C. Cir. 2022).

Noting that RFRA applies to "all [f]ederal law, and the implementation of that law," 42 U.S.C. § 2000bb-3, petitioners argue that RFRA overrides section 877. *See* Br. 15. As courts have recognized, however, RFRA creates a cause of action; it does not create jurisdiction. *See, e.g.*, *Odei v. U.S. Dep't of Homeland Sec.*, 937 F.3d 1092, 1095 (7th Cir. 2019); *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 194 (3d Cir. 2018); *La Voz Radio de la Communidad v. FCC*, 223 F.3d 313, 319 (6th Cir. 2000); *see also Sossamon v. Texas*, 563 U.S. 277, 282 (2011) (noting that the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, "includes an express . . . cause of action that is taken from RFRA"). As those courts correctly observe, RFRA contains no language purporting to create jurisdiction in any court, and "[t]he mere existence of a private right of action under a federal statute does not eliminate jurisdictional

obstacles." *Odei*, 937 F.3d at 1095. Accordingly, as the courts to have addressed the issue have all correctly held, RFRA does not authorize district courts to exercise jurisdiction where other statutes—such as 21 U.S.C. § 877—channel judicial review exclusively to the federal courts of appeals on direct review of agency action. *See Adorers of the Blood of Christ*, 897 F.3d at 194; *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 628-29 (7th Cir. 2007); *La Voz Radio*, 223 F.3d at 319; *cf. Odei*, 937 F.3d at 1095.

Petitioners' reference (Br. 15) to the fact that RFRA "operates as a kind of super statute," *Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020), does not suggest a different conclusion. The scope of RFRA's cause of action has no bearing on the distinct question of jurisdiction. *See St. John's United Church of Christ*, 502 F.3d at 629; *La Voz Radio*, 223 F.3d at 319.

Citing *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), petitioners also contend (Br. 11) that section 877 is inapplicable where the courts of appeals likely would not have an adequate administrative record to review. The record-sufficiency issue discussed in *McNary* has no bearing on the timeliness inquiry here. In addition, *McNary* addressed "a statutory review scheme that provided no opportunity for the plaintiffs to develop a factual record relevant to their constitutional claims before the administrative body." *Elgin v. Department of Treasury*, 567 U.S. 1, 21 n.11 (2012). Here, by contrast, DEA's process for seeking a religious exemption to the CSA allows claimants to make a sufficient record in the first instance regarding all aspects of a DEA exemption-denial.

20

Claimants can raise both substantive and procedural issues, including their ability to prove a substantial burden on a sincerely held religious belief. *See infra* pp. 5-7. Accordingly, DEA's guidance document for the public regarding how to file and support a petition for a religious exemption to the CSA encourages all religious-exemption requesters to provide "any and all" information they deem relevant. *DEA Guidance*, *supra*, at 2.[4] And "[n]othing in RFRA purported to repeal the authority of federal administrative agencies to find facts, subject to review by the courts of appeals." *St. John's United Church of Christ*, 502 F.3d at 629; *see also Elgin*, 567 U.S. at 19 (noting that there is "nothing extraordinary in a statutory scheme that vests . . . factfinding authority in a non-Article III entity" where judicial review is available on direct review in the federal courts of appeals).

Moreover, the record demonstrates that DEA conducted a "thorough review of the entire record" pertaining to Soul Quest's administrative-exemption request, Doc. 59-2, pg. 9; conducted "extensive interviews of Soul Quest leadership and other relevant persons," *id.* at 3; and "review[ed] Soul Quest's online videos[] and . . . website," *id.* DEA also posed specific questions to Soul Quest in writing concerning various areas of concern, including "the religious beliefs and mission of Soul Quest," Doc. 59-3, pg. 4, and "Soul Quest's Procurement, Storage, Distribution, and Disposal of Ayahuasca," *id.*

---

[4] DEA advised Soul Quest about the guidance document early in the administrative process and provided Soul Quest with a copy of the document. *See* Doc. 13-3, pg. 2.

That investigation, along with DEA's detailed discussion of its reasons for denying petitioners' religious-exemption request, provides a complete administrative record on which the Court could have considered a timely-filed petition for review of DEA's action.

*Catholic Diocese of Beaumont v. Sebelius*, 10 F. Supp. 3d 725 (E.D. Tex. 2014), cited by petitioners, *see* Br. 17, also is inapposite. Plaintiffs in that case sought an exemption from the Affordable Care Act's contraceptive mandate under RFRA and the Free Exercise Clause in district court. The district court declined to limit its review of the facts to the administrative record, *see* 10 F. Supp. 3d at 729, but that ruling has no bearing on whether 21 U.S.C. § 877 vests judicial review over DEA final decisions exclusively in the appropriate court of appeals, or on whether this petition for review was timely filed.

## II.  If This Court Were to Conclude that the Petition in this Case was Timely, It Is Clear that DEA Lawfully Denied Petitioners' Religious-Exemption Request.

Petitioners request this Court to vacate DEA's denial of their religious-exemption request on the grounds that DEA both lacked the authority to consider the request and also failed to adequately examine their request. The Court need not reach those arguments because, as explained, the petition for review is untimely. In any event, Petitioners' arguments are materially identical to contentions they raise in appeal No. 22-11072 and would fail here even if the Court were to reach the merits of petitioners' claims.

### A.    DEA Had Statutory Authority to Consider Petitioners' Request for a Religious Exception.

As DEA argued in appeal No. 22-11072, DEA had authority to consider Soul Quest's religious exemption request under the Controlled Substances Act, *see supra* p. 3-5, and RFRA, which states that "[g]overnment shall not substantially burden a person's exercise of religion" unless the "application of the burden to the person" "is in furtherance of a compelling government[] interest" and is "the least restrictive means of furthering that compelling government[] interest." 42 U.S.C. § 2000bb-1(a), (b).

Petitioners argue that RFRA does not apply to agencies, but RFRA "applies to all [f]ederal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3(a). That language necessarily includes action by federal agencies, since RFRA defines the term "government" to include "a branch, department, agency, instrumentality, and official" of the United States, *id.* § 2000bb-2(1), and since agencies plainly "implement[]" federal law.

Petitioners note that 42 U.S.C. § 2000bb-1(c) provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." That provision, however, does not require, or even permit, federal agencies to wait for an adverse court order before eliminating substantial burdens on

the free exercise of religion. Concluding otherwise would ignore the fact that RFRA applies to "all federal law" and to an "agency."

Petitioners' position also would create unnecessary litigation, preclude the development of RFRA issues in and through agency proceedings, and potentially require federal agency officials to subject themselves to personal liability for damages for violating RFRA, *see Tanzin v. Tanvir*, 141 S. Ct. 486 (2020). To that end, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), held that it was appropriate for federal agencies to consider RFRA in issuing regulations implementing the contraceptive-coverage mandate. *See id.* at 2383-84.

The Supreme Court's statement in *O Centro* that Congress formulated RFRA's compelling interest test "as the means for the courts to 'strike sensible balances between religious liberty and competing prior governmental interests,'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 439 (2006) (alteration omitted) (quoting 42 U.S.C. § 2000bb(a)(2), (5)), does not imply that RFRA is inapplicable to agencies. *O Centro* nowhere suggested that agencies are incapable of striking those kinds of "sensible balances," and the sentence from *O Centro* petitioners' quote (at Br. 16) specifically mentioned "courts" because the Supreme Court was responding to an argument that RFRA did not authorize *courts* to recognize exceptions to the CSA. *See O Centro*, 546 U.S. at 434.

Petitioners' suggestion (Br. 16-17) that DEA took a different view in *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009), is mistaken. The plaintiffs in that case did not invoke DEA's administrative process for seeking a religious exemption to the CSA, as that process did not exist at the time they filed their complaint. *See* Opposition to Motion for Temporary Restraining Order, Supplemental Memorandum of Law in Support of Application for Temporary Restraining Order, *Church of the Holy Light*, 615 F. Supp. 2d 1210 (No. CV-08-3095), Docs. 7, 9.

**B.    DEA Lawfully Denied Petitioners' Request for a Religious Exemption to the CSA.**

**1.    DEA's Denial of Petitioners' Request for a Religious Exception is Consistent with RFRA.**

RFRA, as noted, provides that "[g]overnment shall not substantially burden a person's exercise of religion" unless the "application of the burden to the person[] . . . is in furtherance of a compelling government[] interest" and is "the least restrictive means of furthering that compelling government[] interest." 42 U.S.C. § 2000bb-1(a), (b). Here, petitioners have not identified a substantial burden on the exercise of religion, and DEA's denial of their exemption request is the least restrictive means to accomplish compelling government interests.

### a. Petitioners Failed to Show That Their Ayahuasca Use Is a Sincere Exercise of Religion.

**i.** A RFRA claimant must identify government action substantially burdening a sincere exercise of religion. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n.28 (2014). To satisfy that requirement, the claimant's requested accommodation must be sincerely based on a religious belief as opposed to some other motivation. *See id.* at 717; *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022) (discussing RFRA's "sister statute," the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*).

DEA concluded that Soul Quest "has not satisfied its burden under RFRA of demonstrating that its use of ayahuasca is pursuant to a religious exercise and based on a sincerely held religious belief." Doc. 59-2, pg. 5. DEA concluded that Soul Quest "promotes ayahuasca to the public for self-help and therapeutic reasons, rather than solely to fellow believers for . . . religious ritual purposes." *Id.*; *see also id.* at 4 (noting, *e.g.*, that Soul Quest's website shows that Soul Quest "advertises the use and distribution of ayahuasca to the public as fundamentally medicinal").

DEA noted that "[o]n its website and in interactions with the public and prospective participants, Soul Quest describes the ayahuasca ceremony as plant medicine, a tool for physical health and spiritual growth, an 'add-on' to whatever journey the individual chooses, and as treatment for use with whatever counseling methodology a person wishes to pursue." Doc. 59-2, pg. 4. Soul Quest also offers

26

weekend ayahuasca retreats to any individual who is willing to sign various forms and pay a fee ranging from $350 to $900 for the retreat. Participants are not required to profess any religious belief in order to use ayahuasca at one of Soul Quest's weekend retreats or to maintain any continuing involvement with Soul Quest or membership in any other congregation of believers. *See id.* at 3, 4.

DEA also noted that during interviews with Soul Quest's leadership, Soul Quest's "Senior Minister" (Scott L. Irwin, Ph.D.) "described Soul Quest's use of ayahuasca not in religious terms but instead as a natural or 'integrative' medicine or therapy, designed to help people deal with trauma or other issues such as depression." Doc. 59-2, pg. 3. Similarly, the FAQ section of Soul Quest's website states that "[a]yahuasca is used primarily as a medicine[; and i]t is a natural remedy for depression, anxiety, posttraumatic stress, anxiety, drug addiction, and it also releases emotional blocks." *Id.* at 4 (quotation marks omitted).

The administrative record also amply supports DEA's conclusion that Soul Quest "sells ayahuasca as part of its for-profit secular offerings to the general public," Doc. 59-2, pg. 4, and allows weekend-retreat participants access to ayahuasca "without meaningful commitment to a coherently religious practice," *id.* at 5. DEA additionally found that Soul Quest's historical associations undermine the sincerity of its alleged religious beliefs. The agency noted that Soul Quest "changed its religious affiliation in order to use RFRA's legal protections to enable [it] to obtain and distribute controlled substances, rather than [as] an expression of a consistently and sincerely held religious

27

belief." *Id.*; *cf. United States v. Quaintance*, 608 F.3d 717 (10th Cir. 2010) (holding, for similar reasons, that the plaintiff there was not involved in the sincere exercise of religion); *Burwell*, 573 U.S. at 717 n.28 (citing *Quaintance* with approval).

These findings distinguish Soul Quest from the Church of the Holy Light, which persuaded another court that its ayahuasca use is a sincere religious exercise. *See Church of the Holy Light*, 615 F. Supp. 2d at 1216 (noting, *e.g.*, that the church there limited its distribution of ayahuasca to individuals who were willing to attend services that last several hours and sometimes all night, three or four times per month, and to learn enough Portuguese to be able to understand the hymns sung), *vacated on other grounds sub nom. Church of the Holy Light of the Queen v. Holder*, 443 F. App'x 302 (9th Cir. 2011); *see also* Doc. 59-2, pg. 6 (noting that because petitioners import their ayahuasca from a different source than the Church of the Holy Light, DEA is unable to track its shipments to ensure they are not being diverted to non-religious uses).

ii.    Petitioners contend that "[t]he sincerity of religious exercise with ayahuasca has been uniformly upheld by the courts." Br. 3 (first citing *O Centro*, 546 U.S. 418; and then citing *Church of the Holy Light*, 615 F. Supp. 2d 1210). RFRA, however, requires petitioners to show that their *own* ayahuasca use is a sincere exercise of religion. *See* 42 U.S.C. § 2000bb-1(b) (stating that RFRA must applied "to the person"). Accordingly, what courts have held about other religious claimants' sincerity does not show that petitioners' use of ayahuasca constitutes a sincere exercise of religion.

Petitioners contend (Br. 19) that an affidavit attached to the second amended complaint in their civil action shows their ayahuasca use is a sincere exercise of a religious belief. A petition for review under 21 U.S.C. § 877, however, is limited to review of the administrative record. *See supra* p. 12. Petitioners' second amended complaint was filed *after* DEA denied their request for a religious exemption and is not part of the administrative record here. In any event, petitioners fail to identify what facts alleged in the affidavit show their ayahuasca use is a sincere exercise of a religious belief. Courts "are not required to 'mine' the record looking for evidence not presented by the parties." *A.L. v. Jackson Cty. Sch. Bd.*, 635 F. App'x 774, 786 (11th Cir. 2015) (per curiam) (noting that "appellate judges 'are not like pigs, hunting for truffles buried in briefs'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam))).

Petitioners also complain that DEA did not ask Soul Quest for evidence demonstrating its religious sincerity, *see* Br. 5, 19, but RFRA imposes no such requirement. Petitioners chose to ask DEA for a religious exemption from the CSA. Having done so, it was their burden to prove a substantial burden to the sincere exercise of religion, and they could have submitted any evidence they considered relevant to that issue. *See supra* p. 21. Moreover, as noted, DEA amply explained its conclusion that petitioners' ayahuasca use is not the sincere exercise of religion, and DEA did in fact ask Soul Quest for information related to sincerity. *See* Doc. 42-3, pp. 2-6.

29

In addition, because proof of sincere religious exercise is part of a claimant's prima facie RFRA case, DEA was plainly authorized to address that issue. *See, e.g.*, *Burwell*, 573 U.S. at 717 n.28 (noting that a "pretextual assertion of a religious belief in order to obtain an [RFRA] exemption . . . would fail"); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (noting, in discussing RFRA's sister statute RLUIPA, that agency officials "may appropriately question whether a prisoner's religiosity[] . . . is authentic").

### b. DEA's Denial of Petitioners' Religious-Exemption Request Was the Least Restrictive Means to Further a Compelling Government Interest.

Petitioners' RFRA claim also fails because DEA properly determined that denying petitioners' religious-exemption request is the least restrictive means to further two compelling interests: "the need to protect public health and safety from potentially dangerous substances, and the need to prevent diversion of controlled substances into the illicit market." Doc. 59-2, pg. 6. For example, DEA noted allegations in a wrongful-death action filed against Soul Quest regarding an individual who died after ingesting ayahuasca and another substance (kambo, the secretion of a South American frog) at a Soul Quest retreat. *Id.* at 8. DEA also emphasized a report that Soul Quest staff members delayed calling 911 when a participant experienced adverse effects from an unknown substance administered to her during a Soul Quest ceremony. *Id.* In addition, DEA found that Soul Quest "currently lacks adequate measures to safeguard either the imported plants in its custody or the tea, once manufactured." *Id.* During DEA's preregistration investigation, for example, Soul Quest "made no commitment to

30

lawfully import or acquire the plant material containing DMT within the comprehensive regulatory system established under the CSA," *id.*, which is necessary to allow the DEA to "track these shipments to ensure that none are diverted into illicit channels," *id.* at 6.

Petitioners' opening brief makes no effort to respond to these concerns, and wrongly suggests that DEA has "consistently viewed religious exercise with ayahuasca as . . . devoid of issues related to diversion, or health and safety to religious adherents or members of the general public." Br. 3. Petitioners provide no citation for that assertion, which conflicts with DEA's denial letter and is without foundation. As noted, ayahuasca contains DMT (short for Dimethyltryptamine), a Schedule I controlled substance that has "a high potential for abuse," "no currently accepted medical use in treatment in the United States," and which "[t]here is a lack of accepted safety for use . . . under medical supervision." 21 U.S.C. § 812(b)(1). That substance is "exceptionally dangerous," *O Centro*, 546 U.S. at 432, and, as explained, DEA has compelling particularized reasons for being concerned about petitioners' ayahuasca use.

DEA also lawfully concluded that denying petitioners' religious-exemption request is the "least restrictive means" of accomplishing the above-identified compelling interests. Doc. 59-2, pg. 9. For example, DEA noted that because Soul Quest's sources for obtaining ayahuasca "are not DEA registrants, and because neither they nor Soul Quest will answer questions on the subject, DEA cannot determine how much of the controlled substance is being imported, or inspect its chain of custody within the United States to determine if diversion has occurred." *Id.* at 7. Petitioners'

opening brief does not discuss RFRA's least-restrictive-means requirement, forfeiting any argument on the issue.

### 2.    Petitioners' APA Claim Lacks Merit.

Petitioners argue (Br. 5, 17) that a guidance document DEA issued to advise the public about how to request a religious exemption from the CSA, *see supra* p. 6, is invalid under the APA, *see* 5 U.S.C. § 553, because it was issued without notice and comment. The guidance document makes clear, however, that it "do[es] not have the force and effect of law" and that it "is intended only to provide clarity to the public regarding existing requirements under the law or Department policies." *Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act (Revised)*, *supra*, at 3. Documents of that type, which are considered "interpretive" rules, do not require notice and comment. *See, e.g.*, *Warshauer v. Solis*, 577 F.3d 1330, 1337-39 (11th Cir. 2009).

### 3.    Petitioners' Reference to the Major Questions Doctrine Does Not Advance Their Position.

Petitioners' opening brief (at 12) also contends that DEA's guidance document violates the major questions doctrine. This argument, which petitioners also raise in appeal No. 22-11072, is also without foundation.

Ordinarily, the analysis of an agency's statutory authority "begins with the statutory text," and when the text is clear, "ends there." *National Ass'n of Mfrs. v. Department of Def.*, 138 S. Ct. 617, 631 (2018) (quoting *BedRoc Ltd., LLC v. United States*,

541 U.S. 176, 183 (2004)). Thus, courts ordinarily may not "impos[e] limits on an agency's discretion that are not supported by the text" of the relevant statute. *Little Sisters*, 140 S. Ct. at 2381.

The major questions doctrine arises in "extraordinary cases" where the "history and the breadth of the authority that [the agency] has asserted," and the "'economic and political significance' of that assertion," "provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022) (alteration in original) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000)). In those cases, the agency "must point to 'clear congressional authorization' for the power it claims." *Id.* at 2609.

Even if the major questions doctrine were applicable here, its concerns would be satisfied because, as explained, RFRA's text clearly authorizes federal agencies to make religious exemptions to generally applicable agency rules and action, and the Supreme Court expressly so held in *Little Sisters*. Thus, Congress has provided whatever clarity could even conceivably be required here.

Although the Court thus has no need to consider the premises of petitioners' argument, their analysis mistakes the import of the Supreme Court's decisions. In contrast to the statute at issue in *West Virginia v. EPA*, RFRA does not represent a "transformative expansion in [the federal government's] regulatory authority." 142 S. Ct. at 2610 (quoting *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014)). RFRA represents a contraction, rather than an expansion, of federal power. After all, RFRA

authorizes, and in some cases even requires, the federal government to exempt religious claims from regulation.

In considering petitioners' religious-exemption request, DEA also did not claim to discover an "unheralded power" in an "ancillary provision" of a "long-extant statute." *West Virginia*, 142 S. Ct. at 2610 (brackets omitted) (quotation marks omitted). As explained, the Supreme Court recognized agencies' authority to consider RFRA exemption requests in *Little Sisters*, and that authority is prominently set out in RFRA's plain text. Petitioners also wrongly contend (Br. 28) that RFRA implicates the major questions doctrine because agencies lack expertise regarding whether a religious claim is sincere. As explained, DEA has ample fact-finding capability in considering requests for religious exemptions from the CSA, and sincerity is part of a RFRA claimant's prima facie showing, whether the claimant is proceeding in court or before an agency.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.

Respectfully submitted,

Brian M. Boynton
  *Principal Deputy Assistant Attorney General*
Roger Handberg
  *United States Attorney*
Mark Stern
  (202) 514-5089
  <u>s/ Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.
  (202) 514-3427
  *Attorneys, Civil Division*
  *Appellate Staff, Room 7527*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8759 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

<u>s/ Lowell V. Sturgill Jr.</u>
Lowell V. Sturgill Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, I electronically filed the foregoing Brief for Respondents with the Clerk of the Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


       /s/ Lowell V. Sturgill Jr.
       Lowell V. Sturgill Jr.

**ADDENDA**

Documents from district court docket in *Soul Quest Church of Mother Earth, Inc. v. Garland*, No. 6:20-cv-00701 (M.D. Fla.):

1.    Dkt. 13-3: DEA Letter dated August 1, 2016

2.    Dkt. 30: Plaintiffs' Motion to File Amended Complaint

3.    Dkt. 31: Plaintiffs' Renewed Motion for Preliminary Injunction

4.    Dkt. 74: Order dated March 4, 2022

Exhibit 2



**U. S. Department of Justice**
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

*www.dea.gov*

AUG 0 1 2016

Oklevueha Native American Church Somaveda of Soul Quest Inc.
1794 Laurel Brook Loop
Casselberry, Florida 32707

To Whom it May Concern:

It has come to our attention that you are involved in offering "retreats" through your website, www.soulquest-retreat.com, at which you provide ayahuasca and other controlled substances to your clientele. As you are aware, ayahuasca contains the hallucinogen dimethyltryptamine ("DMT"), a substance that is listed on Schedule I of the Comprehensive Drug Abuse Prevention and Control Act of 1970, also known as the "Controlled Substances Act" ("CSA"), and its implementing regulations. 21 U.S.C. § 812(c)(I)(c)(6); 21 C.F.R. § 1308.11(d)(19). Your website also references the use of Sananga, which commonly contains ibogaine, another Schedule I hallucinogen. 21 U.S.C. § 812(c)(I)(c)(8); 21 C.F.R. § 1308.11(d)(21), and San Pedro, which contains mescaline, also a Schedule I hallucinogen. 21 U.S.C. § 812(c)(I)(c)(11); 21 C.F.R. § 1308.11(d)(24). Your website also contains a section explaining to potential clients that your provision of such substances at your retreats will be legal because it is exempt from federal controlled substance laws.

Under the CSA and its implementing regulations, Congress has prohibited the importation and distribution of Schedule I Controlled Substances except as authorized by law. 21 U.S.C. §§ 841(a), 952(a)(2), 960. Under the Religious Freedom Restoration Act (RFRA), Congress provided that the "Government shall not substantially burden a person's exercise of religion" unless the Government can demonstrate "that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. These competing mandates require the DEA to consider the "application of the [CSA] to the person— the particular claimant whose sincere exercise of religion is being substantially burdened" and engage in a "case-by-case consideration of religious exemptions to generally applicable rules" so that it may "strike sensible balances" of interests based on "the particular practice at issue." *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 430, 437, 439 (2006).

The DEA has published guidance on our website for those who seek to petition for an exemption under RFRA, a copy of which is attached with this letter. We invite you to submit such a petition so that the DEA may consider it based on the specific facts regarding your plans to distribute controlled substances. We encourage you to file a petition and obtain a response to your request for an exemption before engaging in the distribution of DMT under the assumption that this conduct qualifies as an exempt religious exercise. If you are relying on something other than RFRA as authority to distribute controlled substances, we would welcome all of the facts and law that you would want the DEA to consider in determining whether such practices are lawful.

Oklevueha Native American Church Somaveda of Soul Quest Inc.

Page 2

We would be happy to answer any questions you might have about the petition process. Please contact James Arnold, Chief of Policy at the Liaison and Policy Section of the Office of Diversion Control at (202) 353-1414 if you have questions.

Sincerely,

Louis J. Milione
Deputy Assistant Administrator
Office of Diversion Control
Drug Enforcement Administration

Enclosure

cc:    Oklevueha Native American Church Somaveda of Soul Quest Inc.,
       1371 Hancock Lone Palm Road, Orlando, Florida 32828

       The Thai Yoga Center, 5401 Saving Grace Lane, Brooksville, Florida 34602

Guidance Regarding Petitions
for Religious Exemption from the Controlled Substances Act
Pursuant to the Religious Freedom Restoration Act

In recent years, the Drug Enforcement Administration (DEA) has seen an increase in requests from parties requesting religious exemptions from the Controlled Substances Act (CSA) to permit the use of controlled substances. The Religious Freedom Restoration Act (RFRA) provides that the "Government shall not substantially burden a person's exercise of religion" unless the Government can demonstrate "that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. In *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 126 S.Ct. 1211 (2006), the Supreme Court held that government action taken pursuant to the CSA is subject to RFRA. In order to obtain an exemption under RFRA, a party must, as a preliminary matter, demonstrate that its (1) sincere (2) religious exercise is (3) substantially burdened by the CSA. 42 U.S.C. § 2000bb *et seq.*

The guidelines that follow are an interim measure intended to provide guidance to parties who wish to petition for a religious exemption to the CSA:

1. **Filing Address.** All petitions for exemption from the Controlled Substances Act under RFRA shall be submitted in writing to Joseph T. Rannazzisi, Deputy Assistant Administrator, Office of Diversion Control, Drug Enforcement Administration, 8701 Morrissette Drive, Springfield, Virginia 22152.

2. **Content of Petition.** A petition may include both a written statement and supporting documents. A petitioner should provide as much information as he/she deems necessary to demonstrate that application of the Controlled Substances Act to the party's activity would (1) be a substantial burden on (2) his/her sincere (3) religious exercise. Such a record should include detailed information about, among other things, (1) the nature of the religion (*e.g.*, its history, belief system, structure, practice, membership policies, rituals, holidays, organization, leadership, *etc.*); (2) each specific religious practice that involves the manufacture, distribution, dispensing, importation, exportation, use or possession of a controlled substance; (3) the specific controlled substance that the party wishes to use; and (4) the amounts, conditions, and locations of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession. A petitioner is not limited to the topics outlined above, and may submit any and all information he/she believes to be relevant to DEA's determination under RFRA and the Controlled Substances Act.

3. **Signature.** The petition must be signed by the petitioner, who must declare under penalty of perjury that the information provided therein is true and correct. *See* 28 U.S.C. § 1746.

**4. Acceptance of Petition for Filing.** Petitions submitted for filing are dated upon receipt by DEA. If it is found to be complete, the petition will be accepted as filed, and the petitioner will receive notification of acceptance. Petitions that do not conform to this guidance will not generally be accepted for filing. A petition that fails to conform to this guidance will be returned to the petitioner with a statement of the reason for not accepting the petition for filing. A deficient petition may be corrected and resubmitted. Acceptance of a petition for filing does not preclude DEA from making subsequent requests for additional information.

**5. Requests for Additional Information.** DEA may require a petitioner to submit such additional documents or written statements of facts relevant to the petition as DEA deems necessary to determine whether the petition should be granted. It is the petitioner's responsibility to provide DEA with accurate contact information. If a petitioner does not respond to a request for additional information within 60 days from the date of DEA's request, the petition will be considered to be withdrawn.

**6. Applicability of DEA Regulations.** A petitioner whose petition for a religious exemption from the Controlled Substances Act is granted remains bound by all applicable laws and Controlled Substances Act regulations governing registration, labeling and packaging, quotas, recordkeeping and reporting, security and storage, and periodic inspections, among other things. *See* 21 C.F.R. §§ 1300-1316. A petitioner who seeks exemption from applicable CSA regulations (as opposed to the CSA itself) may petition under 21 C.F.R. § 1307.03. Such petition must separately address each regulation from which the petitioner seeks exemption and provide a statement of the reasons for each exemption sought.

**7. Activity Prohibited Until Final Determination.** No petitioner may engage in any activity prohibited under the Controlled Substances Act or its regulations unless the petition has been granted and the petitioner has applied for and received a DEA Certificate of Registration. A registration granted to a petitioner is subject to subsequent suspension or revocation, where appropriate, consistent with CSA regulations and RFRA.

**8. Final Determination.** After the filed petition—along with all submissions in response to any requests for additional information—has been fully evaluated, the Deputy Assistant Administrator of the Office of Diversion Control shall provide a written response that either grants or denies the petition. Except in the case of affirming a prior denial or when the denial is self-explanatory, the response shall be accompanied by a statement of reasons upon which the decision is based. This written response is a final determination under 21 U.S.C. § 877.

**9. Application of State and Other Federal Law.** Nothing in these guidelines shall be construed as authorizing or permitting any party to take any action which such party is not authorized or permitted to take under other Federal laws or under the laws of the State in which he/she desires to take such action. Likewise, compliance with these guidelines shall not be construed as compliance with other Federal or State laws unless expressly provided in such other laws.

# Guidance Regarding Petitions for Religious Exemption from the Controlled Substances Act Pursuant to the Religious Freedom Restoration Act

In recent years, the Drug Enforcement Administration (DEA) has seen an increase in requests from parties requesting religious exemptions from the Controlled Substances Act (CSA) to permit the use of controlled substances. The Religious Freedom Restoration Act (RFRA) provides that the "Government shall not substantially burden a person's exercise of religion" unless the Government can demonstrate "that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-l. In **Gonzales** v. **O Centra Espirita Beneficente Uniao do Vegetal,** 126 S.Ct. 1211 (2006), the Supreme Court held that government action taken pursuant to the CSA is subject to RFRA. In order to obtain an exemption under RFRA, a party must, as a preliminary matter, demonstrate that its (1) sincere (2) religious exercise is (3) substantially burdened by the CSA. 42 U.S.C. § 2000bb et seq.

The guidelines that follow are an interim measure intended to provide guidance to parties who wish to petition for a religious exemption to the CSA:

1.  *Filing Address.* All petitions for exemption from the Controlled Substances Act under RFRA shall be submitted in writing to Susan A. Gibson, Deputy Assistant Administrator, Diversion Control Division, Drug Enforcement Administration, 8701 Morrissette Drive, Springfield, Virginia 22152.

2.  *Content of Petition.* A petition may include both a written statement and supporting documents. A petitioner should provide as much information as he/she deems necessary to demonstrate that application of the Controlled Substances Act to the party's activity would (1) be a substantial burden on (2) his/her sincere (3) religious exercise. Such a record should include detailed information about, among other things, (1) the nature of the religion {e.g., its history, belief system, structure, practice, membership policies, rituals, holidays, organization, leadership, etc.); (2) each specific religious practice that involves the manufacture, distribution, dispensing, importation, exportation, use or possession of a controlled substance; (3) the specific controlled substance that the party wishes to use; and (4) the amounts, conditions, and locations of its anticipated manufacture, distribution, dispensing, importation, exportation, use or possession. A petitioner is not limited to the topics outlined above, and may submit any and all information he/she believes to be relevant to DEA's determination under RFRA and the Controlled Substances Act.

3.  *Signature.* The petition must be signed by the petitioner, who must declare under penalty of perjury that the information provided therein is true and correct. See *28 U.S.C. § 1746.*

4.  *Acceptance of Petition for Filing.* Petitions submitted for filing are dated upon receipt by DEA. If it is found to be complete, the petition will be accepted as filed, and the petitioner will receive notification of acceptance. Petitions that do not conform to this guidance will not generally be accepted for filing. A petition that fails to conform to this guidance will be

returned to the petitioner with a statement of the reason for not accepting the petition for filing. A deficient petition may be corrected and resubmitted. Acceptance of a petition for filing does not preclude DEA from making subsequent requests for additional information.

5. *Requests for Additional Information.* DEA may require a petitioner to submit such additional documents or written statements of facts relevant to the petition as DEA deems necessary to determine whether the petition should be granted. It is the petitioner's responsibility to provide DEA with accurate contact information. If a petitioner does not respond to a request for additional information within 60 days from the date of DEA's request, the petition will be considered to be withdrawn.

6. *Applicability of DEA Regulations.* A petitioner whose petition for a religious exemption from the Controlled Substances Act is granted remains bound by all applicable laws and Controlled Substances Act regulations governing registration, labeling and packaging, quotas, recordkeeping and reporting, security and storage, and periodic inspections, among other things. See *21 C.F.R. §§ 1300-1316.* A petitioner who seeks exemption from applicable CSA regulations (as opposed to the CSA itself) may petition under *21 C.F.R. § 1307.03.* Such petition must separately address each regulation from which the petitioner seeks exemption and provide a statement of the reasons for each exemption sought.

7. *Activity Prohibited Until Final Determination.* No petitioner may engage in any activity prohibited under the Controlled Substances Act or its regulations unless the petition has been granted and the petitioner has applied for and received a DEA Certificate of Registration. A registration granted to a petitioner is subject to subsequent suspension or revocation, where appropriate, consistent with CSA regulations and RFRA.

8. *Final Determination.* After the filed petition—along with all submissions in response to any requests for additional information—has been fully evaluated, the Deputy Assistant Administrator of the Diversion Control Division shall provide a written response that either grants or denies the petition. Except in the case of affirming a prior denial or when the denial is self-explanatory, the response shall be accompanied by a statement of reasons upon which the decision is based. This written response is a final determination under *21 U.S.C. § 877.*

9. *Application of State and Other Federal Law.* Nothing in these guidelines shall be construed as authorizing or permitting any party to take any action which such party is not authorized or permitted to take under other Federal laws or under the laws of the State in which he/she desires to take such action. Likewise, compliance with these guidelines shall not be construed as compliance with other Federal or State laws unless expressly provided in such other laws.

Last updated: February 26, 2018

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SOUL QUEST CHURCH OF MOTHER   )
EARTH, INC., *et al.*,   )
   )
   Plaintiffs,   )
   )
vs.   )   Case No.: 6:20-cv-00701-WWB-DCI
   )
MERRICK B. GARLAND, Attorney   )
General of the United States   )
of America, *et al.*,   )
   )
   Defendants.   )
_____)

**PLAINTIFFS' MOTION FOR LEAVE TO**
**AMEND COMPLAINT UNDER *FED.R.CIV.P.* 15**

COME NOW, the Plaintiffs, Soul Quest Church of Mother Earth, Inc., and

Christopher Young, by and through the undersigned counsel, and respectfully move,

pursuant to *Fed. R. Civ. P.* 15 for leave to amend their complaint in the instant action. In

support hereof, the Plaintiffs submit the following memorandum of law.

**MEMORANDUM OF LAW**

*I.   Procedural and Factual Footing of Case*

The Plaintiffs instituted the instant action via complaint on April 22, 2020 and filed

an Amended Complaint on May 4, 2020, for declaratory as well as preliminary and

permanent injunctive relief. Dkts. 1 & 13. The organic claim of the Plaintiffs stems from

the Defendants' failure to process the Plaintiffs' application for a religious exemption for

the possession and use of certain controlled substances. *Id.* Said exemption application

had been filed with the Defendants in August, 2017. *Id.* As the Defendants had failed to

act for more than three years and given the wholesale absence of any established

administrative procedures for the handling and processing of exemption claims such as the one made by the Plaintiffs, the Plaintiffs sought relief from this Court to end the unfair and unlawful quashing of their Constitutional and statutory rights to freedom of religious expression.

Thereafter, and in order to seek a negotiated resolution of the judicial matter, the Plaintiffs and the Defendants sought and were granted a series of stays of this action. *E.g.*, Dkts 18 & 23.  Said "process" ended on April 16, 2021, when the Defendants provided what it called a "final determination[,]" contrary to the facts, law, as well as the interests and goals of the Plaintiffs in the instant action.  Consequently and in order to pursue the rightful treatment to which Plaintiffs claim entitlement, the instant action has returned to a matter of active litigation.  In light of the Defendants' erroneous and unsupportable decision, the Plaintiffs now need to press their claims for relief in this proceeding.  Consequently and in order to take in to account the developments since inception of the instant suit, amendment of the Plaintiffs' Amended Complaint is both necessary and appropriate to achieve the desired an appropriate end.

II. *Law and Analysis*

A plaintiff is entitled to amend a pleading as a matter of right under *Fed. R. Civ. P.* 15(a)(1) within 21 days of service of Rule 12(b)(6) motion, otherwise a plaintiff may amend a "pleading only with the opposing party's written consent or the court's leave." *Fed. R. Civ. P.* 15(a)(2). Leave to amend is to be given freely "when justice so requires." *Id.* Absent a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment"

the Court should grant leave "freely." *Foman v. Davis,* 371 U.S. 178, 182 (1962).  Herein, none of the above-described negative findings are present.

Of course, a plaintiff must describe the substance of his proposed amendments or attach a copy of the proposed second amended complaint. *E.g., Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (noting that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."); *accord Doe v. Pryor,* 344 F.3d 1282, 1288 (11th Cir. 2003).[1]

Attached hereto as Exhibit A is the proposed Verified Second Amended Complaint which the Plaintiffs seek leave to file.  Of note in the attached document, there are a number of material edits, additions, and deletions, including the following:

1.    Paragraph seven (7) of the proposed Verified Second Amended Complaint now contains additional statutory authority. ;

2.    Paragraph eight (8) of the proposed Verified Second Amended Complaint now contains allegations and additional authority regarding jurisdiction of the this Court to hear this action;

---

[1] It is expected that the Defendants will argue that 21 U.S.C. § 877 divests this Court of jurisdiction to hear the Plaintiffs' claims.  However and as may be more deeply explored should the Defendants seek to advance such an novel argument based upon the facts in the case-at-bar, it is of note that although self-described as a "final determination[,]" the Defendants' decision is not "final" within the meaning of 21 U.S.C. § 877.  *See, e.g., Bennett v. Spears*, 520 U.S. 154, 178 (1997).  Even if "final[,]" the findings of fact therein (especially as it relates to the claimed absence of religious sincerity of the plaintiffs' beliefs) is not supported by any evidence, let alone the statutory mandate of "substantial evidence." 21 U.S.C. § 877.  In all events, were this issue to arise, the Plaintiffs would seek leave to reply in the event that Defendants seek to escape review of their behavior via 21 U.S.C § 877.

3.      Footnote one (1) of the proposed Verified Second Amended Complaint now alleges additional content regarding the lack of guidelines with respect to the submission of a religious exemption application;

4.      Paragraph seventeen (17) of the proposed Verified Second Amended Complaint now alleges the updated procedural posture of the proceeding and historical information regarding the granting of religious exemption applications, generally;

5.      Beginning in paragraph twenty-one (21) of the proposed Verified Second Amended Complaint now contains additional allegations regarding events which have transpired following the filing of the Amended Verified Complaint;

6.      Paragraph thirty-four (34) of the proposed Verified Second Amended Complaint contains additional allegations regarding the DEA's "final determination" on the issue of religious sincerity;

7.      Paragraph eighty-three (83) of the proposed Verified Second Amended Complaint contains additional allegations on the status of the original application for religious exemption, since the filing of the Amended Verified Complaint;

8.      Paragraph eighty-four (84) of the proposed Verified Second Amended Complaint contains new allegations and details the Plaintiffs' position with respect to the negotiations that have occurred with respect to the instant matter;

9.      Paragraph eighty-nine (89) of the proposed Verified Second Amended Complaint now included allegations including the Defendants' failure to abide by the requirements of the Administrative Procedure Act;

10.     Paragraph ninety-three (93) of the proposed Verified Second Amended Complaint contains additional allegations with respect to the Defendants' denial of the Plaintiffs' application for religious exemption;

11.     Paragraph one hundred and one (101) of the proposed Verified Second Amended Complaint contains additional allegations concerning the RFRA "guidelines'" and the Defendants' non-compliance with the Administrative Procedure Act;

12.     Paragraph one hundred and four (104), and paragraphs one hundred and nine (109) through one hundred and twelve (112) of the proposed Verified Second Amended Complaint contains significant allegations regarding the status of the instant matter, the Plaintiffs' petition for religious exemption and the Defendants' decision making process, and the Defendants' failure to abide by the requirements of RFRA and the Administrative Procedure Act;

13.     Paragraph one hundred and fourteen (114) of the proposed Verified Second Amended Complaint contains revised allegations on the Defendants' power (or lack thereof) to deny the Plaintiffs' application for religious exemption without the use of permissibly regulations and rules;

14.     Paragraph one hundred and sixteen (116) of the proposed Verified Second Amended Complaint additionally described the Plaintiffs' allegations as to why the Defendants' "guidelines" should be deemed arbitrary; and

15.     Paragraphs one hundred twenty (120) and one hundred twenty twenty-one (121) of the proposed Verified Second Amended Complaint contain new allegations concerning how the Defendants' denial through silence and inaction has functioned to burden the Plaintiffs' rights under the United States Constitution.

## **CONCLUSION**

WHEREFORE, the Plaintiffs, having met the standards for leave set forth in *Fed. R. Civ. P.* 15, seek leave to amend their Second Amended Verified Complaint (Exhibit A hereto) in the instant matter and for such other and further relief as the instant motion merits.

*- BALANCE OF PAGE LEFT INTENTIONALY BLANK -*

## Local Rule 3.01(g) Certification

The undersigned hereby certify that, pursuant to Local Rule 3.01(g), counsel for the Plaintiffs have conferred with counsel for the Defendants in a good faith effort to resolve the instant motion. However and during said conferral which was expressly conducted under *Local Rule* 3.01(g), counsel for the Defendants informed the undersigned that it is the policy of the office of counsel for the Defendants not to take any position whatsoever on amended pleadings until a review of the same.  Consequently, and as the Plaintiffs have attached the proposed Second Amended Complaint hereto without prior provision of a draft to counsel for the Defendants, the Defendants have no position on the relief requested.

Respectfully submitted this _____ day of May 2021.

**By:** *s/Derek B. Brett*_____
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:   (902) 468-3066
Facsimile:   (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs

s/A. Brian Phillips_____
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:   (407) 872-0777
Telecopier:   (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 07, 2021, I electronically filed a copy of the foregoing Motion for Leave to File Amened Complaint will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

<u>s/A. Brian Phillips</u>
A. BRIAN PHILLIPS, ESQ.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| SOUL QUEST CHURCH OF MOTHER EARTH, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 6:20-cv-00701-WWB-DCI |
| | ) | |
| MERRICK B. GARLAND, Attorney General of the United States of America, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RENEWED PETITION FOR**
**PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**
**(Preliminary Injunctive Relief Requested)**

COME NOW, the Plaintiffs, Soul Quest Church of Mother Earth, Inc., a Florida Domestic Non-Profit Corporation, on its own behalf and on behalf of its members, and Christopher Young, individually and as the spiritual leader of Soul Quest Church of Mother Earth (hereinafter, collectively, "Plaintiffs"), by and through the undersigned counsel, respectfully move, pursuant to Fed. R. Civ. P. 65 and M. D. Fla. Local Rules 4.05 and 4.06, for this Court to enjoin the Defendants from prosecuting and arresting the Plaintiffs, and the members of Plaintiff Soul Quest Church. As required by M. D. Fla. Local Rule 4.05, this Petition is supported by a Second Amended Verified Complaint, filed contemporaneously with this Motion, and by the Declaration of Plaintiff Christopher Young, attached hereto as Exhibit 1. In support thereof, Plaintiffs state as follows:

## I.   **INTRODUCTION**

1.     Determined to exercise its authority without regard for judicial mandates or the Plaintiffs' valid, expressed religious needs, the Defendants have unlawfully impeded and, indeed, entirely barred Plaintiffs from practicing their religious faith.  The Defendants' conduct at issue here, as fully set forth in the Plaintiffs' Verified Complaint, show the lengths to which the Defendants have gone to persecute Plaintiffs' minority religion, and deny Plaintiffs their Constitutional right to practice their faith.

2.     The Defendants have violated, and continue to violate, the Plaintiffs' rights under the First Amendment to the United States Constitution to practice their religion and to free speech, and the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment.  The continuing threat of arrest and prosecution against the Plaintiffs, and the members of Plaintiff Soul Quest Church, Inc. (hereinafter, "Soul Quest Church"), and the continuing failure to process the Plaintiffs' request for a religious exemption, have placed the Plaintiffs into a position where they are unable to freely practice their sacred religious practices; likewise, there remains an ongoing, imminent threat of harm stemming from the prospect of arrest and prosecution.

3.     As set forth below, the Plaintiffs establish all four elements for entry of a preliminary injunction. "Because Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy."  The Complete Angler, LLC v. City of Clearwater, 607 F. Supp. 2d. 1326, 1335 (M. D. Fla. 2009) (citing to KH Outdoor, LLC v. City of Trussville, 458 So. 2d 1261, 1271-71 (11th Cir. 2006)).

4.     First, the Plaintiffs are likely to succeed on the merits, as the Defendants' conduct is unconstitutional both on its face and as-applied, as they have impermissibly punished,

and continue to seek to punish, the Plaintiffs for practicing their religion, in addition to actively denying the Plaintiffs the right to seek redress of their grievances, and by insisting that the Plaintiffs so petition through a byzantine and unclear system. Second, each day that the Plaintiffs are prohibited from practicing their religion through these threats and denied rights to fairly petition for redress of same, constitutes an irreparable injury that cannot be redressed except through injunctive relief. Third, the Defendants' conduct does nothing to protect the public interest. Finally, no bond should be required, as none is appropriate where the Plaintiffs, as here, allege the infringement of a fundamental Constitutional right.

## **FACTS**

5.     Plaintiff Soul Quest Church is a registered domestic non-profit corporation incorporated under the laws of the State of Florida, with a principal office located in Orlando, Florida.

6.     A copy of Plaintiff Soul Quest Church's faith-based principles is attached hereto, and incorporated by reference herein as Exhibit 2.

7.     A copy of Plaintiff Soul Quest Church's fundamental moral and ethical tenets is attached hereto, and incorporated by reference herein as Exhibit 3.

8.     A copy of Soul Quest Church's scriptural and liturgical foundations, and Soul Quest Church's mission statement, is attached hereto, and incorporated by reference herein as Exhibit 4.

9.     A copy of Soul Quest Church's religious holiday calendar is attached hereto, and incorporated by reference herein as Exhibit 5.

10.     A copy of Soul Quest Church's dietary and fasting rituals is attached hereto, and incorporated by reference herein as Exhibit 6.

11.     A copy of Soul Quest Church's documents setting out its governance is attached hereto, and incorporated by reference herein as Exhibit 7.

12.     A copy of Soul Quest Church's documents setting out the roles and responsibilities of its members is attached hereto, and incorporated by reference herein as Exhibit 8.

13.     A copy of Soul Quest Church's federal and state incorporation documents, demonstrating its purpose as a religious non-profit institution, is attached hereto, and incorporated by reference herein as Exhibit 9.

14.     Sacramental use of ayahuasca plays a central and indeed critical role in Soul Quest Church's theology and religious practice, and the Spirit of Ayahuasca is the head of Soul Quest Church. See Exhibits 2-9.

15.     Ayahuasca is a sacramental beverage prepared from the Banisteriopsis caapi vine, and the Psychotropia viridis vine.

16.     Psychotropia viridis contains trace amounts of the substance N,N-5,5-dimethyltryptamine ("DMT").

17.     DMT is listed as a Schedule I controlled substance in the Controlled Substances Act ("CSA"). 21 U.S.C. § 812(c)(c)(6).

18.     Therefore, the Plaintiffs are not able to import substances containing DMT, including the Plaintiffs' sacramental ayahuasca.

19.     In light of ayahuasca's importance to the Plaintiffs' sincere religious beliefs, and the Controlled Substances Act's prohibition upon DMT, the Plaintiffs filed a religious

exemption application with the Defendants on or about August 21, 2017.  A copy of the Plaintiffs' application for a religious exemption is attached hereto, and incorporated by reference herein as <u>Exhibit 10</u>.

20.    In drafting this application, the Plaintiffs made use of a "guide" to the filing of religious exemptions, proffered to the public by the Defendants as a purported aid to follow during the process. A copy of this "guide" is attached hereto, and incorporated by reference herein as <u>Exhibit 11</u>.

21.    While Plaintiffs' application for a religious exemption remains pending, the Plaintiffs are prohibited by the Defendants from blending their sacramental ayahuasca. <u>See Exhibit 11</u> at § 7.  Likewise, the rejection of any such application would have the effect of entirely undermining the ability of the Plaintiffs to practice their fundamental sacramental ritual involving the consumption of ayahuasca tea.

22.    From the day the Plaintiffs filed their application to the present, the Plaintiffs have routinely made inquiries to the Defendants as to the status of their application.

23.    Despite the Plaintiffs' diligent efforts in preparing and submitting an application, the Plaintiffs have never received any sort of notification that their application has ever been "accepted for filing." <u>See Exhibit 11</u> at § 4.

24.    The passage of time does not appear to have led to progress upon the Plaintiffs' religious exemption application, as routine efforts by the Plaintiffs to inquire about the status of their religious exemption application never – prior to the filing of the original Motion and Amended Motion for Preliminary Injunctive Relief – received any response as to its status.

25.     After years spent pursuing an exemption application, apparently in vain, while their rights are being denied them, futilely waiting for the Defendants to take action, the Plaintiffs turned to this Court, seeking relief.

### *Procedural History of Plaintiffs' Motion for Preliminary Injunction*

26.     On April 22, 2020, the Plaintiffs filed their original Motion for Preliminary Injunctive Relief. (ECF No. 2). On May 4, 2020, the Plaintiffs filed their Amended Motion for Preliminary Injunction. (ECF No. 15) Shortly thereafter, the Defendants – through legal counsel – provided substantive acknowledgment of Plaintiff Soul Quest Church's application for religious exemption.

27.     Shortly thereafter, on May 14, 2020, the Parties filed a Joint Motion to Extend Defendants' Time to Respond to Plaintiffs' Amended Motion for Preliminary Injunction. (ECF No. 18). In that document, the Parties explained that the extension would permit for "time to explore whether resolution is possible." The Court granted both Joint Motions (ECF Nos. 15 and 18) in an order issued on May 14, 2020. (ECF No. 19).

28.     On May 29, 2020, the Drug Enforcement Administration ("DEA") issued its first formal response acknowledging Plaintiff Soul Quest Church's August 2017, application for religious exemption.   A true and correct copy of this correspondence is attached hereto as Exhibit 12.

29.     In June 2020, following discussions between the Parties, a Joint Motion to Stay All Proceedings for 120 Days (ECF No. 23).   The intent of this joint filing was predicated upon "potentially resolving this case without need for further litigation in this Court." (ECF No. 23, at p. 1).   Further, the intent of the stay was to, in-part, permit for "continue to negotiate the process by which DEA will conduct the fact-finding necessary

to evaluate Plaintiffs' Petition."  (ECF No. 23, at ¶ 11).  In doing so, the Parties agreed that "they will cooperate with each other in good faith ...."  (ECF No. 23, at ¶ 12).  On June 26, 2020, the District Court granted this Joint Motion.  (ECF No. 24).

30.     Subsequently, in correspondence dated June 4, 2020, the Defendants sought to further explain its diversion investigative process, as follows:

> DEA Diversion Investigators ("DIs") therefore routinely review applications for registration, including applications from doctors, pharmacies, distributors, importers/exporters, or manufacturers, gather relevant information, and inspect registrants' establishments. 21 C.F.R. § 1301.31. In the case of applications for exemption from aspects of the regulatory scheme on religious grounds, DEA must also determine pursuant to the Religious Freedom Restoration Act (RFRA) whether the applicant has established sincerity and the religious nature of the applicant's professed belief system and whether application to the applicant's religious practices of any specific requirement of the CSA's comprehensive regulatory system would substantially burden the applicant's religious exercise.

A true and correct copy of this correspondence is attached hereto as Exhibit 13.  Of particular note in this statement is the effort by the Defendants implicitly acknowledge its ongoing lack of any regulatory authority on religious exemptions, while also attempting to tie some form of unregulated factfinding "process" into other regulations applicable to pharmacies and doctors.

31.     Notwithstanding, thereafter, the Plaintiffs made every possible effort to cooperate with the inquiries made exclusively by DEA and its designated Diversion Investigator to conduct additional fact finding, James W. Graumlich.  Affidavit of Christopher Young, in Support of Motion for Preliminary Injunction Exhibit 1, at ¶ 36.  The Plaintiffs did so under the belief that, in doing so, the preexisting litigation would resolve. Exhibit 1, at ¶ 36.

32.    Of note, DEA's inquiries to the Plaintiffs centered *entirely* upon "diversion control."  Exhibit 1, at ¶ 33.   No inquiry – at any time – directed by the Defendants ever touched upon the sincerity of the Plaintiffs' faith and religious beliefs including, but not limited to, the legitimacy of Soul Quest Church and the expressed, critical importance of the Plaintiffs engaging in the sacramental ayahuasca ritual.   Exhibit 1, at ¶ 32. Accordingly, the only material possessed by the DEA on the issue of religious sincerity centered around the various materials included in the original, 2017 exemption application.

33.    On October 16, 2020, the Parties filed with the District Court their Joint Status Report (ECF No. 25).  In it, the Defendants acknowledged that the Plaintiffs had been cooperating with all of Defendants' requests for information.  (ECF No. 25, at ¶ 2). The Parties also acknowledge the intent "to conduct further negotiations regarding 'the details of the DEA's fact-finding …." (ECF No. 25, at ¶ 3).  The Parties jointly requested an extension of the preexisting stay for another one-hundred, twenty (120) days.  (ECF No. 25, at ¶ 5).  The District Court granted this request in an order dated November 2, 2020.  (ECF No. 26).

34.    Thereafter, the DEA continued its factfinding, centered exclusively upon diversion control.  Exhibit 1, at ¶ 33.  Contrary to the belief of the Plaintiffs, the Defendants never presented any guidelines pertaining to the details of its fact finding, nor negotiated any such factfinding details.  Exhibit 1, at ¶ 37.  To date, the nature, scope, and substance of the DEA's "fact finding," herein, remain a mystery.  Exhibit 1, at ¶ 37.

35.    On February 22, 2021, the Parties filed their Joint Status Report.  (ECF No, 27).  At that time, the Parties announced the closure of the Defendants' factfinding.  (ECF

No. 27, at p. 2). Indeed, within the Joint Status Report is the acknowledgment that the DEA and U.S. Department of Justice ("DoJ") are confronting new leadership unfamiliar with the issues within the case-at-bar. (ECF No. 27, at p. 3). Further, the DEA required until April 15, 2021, to issue what it deemed its "final determination." (ECF No. 27, at p. 3).

36. In order to further facilitate the prospects of a positive case resolution, the Plaintiffs agreed to hold its Motion for Preliminary Injunction in abeyance pending the DEA's "determination." (ECF No, 27). Further, the Plaintiffs agreed to alert the Court, following the DEA's "final determination," to alert the Court of whether it intended to renew or amend its preliminary injunction motion, and its filing of "any necessary amended motion." (ECF No. 27, at p. 3).

37. On February 23, 2021, the District Court issued its Order on the request made within the preceding Joint Status Report. (ECF No. 28). Therein, the District Court stayed all deadlines pending the DEA's "final determination," and further instructing that the Plaintiff notify the Court within fourteen (14) days of such issuance. (ECF No. 28).

38. On the evening of April 16, 2021, the Plaintiffs received the DEA's issued, written decision, indicating that it would not be issuing a religious exemption to Soul Quest Church. A true and correct copy of this document is attached hereto as Exhibit 14. Much akin to the latent, constitutional shortcomings found by the federal courts within cases such as Gonzales v. O Centro Espírita Beneficente União do Vegetal, 546 US 418, 426 (2006) ("O Centro Espírita"), and Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d. 1210, 1215 (D. Oregon 2009) ("CHLQ"), the DEA never published any rulemaking or other formal guidelines in support of whatever methods it adopted. In fact,

the DEA's entire decision was predicated on – despite making zero substantive efforts to inquire over the past year (indeed, for four years) – on the claimed absence of sincere religious belief by Plaintiffs.  Exhibit 14.

## PLAINTIFFS MEET ALL REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF

### A.     Plaintiffs are Likely to Succeed on the Merits.

As discussed, supra, ayahuasca plays a central role within the Plaintiffs' religion. See Exhibits 2-9. The Plaintiffs believe that, through careful and measured consumption of ayahuasca within a religious ritual, they become closer to the divine. Id. Therefore, the Defendants' conduct prohibiting the Plaintiffs from practicing their religion without interference violates the Plaintiffs' rights under both the First Amendment of the United States Constitution, and the Religious Freedom Restoration Act.

In addition, the Defendants' conduct also infringes upon the Plaintiffs' rights to procedural and substantive due process, due to unrestrained arbitrariness within the Defendants' "guide" to those filing religious exemption applications, and the Defendants' failure to provide Plaintiffs notice and a chance to be heard before effectively denying their religious exemption application through inaction.

Finally, the Defendants' conduct infringes upon the Plaintiffs' rights to freedom of speech by creating an unlawful prior restraint, without a compelling interest. In addition, the actions taken by the Defendants to restrict the Plaintiffs' rights are far from the least restrictive means.

1.     The Defendants' Conduct Violates Plaintiffs' Rights to Freedom of Religion, Under the First Amendment and the Religious Freedom Restoration Act.

10

Jurisprudence surrounding the Free Exercise Clause of the First Amendment to the United States Constitution was upended in 1990, when the Supreme Court decided the case of Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 874 (1990). This case "largely repudiated the method of analyzing free-exercise claims that had been used in cases like Sherbert v. Verner and Wisconsin v. Yoder." Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 691 (2014) (internal citations omitted). In response to Employment Div., Dept. of Human Resources of Oregon v. Smith, the United States Congress passed the Religious Freedom Restoration Act (hereinafter, "RFRA") three years later. 42 U. S. C. § 2000bb(a)(4).

RFRA operates to explicitly restore the "compelling-interest test as set forth in Sherbert v. Verner, and Wisconsin v. Yoder." 42 U.S. Code § 2000bb(b)(1). To succeed upon a free-exercise claim under this test, the Plaintiff[s] must show the existence of three separate elements:

(1)   That the Plaintiff[s]' religious practice has been substantially burdened by a governmental act;

(2)   Once the Plaintiff[s] have demonstrated that their religious practice has been substantially burdened by governmental acts, the Defendants must demonstrate that its actions serve a compelling governmental interest; and

(3)   The Defendants must also show that the governmental acts performed in furtherance of this compelling interest are the least restrictive means available to further that governmental interest.

Hobby Lobby Stores, 584 U.S. at 692.

For purposes of the case-at-bar, a critical feature of RFRA is found at Section (c), providing relief for substantial burden of religious exercise.   Under this particular provision, Congress provided for exclusive judicial relief, *to wit*:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense *in a judicial proceeding* and obtain appropriate relief against a government.  Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.  42 U.S.C. §§ 2000bb-1(c).

(Emphasis added).  In other words, nowhere within the RFRA was it anticipated that the DEA would be vested with the power and authority to determine which adherents are entitled to a religious exemption.  Indeed, based upon the nature of DEA and DoJ's functions – prioritizing enforcement of federal drug prohibitions, neither government department/agency is qualified to render any determination regarding religious sincerity. After all, RFRA contains no such authority, and the Controlled Substances Act (hereinafter, "CSA") contains no category for religious exemption.  Instead, it would appear reasonable, consistent with Supreme Court jurisprudence in <u>O Centro Espirita</u>, for the DEA to – upon promulgation of appropriate rules – to exercise only a role in control-diversion.

Rather, to the contrary, the CSA specifically – by its plain language – presently limits the authority of the DEA.  Section 823(a)(1) of the CSA limits DEA authorization solely to register applicants for legitimate medical, scientific, research and industrial purposes.  When coupled with the abject failure – post-<u>O Centro Espírita</u> – by the Government to attempt to promulgate any rules pursuant to the Administrative Procedure Act (as further discussed, *infra*), the DEA lacks both the authority (and, the Plaintiffs would submit, the ability) to render decisions pertaining to religious exemption applications.  If so, then the logical extent of any such DEA role would be premised exclusively upon

assisting a religious entity with prospective measures designed to facilitate that agency's control-diversion function.

As will be demonstrated, the Defendants undoubtedly <u>have</u> substantially burdened the Plaintiffs' religious practice by refusing to grant the Plaintiffs a religious exemption to the Controlled Substances Act. In addition, the government will be unable to demonstrate that its actions serve a compelling governmental interest. Finally, the government will be unable to show that the means it has chosen to employ against the Plaintiffs are the least restrictive means.

As discussed, <u>supra</u>, ayahuasca plays a major role in the Plaintiffs' religious beliefs and traditions. <u>See</u> <u>Exhibits 1, 2, & 10</u>. Not only do Plaintiffs believe that consumption of sacramental ayahuasca elevates them closer to the divine, a significant portion of the Plaintiffs' liturgy stems from the revelations that the Plaintiffs have received from the spirit of ayahuasca. <u>Id.</u>  The Plaintiffs sincerely believe that they are divinely commanded to consume ayahuasca to become closer to the divine, and to spread the truths of the Spirit of Ayahuasca to the world. <u>Id.</u>  The Defendants' actions therefore substantially burden the Plaintiffs' religious practices in at least two ways: (1) the Plaintiffs are denied the ability to speak the truth of a significant aspect of their religious beliefs to others; and, (2) the Plaintiffs are prevented from consuming their religious sacraments. <u>Id.</u> Therefore, the Defendants' actions undoubtedly place a substantial burden upon the Plaintiffs' religious practices.

In a case very similar to the present case, the Defendants claimed that their application of the Controlled Substances Act furthered three compelling governmental interests: "protecting the health and safety of UDV members, preventing the diversion of

[ayahuasca] from the church to recreational users, and complying with the 1971 United Nations Convention on Psychotropic Substances, a treaty signed by the United States and implemented by the Act." O Centro Espírita, 546 U.S. at 426. However, the Supreme Court rejected such a categorical recitation of compelling interests, instead requiring the Defendants to "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' —the particular claimant whose sincere exercise of religion is being substantially burdened." Id. at 430-431. As will be demonstrated, the Defendants cannot make such a showing.

In O Centro Espirita, the Supreme Court observed that the mere fact that Congress had "determined [the psychotropic component of ayahuasca] should be listed [as a Schedule I controlled substance]" of the Controlled Substances Act was an insufficient showing to relieve the Defendants of their burden under RFRA. O Centro Espirita, 546 U.S. at 432.  Similar logic should control in the instant case, and operate to deny any and all efforts by the Defendants to justify their actions under the Controlled Substances Act, because the Plaintiffs' religious use of sacramental ayahuasca is not only carefully controlled and managed by the Plaintiffs, but also because religious exemptions to Schedule I drugs are expressly contemplated by RFRA. Id. at 433 (discussing the long-standing religious exemption for the religious use of peyote, another drug regulated by the Controlled Substances Act).

In the past, the Defendants have also raised the compelling governmental interest of preventing diversion of ayahuasca from religious use. Id. at 426. In the present case, the Plaintiffs have made a verified showing of their policies and procedures designed to both ensure that none of the Plaintiffs' religious sacraments are diverted to any other use,

and that medical health facilities are readily available in case of emergency. <u>See</u> <u>Exhibit</u> <u>10</u>. Even if the Defendants should be able to muster evidence to the contrary, the Supreme Court has held that equality in evidence is not sufficient for the Defendants to have demonstrated a compelling governmental interest. <u>O Centro Espirita</u>, 546 U.S. at 426-427. To date, the Defendants have still failed to provide the Plaintiffs with any evidence whatsoever that would make diversion a compelling government interest in the present case.

The Supreme Court has also observed that the claim of a compelling governmental interest in, and reliance upon, the 1971 United Nations Convention on Psychotropic Substances (hereinafter, the "Convention"), even if ayahuasca is included therein, is a tenuous claim at best because the Controlled Substances Act implements the Convention in American law. <u>Id.</u> at 438. Therefore, to properly advance a compelling government interest arising from the need to enforce American obligations under the Convention, the Defendants would need to introduce "evidence addressing the international consequences of granting a[] [religious] exemption for the Plaintiff[s]." <u>Id.</u> To date, the Defendants have provided the Plaintiffs with no evidence whatsoever that would make international consequences a compelling government interest in the present case.

Nor can it be said that the Plaintiffs' sacramental tea poses any significant health risks. The Plaintiffs' sacramental ayahuasca is chemically akin to the Daime tea consumed by members of the Santo Daime faith, in that both are prepared from the Banisteros caapi vine and the leaves of the Psychotropia viridis plant using the same methodology. <u>Church of the Holy Light of the Queen v. Mukasey</u>, 615 F. Supp. 2d. 1210, 1215 (D. Oregon 2009) (hereinafter, "<u>CHLQ</u>"). This method of preparation has been

observed to make the DMT in Daime tea, and the Plaintiffs' sacramental ayahuasca, "far less potent" than synthetic injection or inhalation of DMT in its pure form. Id. at 1215. At this level of potency, consumption of Daime tea and similar beverages has actually been observed to have the following positive effects:

1) Assistance in overcoming alcohol dependency and abuse; and,

2) Loss of interest in 'habitual use of alcohol, cocaine, and other addictive substances'; and,

3) Amelioration of anxiety and panic symptoms.

Id. at 1215-1218; see also United States v. Hoffman, 4:19-cr-00693, at pp. 6-14 (D. Ariz., 2020) (holding that the provision of aid could be a religious activity entitled to RFRA protection).

In addition, there was no evidence adduced to suggest that the consumption of Daime tea, or the chemically similar sacramental ayahuasca that the Plaintiffs employ, could contribute to any form of a psychotic episode. CHLQ, 615 F. Supp. 2d, at 1216. Therefore, the Defendants cannot reasonably claim that the consumption of the Plaintiffs' sacramental ayahuasca is likely to cause any form of adverse health effects.

Even if the Defendants could demonstrate that they had a compelling government interest, the Defendants must also justify the means they have chosen to further that compelling interest as being the least restrictive means available. See, e.g., Hobby Lobby Stores, 573 U.S. at 720; Sherbert v. Verner, 374 U.S. 398, 406 (1963). The Defendants are unlikely to be able to do this, because the Plaintiffs – entirely on their own initiative, and out of respect for their belief in the sacred nature of ayahuasca and the health of the members of their church – have already implemented considerable policies and

procedures to both prevent against diversion, and to ensure the health of its members. Exhibit 10, at pp. 14-17.

Separately, but critically, the Defendants have failed to promulgate any regulations under which to provide the Plaintiffs with any real notion of *standards* to be used in issuing *any* determinations regarding religious exemptions.  Of course, in order to be able to even do so – under any circumstance – a federal entity must first adhere to the requirements imposed under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*  This point merits significant discussion, specifically as it pertains to RFRA and any rulemaking occurring under that legislation.

Recently, in filings in a lawsuit before the Northern District of California, brought against the Government by the North American Association of Visionary Churches, the DEA stated its intention to engage in formal rulemaking on the subject of religious exemption under RFRA and the CSA.  Arizona Yage Assembly, *et al.* v. Barr, 20-cv-0398 (N.D. Ca. 2020), at Doc. 19-1 (Declaration of Scott A. Brinks, at p. 5).

Through this acknowledgment by a DEA official, we establish that the Government has failed to establish any regulatory regime; any such regime would necessarily require the provision of notice to a religious exemption applicant – such as Plaintiff Soul Quest Church.  Yet, contrary to both constitutional and statutory edits, the Defendants have failed to establish any form of regulatory protocols – at least, not ones that are approved by Congress, published, and which provide notice to religious exemption applicants.

From a statutory perspective, the Defendants have never developed rules and regulations, consistent with APA requirements, and – as pertinent to the case-at-bar – pertaining to the religious use of ayahuasca.  Indeed, rather than doing so – at best – the

Defendants rely on *ad hoc* decision making, wherein all necessary care is taken not to overstep constitutional authority.  The shocking aspect of this is that even oversteps the bounds of Department of Justice policy, a fact which would necessarily inhere in each aspect of the Plaintiffs' arguments, herein, both constitutional and statutory-based.  <u>See Implementation of Memorandum on Federal Law Protections of Religious Liberties</u> (U.S. Department of Justice, Oct. 6, 2017); <u>Federal Law Protections for Religious Liberties</u> (U.S. Department of Justice, Oct. 6, 2017) (hereinafter, "Sessions Memorandum").[1]

As referenced, above, the RFRA vests *zero* authority to define religion in any agency.  Instead, the RFRA provides only for a claim or defence in a judicial proceeding.  Given this lack of authority, it is legally impossible and – the Plaintiffs would assert – constitutionally impermissible – for the DEA to engage in any determination as to religious sincerity.[2]  As the Sessions Memorandum, even acknowledges, in relevant part:

> **12.   <u>RFRA does not permit the federal government to second-guess the reasonableness of a religious belief.</u>**
>
> RFRA applies to all sincerely  held religious beliefs, whether or not central to, or mandated by, a particular religious organization or tradition. Religious adherents will often be required to draw lines in the application of their religious beliefs, <u>and government is not competent to assess the</u>

---

[1]   Respectively, these documents are located at https://www.justice.gov/opa/press-release/file/1001886/download;      and      https://www.justice.gov/opa/press-release/file/1001891/download.

[2]   The Plaintiffs would embrace the Supreme Court's opinion in <u>O Centro Espirita</u> that the Government possesses a rational basis for ensuring public safety and diversion prevention.  The imposition of such regulations, while following the strictures of the APA – would likely address security to a church's ayahuasca tea and minimal safety guidelines surrounding the sacramental use of the tea (*i.e.*, adequate warnings, screening and in-ceremony care).  These types of regulations – which would be applied prospectively as prerequisites to the sacramental use of the blended, ayahuasca tea – neither pass judgment on the nature of religious beliefs nor allow for the DEA to examine sincerity of belief.

reasonableness of such lines drawn, nor would it be
appropriate for government to do so ....

**13.   A governmental action substantially burdens an
exercise of religion under RFRA if it bans an aspect of
an adherent's religious observance or practice,
compels an act inconsistent with that observance or
practice, or substantially pressures the adherent to
modify such observance or practice.**

Because the government cannot second-guess the
reasonableness of a religious belief or the adherent's
assessment of the religious connection between the
government mandate and the underlying religious belief,
the substantial burden test focuses on the extent of
governmental compulsion involved.   In general, a
government action that bans an aspect of an adherent's
religious observance or practice, compels an act
inconsistent with that observance or practice, or
substantially pressures the adherent to modify such
observance or practice, will qualify as a substantial burden
on the exercise of religion ....

Sessions Memorandum, at p. 4.   (Emphasis added).   The leaves open the real

inference that the Defendants are presumably unable to rebut:   if the Sessions

Memorandum binds Department of Justice and its corollary agencies – inclusive of

DEA – then how do these federal departments/agencies possess any freedom to

'not follow' this established policy?

The perspectives expressed in the Sessions Memorandum are consistent with

recent Supreme Court jurisprudence.   See, e.g., Hobby Lobby, supra (wherein the

Supreme Court assumed, and never analyzed, either the religious nature or sincerity

of the company owner's religious beliefs, and in the unique setting of whether a

corporate entity could hold and exercise such religious beliefs).   This same

perspective accords with then-Judge Gorsuch's opinion in Yellowbear v. Lampert,

741 F.3d 48, 54 (10th Cir. 2014), which states that

> [w]hen inquiring into a claimant's sincerity, then our task is
> instead a more modest one, limited to asking whether the
> claimant is (in essence) seeking to perpetrate a fraud on
> the court – whether he actually holds the beliefs he claims
> to hold – a comparatively familiar task for secular courts that
> are regularly called upon to make credibility assessments –
> and an important task too, for ensuring the integrity of any
> judicial proceeding.

In the case-at-bar, Plaintiff Soul Quest Church – whose standing as a religious entity has already been validated by the Federal Government via the Internal Revenue Service under Section 501(c)(3) of the Internal Revenue Code – has readily demonstrated, via the materials submitted alongside its application for religious exemption and as appended to this Motion. Yet, again, this raises the fundamental issue of the Defendants' failure to even attempt to establish a proper regulatory regime under the authority of the RFRA and the APA.

Under the APA, 5 U.S.C. § 551(13), an "agency action" includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial, thereof, or failure to act. Section 552 details the process of providing public information required of an agency in formal rulemaking.

Section 553 is titled "Rule making," and requires publication of the specifics of the rule making proceedings and particularized information in the Federal Register of "the legal authority under which the rule is proposed." It also requires the subsequent publication of a proposed, substantive rule, rules of interpretation, and statements of policy not less than thirty (30) days prior to its effective date.

Consequently, coupling the RFRA with the APA reveals a very telling flaw in the DEA approach: DEA has no grant of authority for rulemaking under the RFRA, and – even if such did exist – the DEA (as the agency tasked generally with regulation of

psychotropic substances for the public good) still is unable to do so as pertains to making any determination on whether claimants of religious exemption – inclusive of Plaintiff Soul Quest Church – are either *religious enough* or *sincere enough* to be eligible for an exemption. Indeed, in the case-at-bar, the only items in Defendants' possession reflective of the issue of religious sincerity are the very items submitted by Plaintiff Soul Quest Church in support of its August 2017, application for religious exemption. No further inquiries have ever been directed by the DEA to the Plaintiffs pertaining to the nature and sincerity of the religious beliefs of Plaintiff Soul Quest Church, Plaintiff Christopher Young, or the other members of Soul Quest's faith. Exhibit 1, at ¶ 32.

Accordingly, the Plaintiffs have a strong likelihood of success at trial on the merits of their claims arising under the First Amendment to the United States Constitution and the Religious Freedom Restoration Act, and thereby meet this element of the test for issuance of a preliminary injunction with regards to these claims.

### 2. The Defendants' Conduct Violates the Plaintiffs' Rights to Procedural Due Process.

The Fifth Amendment to the United States Constitution clearly states that no individual's liberty or property is to be taken from them without "due process of law." U.S. Const. Amend. V. Procedural due process, an aspect of the overall right to due process of law, "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth. . . Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). In determining whether or not a plaintiff's right to procedural due process has been violated, courts answer the following three questions:

(1)     Have the Plaintiffs suffered an identifiable loss of liberty or deprivation of property?

(2)     If so, is the liberty lost or property taken within the contemplation of the Due Process Clause?

(3)     Once it has been determined that due process applies, what procedure is due?

Morrissey v. Brewer, 408 U.S. 471, 481 (1973).

Here, the Plaintiffs have undeniably suffered a recognizable loss of liberty.  As discussed, supra, the Defendants' unexplainable delay in processing the Plaintiffs' application for a religious exemption, or communicating with them upon its merits, operates as a functional denial – thereby leaving the Controlled Substances Act's prohibition of ayahuasca in effect, and the Plaintiffs unable to fully practice their sincere religious beliefs. See Exhibit 10, at § 7.

Through this arbitrary and unexplainable silence upon even the status, much less the essentials, of the Plaintiffs' religious exemption application – a silence that has now lasted over two and a half years – the Defendants have completely denied the Plaintiffs their right to notice and to be heard before a final decision is made.  Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (citing to Baldwin v. Hale, 1 Wall. 223, 233 (1863); Windsor v. McVeigh, 93 U.S. 274 (1876); Hovey v. Elliott, 167 U.S. 409 (1897); and Grannis v. Ordean, 234 U. S. 385 (1914)). Consequently, the Plaintiffs have suffered, and continue to suffer, an identifiable loss of liberty.  The Defendants have denied the Plaintiffs their right to notice and be heard.

Unquestionably, the right to notice and to be heard is within the contemplation of the Due Process Clause.  The United States Supreme Court held that the right to notice and to be heard is a "fundamental requirement of due process." Armstrong v. Manzo, 380

U.S. 545, 552 (1965).  Additionally, the lack of proper notice and/or an opportunity to be heard has, standing alone, been deemed a sufficient reason to merit full reversal upon due process grounds. Armstrong, 380 U.S. at 552. Therefore, the Constitutional right to notice and be heard in a reasonable time and manner is within the contemplation of the Due Process Clause.

In determining what procedures are due, the Plaintiffs respectfully request this Court observe that the Defendants' own proffered "guide" does attempt to set out several procedures, of which notice and the right to be heard are a part. See Exhibit 11. However, as discussed, infra, the Defendants' "guide" does not contain any requirement whatsoever that these notices and opportunities to be heard be granted at any time, much less a reasonable or meaningful one. See  Exhibit 11, at  §§ 4 (Petitioners should receive notice of any acceptance or incompleteness in their religious exemption applications, but no timeframe for this is provided), 8 (Petitioners should receive notice of the final determination of their application, including a statement of the reasons relied upon by the Defendants in making their final decision, but no timeframe for this is provided). Moreover, as argued, above, the Defendants have failed to promulgate any rules and regulations pursuant to the APA; this has the necessary effect of immediate violation of the procedural due process anticipated by Congress under RFRA, and which is co-extensive with the procedural due process issues, herein.  Therefore, the Plaintiffs therefore request this Court issue a judgment declaring that the Defendants must grant applicants for religious exemptions their Constitutional rights to notice and an opportunity to be heard within a reasonable time and in a meaningful manner.

Therefore, the Plaintiffs are likely to succeed at trial upon their procedural due process claim, due to the Defendants' actions denying the Plaintiffs their Constitutional right to notice and to be heard without due process of law.

>   3.   The Defendants' Conduct Violates the Plaintiffs' Rights to Substantive Due Process.

The Due Process Clause of the Fifth Amendment reads as follows: "No State shall . . . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The right to "worship God according to the dictates of [an individual's] own conscience" has long been held to be one of these fundamental liberties protected by the Due Process Clause. Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923).

Yet, this is precisely what the Plaintiffs seek to do in the instant case, and are being barred from doing by the Defendants' constitutionally unjustifiable actions that directly hamper the Plaintiffs' sincere religious beliefs. See, e.g., Wisconsin v. Yoder, 406 U.S. 205, 235-236 (1972). In order to ensure that Americans receive due process of law, courts have recognized that the guarantee of due process extends beyond the procedural aspect of law, to encompass the underlying, substantive elements of these procedures. County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998).

The constitutional right to substantive due process of law requires that government acts which deprive an individual of life, liberty, or property be done in a fair and just manner, and be governed by appropriate standards, to remove arbitrariness and unfettered discretion by government officials. See, e.g., Santosky v. Kramer, 455 U.S. 745, 762 (1982) (deeming unconstitutional those procedures which were "unusually open to the subjective values of the" factfinder. Meyer, 262 U.S. at 403   (deeming unconstitutional laws which were "arbitrary and without reasonable relation to any end");

Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (observing that the "touchstone of due process is protection of the individual against the arbitrary actions of government"). In the present case, there can be no doubt that the Plaintiffs have a right to practice their religion as they see fit, and that the Defendants are acting to deny Plaintiffs this right via the arbitrary and unreasonable guidelines by which the Defendants evaluate religious exemption applications, like the one filed by the Plaintiffs in the instant case. Exhibit 11.

As the Defendants' "guide" to the public seeks to tell the tale, the process of filing a religious application is a straightforward one.  Individuals must:

1) Develop a petition containing an argument discussing why the Plaintiffs are entitled to this religious exemption;

2) Sign this petition under penalty of perjury;

3) Have their petition be accepted for filing by the DEA;

4) Supply any and all additional information the DEA requests; and

5) Refrain from "engag[ing] in any activity prohibited under the Controlled Substances Act" until receiving the DEA's final determination.

See Exhibit 11.

However, upon closer review, the subjectivity and arbitrariness of the Defendants' religious exemption "guide" becomes apparent.

The subjective and arbitrary nature of the Defendants' religious exemption application process is made apparent very early on, when an applicant has submitted their application and is waiting to hear if it has been accepted for filing. In their "guidance," the Defendants have stated that only a "complete" application will be accepted for filing, while an incomplete application will be rejected. Exhibit 11, at § 4. However, the Defendants never state what an applicant must provide for an application to be complete,

instead merely stating what an applicant "may" provide - and then moot even that very low bar, by stating that a petitioner is "not limited to the topics" the Defendants' "guide" suggests. Exhibit 10, at § 2. Even at this most basic level, of simply determining whether or not an application is "complete" enough to be accepted for filing - much less any form of actual review - the Defendants' version of this process is "unusually open to the subjective values" of whomever is examining such an application for completeness due to the lack of standards defining a "completed" application, and is therefore a violation of the Plaintiffs' right to substantive due process under the United States Constitution. Santosky, 455 U.S. at 762 (1982).

Even upon a cursory review, the lack of standards governing how the Defendants purport to evaluate the voluminous information they request be part of a religious exemption application is apparent. Exhibit No. 11, at § 2. The Defendants suggest that applicants submit information upon a wide variety of complex topics, ranging from historical data to canonical law and its interpretations, even to physical security measures and import/export policies. Id. Consolidating such widely disparate subjects and technical subjects into one opinion, without established guidelines, undoubtedly crosses the line into prohibited arbitrariness by granting an unknown, unqualified decisionmaker unfettered authority to employ their own, subjective, judgment.[3]

---

[3] The Defendants' "guide" permits an applicant to supply "any and all information [they] believe relevant to the DEA's determination." Exhibit 11, at § 2. Given this unlimited scope of incoming information, an official's reversion to their own subjective judgment appears inevitable under the standards of the Defendants' "guide." It may also be observed that an infinite scope of response, as the Defendants' "guide" contemplates, would require an infinite amount of policies or procedures to properly account for these infinite possibilities.

Another significant omission from the Defendants' "guide" is the lack of mention of time constraints or estimations. See, e.g., Exhibit 11, at § 4 (requiring Defendants to give notice, but not stating a timeframe for the issuance of this notice), Id. at § 8 (never stating when an applicant can expect a final determination). This carries particular weight in context of the Defendants' expressed desire that applicants not practice their religion until a final determination has arrived. Exhibit 11, at § 7. Without mention of a time constraint, even in the most general language,[4] the Defendants have granted themselves the ability to infringe upon an applicant's First Amendment rights for an indeterminate and arbitrary period of time, simply by remaining silent upon an application or claiming that it is "being processed" or "still under review." See Exhibit 11.

Effectively, what has resulted from the Defendants' lack of any substantive guidelines over the consideration of and standards for religious exemption applications have left such a process as hopelessly, constitutionally defective.   It is well-settled that the government cannot give public officials unbridled discretion to determine whether a would-be speaker has good cause to speak, or – in the case-at-bar, whether a particular religion can be impacted from the free exercise of its fundamental religious practices. This is because "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 757 (1988); see also Saia v. New York, 334 U.S. 558

---

[4] The Administrative Procedures Act, if Defendants had actually adhered to its requirements, obligates the Defendants to "conclude a matter presented to it," like a request for a religious exemption, in a "reasonable time." 5 U.S.C. § 555(b). This language is not present in the Defendants' guide, and - given the delay of years in the present case - the Defendants have clearly not processed the Plaintiffs' application in a reasonable timeframe.

(1948); <u>Niemotko v. Maryland</u>, 340 U.S. 268 (1951); <u>Kunz v. New York</u>, 340 U.S. 290

(1951); <u>Staub v. City of Baxley</u>, 355 U.S. 313 (1958); <u>Freedman v. Maryland</u>, 380 U.S. 51

(1965); <u>Cox v. Louisiana</u>, 379 U.S. 536 (1965); <u>Shuttlesworth v. Birmingham</u>, 394 U.S.

147 (1969); <u>Secretary of State of Maryland v. Joseph H. Munson Co.</u>, 467 U.S. 947

(1984); <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215 (1990); <u>Forsyth County. v. Nationalist</u>

<u>Movement</u>, 505 U.S. 123 (1992).

     The Supreme Court acknowledged over sixty (60) years ago that

> it is settled by a long line of recent decisions of this Court that
> an ordinance which . . . makes the peaceful enjoyment of
> freedoms which the Constitution guarantees contingent upon
> the uncontrolled will of an official—as by requiring a permit or
> license which may be granted or withheld in the discretion of
> such official—is an unconstitutional censorship or prior
> restraint upon the enjoyment of those freedoms.

<u>Staub</u>, 355 U.S. at 322. Yet, here, in the case-at-bar, this is exactly what is occurring; the

Defendants' religious exemption application process – directly in defiance of the Supreme

Court's edicts in <u>O Centro Espirita</u> and even its own departmental directives – permits for

unfettered discretion of its officials to deny or 'virtually' pocket veto any religious group's

legitimate request for religious exemption.

     The hallmark of this unconstitutional state of affairs is borne out by the Defendants'

failure to define even the most basic elements of a religious exemption application, having

established no standards for the evaluation of religious exemption applications like the

Plaintiffs', and having a completely arbitrary amount of time to do so. Consequently,

Plaintiffs submit that this constitutes a clear violation of their rights to Due Process under

the Fifth Amendment.

    4.    <u>The Defendants' Conduct Clearly Violates the Plaintiffs' Rights to Freedom of Speech by Facially Establishing an Impermissible Prior Restraint Upon the Plaintiffs' Speech.</u>

It is axiomatic, and long-standing, law that the "danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use." <u>Southwestern Promotions, Ltd. v. Conrad</u>, 420 US 546, 553 (1975). As discussed, <u>supra</u>, and in Plaintiffs' Verified Complaint, Plaintiff Soul Quest Church actively engages in street-level ministry and proselytization by and through, among other activities, the distribution of flyers discussing the key scriptural and liturgical foundations of the Plaintiffs' religion. A copy of this flyer is attached hereto, and made a part of this motion as <u>Exhibit 15</u>. City streets have long been recognized as public forums, and as such prior restraints upon speech occurring on the street are unlawful. <u>Kunz</u>, 340 U.S. at 293.

In <u>Kunz</u>, the appellant's permit allowing him to perform street-level ministry and proselytization was revoked, due to evidence that the appellant had spoken out against other faiths. <u>Kunz</u>, 340 U.S. at 292. Feeling compelled by faith to proselytize even despite a permit, the <u>Kunz</u> appellant would later be convicted for failure to possess a permit. <u>Id.</u> at 293. In reviewing the record, the Supreme Court observed that there were no applicable standards by which a reviewing official could deny permits "on the basis of his interpretation." <u>Id.</u> The Supreme Court described the New York ordinance before it as one which "gives an… official discretionary power to control in advance the right of citizens to speak on religious matters on the streets." <u>Id.</u> The Supreme Court held the granting of this arbitrary, discretionary, power to constitute an unlawful prior restraint on speech. <u>Id.</u>

Kunz and the present case share many factual similarities, and as such the same logic should control. Like the appellant in Kunz, the Plaintiffs are actively engaged in street-level ministry and proselytization by and through the dissemination of information about the Plaintiffs' religious beliefs. Exhibits 2-7 and 15. Like the officials in Kunz, the Defendants have, under color of authority, effectively barred the Plaintiffs from speaking the truth of their religion, and their viewpoint on the sacred and beneficial aspects of ayahuasca, in a public forum, by subjecting the Plaintiffs to the continued threat of arrest via the provisions of the Controlled Substances Act.

Based upon these similarities, this Court - like the Supreme Court in Kunz - should hold that the Defendants' actions constitute a prior restraint upon the Plaintiffs' speech, and are therefore unconstitutional, for no government can "vest restraining control over the right to speak on religious subjects in an administrative official where there are no appropriate standards to guide his action." Kunz, 340 U.S. at 295.

### B.   The Balance of Equities Falls Heavily in the Plaintiffs' Favor, and a Preliminary Injunction is the Appropriate Remedy.

Because the Plaintiffs' First Amendment rights are at risk via direct penalization by the government, an injunction is the proper remedy. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1271-1272 (11th Cir. 2006). There is not, and cannot be, an adequate remedy at law, for "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Id.; Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion).

A similar balancing of the equities in consideration of the Plaintiffs' claims arising under the Due Process Clause and the Freedom of Speech clause, in light of the most

serious possible injury for each party,[5] similarly favors the Plaintiffs. If the Court should grant Plaintiffs' request for a preliminary injunction, the most serious injury the Defendants can suffer is a judicial mandate to do something that the Defendants are already under judicial, and statutory, mandate to do – come to the bargaining table, and discuss the Plaintiffs' application for a religious exemption. O Centro Espirita, 546 U.S. at 434 (obligating the Defendants to consider and issue requests for religious exemptions). By contrast, the Plaintiffs' most serious injury is already ongoing – as discussed, supra, the Plaintiffs have suffered, and continue to suffer, ongoing irreparable injuries from the deprivation of their Constitutional and statutory rights.  Likewise, the Plaintiffs and their members live under the constant threat of federal arrest and prosecution if they engage in the continued, free exercise of their sincere religious beliefs.

Therefore, the Plaintiffs meet the second prong necessary for issuance of a preliminary injunction, as the balance of equities favors this Court's prevention of further infringement of the Plaintiffs' Constitutional and statutory rights.

### C.     A Preliminary Injunction is in the Public Interest.

The Eleventh Circuit has issued rulings supportive of the principle that an unconstitutional application of laws cannot be said to be in the public interest. See, e.g., The Complete Angler, LLC v. City of Clearwater, Fla., 607 F. Supp. 2d 1326, 1335 (M. D. Fla. 2009). The Defendants' actions, as discussed, supra, violate the Plaintiffs' rights under the First Amendment to the United States Constitution, as well as the Due Process Clause of the Fifth Amendment. See supra. Each of these amendments was enacted and

---

[5] The Supreme Court of the United States has permitted such a method of balancing the equities in considering whether to grant preliminary injunctions. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 378 (2008).

applied to the Constitution in order to prevent precisely the conduct the Defendants are herein engaged in - the unlawful infringement upon the rights of American citizens. See, e.g., Griswold v. Connecticut, 381 U.S. 479, 493 (1965) (stating that the reason for the enactment of the Bill of Rights was to protect against governmental intrusion into "fundamental personal liberties").

The Plaintiffs therefore meet the third, and final, prong of the test needed for preliminary injunction.

### D.   No Bond Should Be Required.

Pursuant to Fed. R. Civ. P. 65(c), courts "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the mandatory nature of this language, 'federal courts have come to recognize that the district court possesses discretion over whether to require the posting of security.'" The Complete Angler, 607 F. Supp. 2d at 1335 (quoting Popular Bank of Fla. v. Banco Popular de Puerto Rico, 180 F.R.D. 461, 463 (S.D. Fla. 1998).

"Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." 607 F. Supp. 2d at 1335-36 (citing All States Humane Game Fowl Org. v. City of Jacksonville, Fla., No. 3:08-CV-312-J-33MCR, 2008 WL 2949442, at *13 (M. D. Fla. July 29, 2008); Johnston v. Tampa Sports Authority, No. 8:05-CV-2191-T-27MAP, 2006 WL 2970431, at *1 (M. D. Fla. Oct. 16, 2006).

Accordingly, Plaintiffs respectfully request that this Court exercise its discretion to waive the bond requirement.

## CONCLUSION

For the reasons set forth above, a preliminary and permanent injunction[6] should issue to enjoin the Defendants as follows:

(a)     from arresting, prosecuting, or threatening Plaintiffs and members of Plaintiff Soul Quest Church with arrest, prosecution, and/or imprisonment for importing, distributing and ingesting the sacramental tea solely at Plaintiff Soul Quest Church services;

(b)     ordering that within 30 days after the date of issuance of declaratory relief, the parties present the Court with a plan to effectuate the importation, distribution, and accounting for the sacramental tea consistent with the rights of the Soul Quest Church members to use the sacramental tea in ceremonies;

(c)     awarding the Plaintiffs' attorneys' fees, costs and expenses pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and The Civil Rights Attorneys Fees Award Act of 1976, 42 U.S.C. § 1988; and

---

[6]     The relief requested herein is equally applicable to the current Amended Verified Complaint for Declaratory and Permanent Injunctive Relief, or to its successor pleading, which will be accompanied with the appropriate Motion for Leave to Amend.  The dangers presently confronting the Plaintiffs remain constant, regardless of any possible effort by the Defendants to attempt to re-label its illegitimate assertion of authority and its violations of statutory and constitutional protections accorded to the Plaintiffs.

(d)    granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 7th day of May 2021.

By: *s/Derek B. Brett*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
109 Ilsley Avenue, Suite 9
Halifax, Nova Scotia B3B 1S8
Telephone:  (902) 468-3066
Facsimile:   (902) 468-4803
Email: dbb@burnsidelaw.net
Lead Counsel for Plaintiffs


s/A. Brian Phillips
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone:  (407) 872-0777
Telecopier:  (407) 872-0704
Email: brian.phillips@phillips-law-firm.com
Local Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 7th day of May, 2021, I electronically filed a copy of the foregoing document. Notice of the filing will be sent by email to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ A. Brian Phillips*
A. BRIAN PHILLIPS

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SOUL QUEST CHURCH OF MOTHER
EARTH, INC. and CHRISTOPHER
YOUNG,

        Plaintiffs,

v.                                                    Case No. 6:20-cv-701-WWB-DCI

ATTORNEY GENERAL, UNITED
STATES OF AMERICA and
ADMINISTRATOR, U.S. DRUG
ENFORCEMENT ADMINISTRATION,

        Defendants.

_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 61),

Plaintiffs' Response and Opposition (Doc. 62), and Defendants' Reply (Doc. 65). For the

reasons set forth below, the Motion will be granted in part.

## I.    BACKGROUND

Plaintiff Soul Quest Church of Mother Earth, Inc. ("**Soul Quest**") is an Orlando,

Florida based religious organization founded in 2016 under the direction of Plaintiff

Christopher Young. (Doc. 59, ¶¶ 46–47, 53). In the practice of their religion, Plaintiffs use

ayahuasca, a sacramental tea containing small amounts of the Schedule I controlled

substance dimethyltryptamine. (*Id.* ¶¶ 4–6). Soul Quest conducts ceremonies using the

tea three times a month and holds sober ministering services each Sunday that do not

include the use of the tea. (*Id.* ¶¶ 55, 58, 95–96). Prior to participation in the ceremony,

members must be educated and evaluated for suitability and participation may be denied

by Soul Quest with suggestions for "alternative methods for achieving suitable religious and therapeutic fulfillment." (*Id.* ¶ 100).

In August 2016, the Drug Enforcement Administration ("**DEA**") directed Plaintiffs to file a petition for religious exemption for the use of ayahuasca. (*Id.* ¶¶ 111–13). Accordingly, on August 21, 2017, Plaintiffs petitioned the DEA for a religious exemption. (*Id.* ¶ 115; *see also* Doc. 59-10). On April 16, 2021, the DEA denied Plaintiffs' application. (Doc. 59, ¶¶ 10–11, 24, 35, 117; *see also* Doc. 59-2). Pursuant to the DEA's order, Plaintiffs are prohibited from importing, possessing, manufacturing, and distributing ayahuasca. (Doc. 59-2 at 9). As a result, Plaintiffs seek declaratory and injunctive relief against Defendants pursuant to the Religious Freedom Restoration Act ("**RFRA**"), 42 U.S.C. § 2000bb *et seq.*, the Administrative Procedures Act ("**APA**"), 5 U.S.C. § 701 *et seq.*, and the First Amendment permitting them to import, possess, manufacture, and use ayahuasca in their religious ceremonies. (Doc. 59, ¶¶ 118–53).

## II.    DISCUSSION

In their Motion, Defendants argue that the Third Amended, Verified Complaint (Doc. 59) must be dismissed because this Court lacks jurisdiction to review the DEA's denial of a religious exemption pursuant to 21 U.S.C. § 877. In the alternative, Defendants argue that Plaintiffs' APA and First Amendment Claims must be dismissed for failure to state a claim. Plaintiffs dispute that § 877 vests jurisdiction of this case with the Courts of Appeal and that their APA claim is subject to dismissal. Plaintiffs do not respond to Defendants' arguments regarding their First Amendment claim.

A party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Attacks on subject matter jurisdiction . . . come in

two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 WL 276030, at \*2 (M.D. Fla. Jan. 31, 2008).

Defendants attack subject-matter jurisdiction pursuant to 21 U.S.C. § 877. Section 877 states that "any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located[.]" 21 U.S.C. § 877. Thus, if this Court determines that the DEA issued a final decision under the Controlled Substances Act ("**CSA**"), 21 U.S.C. § 801 *et seq.*, then this Court is divested of jurisdiction to review the final decision of the DEA or any claim that in substance seeks review of the issues addressed therein. *See Hemp Indus. Assoc. v. U.S. Drug Enf't Admin.*, 539 F. Supp. 3d 120, 130–31 (D.D.C. 2021); *John Doe, Inc. v. Gonzalez*, No. 06-966, 2006 WL 1805685, at \*23 (D.D.C. June 29, 2006); *see also Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 973 (11th Cir. 2011) (stating, with respect a similar statute, that "[w]here Congress has provided in the courts of appeals an exclusive forum" for the

review of agency decisions, parties may not "bypass that forum" through artful pleading

or an "impermissible collateral challenge" to the agency order (quoting *Green v. Brantley*,

981 F.2d 514, 521 (11th Cir. 1993))); *John Doe, Inc. v. Drug Enf't Admin.*, 484 F.3d 561,

570 (D.C. Cir. 2007) ("[A]dopting [a] narrow interpretation of § 877 encourages forum

shopping and encourages dissatisfied claimants to 'jump the gun' by going directly to the

district court to develop their case instead of exhausting their administrative remedies

before the agency.").

Plaintiffs argue that § 877 does not preclude this Court's exercise of subject-matter

jurisdiction because: (1) the determination letter was issued pursuant to RFRA, not the

CSA; (2) the April 16, 2021 letter denying its petition for a religious-based exemption to

the CSA did not constitute final agency action; and (3) § 877 is not exclusive.[1]

First, Plaintiffs argue that the DEA denied their request under RFRA and, therefore,

the exclusive jurisdiction provision of the CSA does not apply. This argument, however,

fails to acknowledge or address that the April 16, 2021 letter clearly and explicitly states

that the DEA has a separate, independent basis to deny Plaintiffs' request under the CSA

because the methods used by Plaintiffs for the importation, storage, and use of its

ingredients and ayahuasca fail to pass muster under the DEA's standards. (Doc. 59-2 at

6–9). As set forth in the determination letter, the DEA found that "even assuming

arguendo that [Plaintiffs'] practices constitute a religious exercise, [it] cannot be

---

[1] Plaintiffs attempt to "incorporate by reference" the arguments raised in "its prior
Opposition to Motion to Dismiss[.]" (Doc. 62 at 1 n.1). However, pursuant to Local Rule
3.01, any and all arguments Plaintiffs intend to raise and rely on must be contained in a
single filing. Thus, Plaintiffs' purported incorporation by reference is not proper and this
Court will only consider those arguments properly raised and briefed in the Response and
Opposition filed in response to the pending Motion.

accommodated in a manner that would allow DEA to preserve its compelling interests in public health and safety and in preventing illegal diversion of ayahuasca." (*Id.* at 9). Plaintiffs fail, entirely, to explain how this clear statement of decision under the CSA can or should be ignored by this Court for jurisdictional purposes.

Next, Plaintiffs posit that the April 16, 2021 letter does not constitute final agency action under the CSA because the DEA lacked authority to render a decision under RFRA. To constitute final agency action, "[f]irst, the action under review must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *John Doe, Inc.*, 484 F.3d at 566 (quotation omitted). Here, the record clearly reflects that the DEA engaged in an investigation regarding Plaintiffs' importation, storage, and distribution of ayahuasca—Plaintiffs' dispute as to the thoroughness of that investigation does not negate the clear fact that some investigation occurred—and then issued a decision that determined Plaintiffs' legal rights with respect to the CSA. Plaintiffs' argument, yet again, fails to acknowledge or address that the DEA offered a wholly independent basis for its denial of Plaintiffs' request that does not arise out of or rely on RFRA, but is entirely based on the CSA. Accordingly, Plaintiffs have not met their burden in showing that their claims are not inextricably intertwined with a final agency action under the CSA within the meaning of § 877.

Finally, Plaintiffs argue that even if the CSA applies, it does not divest this Court of jurisdiction. In support of this argument, Plaintiffs rely on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). In *McNary*, the Supreme Court held that § 210(e) of

5

the Immigration and Nationality Act did not prevent the district court from exercising general federal question jurisdiction over claims "alleging a pattern or practice of procedural due process violations" because there was no clear congressional language precluding jurisdiction for the type of claim alleged and denying jurisdiction would foreclose meaningful judicial review of the plaintiffs' claims. *Id.* at 483–84. Plaintiffs fail to explain how *McNary*, which did not arise under § 877, applies to the facts in this case. Specifically, even if the statutory provisions were sufficiently similar to permit this Court to rely on *McNary*, there are no claims alleged in the Third Amended, Verified Complaint that amount to "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id.* at 492. Rather, the claims alleged in this case are by a single entity challenging the specific findings and determination in its case and denying its individual application for relief from the CSA, which the *McNary* opinion did not state would have entitled the applicants to overcome an exclusive jurisdictional provision. *Id.* at 492–93.

Plaintiffs have failed to meet their burden in showing that this Court can exercise jurisdiction over this case. At the very least, because the DEA has provided a final decision that rests, at least in part, on a determination under the CSA that is separate and apart from any decisions under RFRA, it appears that this Court is divested of jurisdiction pursuant to § 877 over that determination, which is inextricably intertwined with the issues raised and the relief requested in this case. Thus, this case must be dismissed for lack of jurisdiction. The Court need not address Defendants' remaining arguments.

## III.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 61) is **GRANTED in part** as set forth in this Order and **DENIED as moot** in all other respects.

2. Third Amended, Verified Complaint (Doc. 59) is **DISMISSED without prejudice**.

3. The Clerk is directed to terminate all other pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on March 4, 2022.

_____

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record