UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

PETITION NO. 22-11052

———————————————

SOUL QUEST CHURCH OF MOTHER EARTH, INC., AND
CHRISTOPHER YOUNG,

PETITIONERS,

VS.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA, AND ANNE MILGRAM, ADMINISTRATOR OF THE
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION,

RESPONDENTS.

———————————————

PETITION FOR REVIEW OF AGENCY DECISION

———————————————

REPLY BRIEF OF PETITIONERS, SOUL QUEST CHURCH
OF MOTHER EARTH, INC., AND CHRISTOPHER YOUNG

———————————————

Derek B. Brett, Esq.
Fla. Bar No. 0090750
BURNSIDE LAW GROUP
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Lead Counsel for Petitioners

A. Brian Phillips, Esq
Fla. Bar No. 0067113
A. BRIAN PHILLIPS, P.A.
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Local Counsel for Petitioners

**PETITIONERS' CERTIFICATE OF INTERESTED
PERSONS AND CORPORATE DISCLOSURE STATEMENT**

In compliance with Fed. R. App. P. 26.1, 11th Cir. R. 26.1-1, and 11th Cir. R. 26.1-3, the undersigned hereby certifies that the following persons and entities have an interest in the outcome of this case:

1.    Arnold, James, DEA Investigating Unit Chief;

2.    Barkley, Mary, former associate attorney at the firm of A. Brian Phillips, P.A. and former co-counsel for Petitioners;

3.    Berger, Wendy W., United States District Court Judge;

4.    Brett, Derek B., Attorney for Petitioners;

5.    Gaffney, Michael James, United States Attorney;

6.    Graumlich, James, DEA Agent;

7.    Hancock, Kevin P., Former Attorney for Respondents;

8.    Irick, Daniel C., United States Magistrate Judge;

9.    McDermott, William, DEA Assistant Administrator - Diversion Control Division;

10.   Moreno, Karen, DEA Agent;

11.   Phillips, Andrew Brian, attorney for Petitioners;

12.   Straus-Harris, Julie, United States Attorney;

13.   Sturgill, Lowell V., United States Attorney;

14.   Young, Christopher, Petitioner;

15.    Young, Verena, Officer and Member of Soul Quest Church of Mother Earth, Inc.

No publicly traded company or corporation has an interest in the outcome of this appeal.

<div style="display:flex">

*s/Derek B. Brett, Esq.*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email:dbb@burnsidelaw.net
Lead Counsel for Petitioners

s/A. Brian Phillips, Esq.
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Telecopier: (407) 872-0704
Email:
Brian.Phillips@Phillips-Law-Firm.com
Local Counsel for Petitioners

</div>

## STATEMENT REGARDING ORAL ARGUMENT

Petitioners SOUL QUEST CHURCH OF MOTHER EARTH, INC., and CHRISTOPHER YOUNG, respectfully request and maintain that this Court permit oral argument in this case pursuant to Fed.R.App.P. 34(a)(1).  Appellants believe that an oral presentation offering the opportunity to expand on both the intricate nature of the underlying factual predicate in this matter and the intricate legal analysis that flows from the same would afford the Court valuable aid in its decisional process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . C-1-C-2

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv-v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vi

ARGUMENT AND CITATIONS OF AUTHORITY . . . . . . . . . . . . . . . . . . . . . .1

    A.    The Respondents' Answer Brief Improperly Asserts Non-Existent Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        1.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        2.  Rebuttal to Appellee's Arguments. . . . . . . . . . . . . . . . . . . . . . . . . 2

            a.  The Controlled Substance Act Does Not Provide Respondents with Lawful Authority Over the Petitioners' Asserted Rights Under the RFRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            b.  The Controlled Substance Act's Specific Statutory Language Demonstrates Its Inapplicability to RFRA Claims. . . . . . . . 5

                i.     21 U.S.C. § 823 . . . . . . . . . . . . . . . . . . . . . . . . . 5

                ii.    21 U.S.C. §§ 871, 875 . . . . . . . . . . . . . . . . . . . .6

                iii.   21 U.S.C. § 882 . . . . . . . . . . . . . . . . . . . . . . . . 11

            c.  Respondents' Internal Directives Prohibit Its Purported "Final Agency Ruling" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Table of Citations

**Cases**                                         **Page(s)**

Arizona Yage Assembly v. Garland, 595 F. Supp. 3d 869 (D. Ariz. 2022) . . . . 8-10

Bostock v. Clayton County, Georgia, 140 S. Ct. 1731 (2020) . . . . . . . . . . . . . . . 11

Church of the Holy Light of the Queen v. Mukasey, 615 F. Supp. 2d 1210 (D. Or. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-11

Craig v. Carson, 449 F. Supp 385 (M.D. Fla. 1978) . . . . . . . . . . . . . . . . . . . . . 3-4

Elrod v. Burns, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Green Valley Investors, LLC v. Comm'r, 159 T.C. No. 5 (2022) . . . . . . . . . . . 7-8

KH Outdoor v. City of Trussville, 458 F.3d 1261 (11th Cir. 2006) . . . . . . . . . . . . 3

Lane v. USDA, 120 F.3d 106 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania, 140 S. Ct. 2367 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

Mann Construction, Inc. v. U.S., 27 F.4th 1138 (6th Cir. 2022) . . . . . . . . . . . . . . .7

Mathews v. Eldridge, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . 3

Marcello v. Bonds, 349 U.S. 302 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Our Lady of Guadalupe School v. Morrissey-Berru, 140 S. Ct. 2049 (2020). . . . . .13

**Statutes, Legislative History, and Rules**

5 U.S.C. § 553. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 13

5 U.S.C. § 559. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

21 U.S.C. § 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

21 U.S.C. § 823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

21 U.S.C. § 871 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

21 U.S.C. § 875 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

21 U.S.C. § 877 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 2, 8-10, 12, 14-15

21 U.S.C. § 878 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

21 U.S.C. § 880 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

21 U.S.C. § 882 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 2000bb . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4

**Other Authorities**

Office of the Attorney General, *Federal Protections for Religious Liberty*, (Oct. 6, 2017) https://web.archive.org/web/20220319150915https://www.justice.gov/opa/press-release/file/1001891/download . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

### STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The following reply brief and petition for review is made pursuant to 21 U.S.C. § 877 and <u>Fed.R.App.P.</u> Rule 15, wherein the Petitioners' petition this Court for review of the Drug Enforcement Authority's [hereinafter "DEA'] purported final agency action issued on April 16, 2021 [hereinafter "Agency Action"].

## ARGUMENT AND CITATIONS OF AUTHORITY

### A. THE RESPONDENTS' ANSWER BRIEF IMPROPERLY ASSERTS NON-EXISTENT AUTHORITY.

#### 1.    Introduction

The Respondents, in their Answer Brief, engage in the same prevarication used throughout the underlying litigation: asserting that they possess lawful authority to act where none exists.  In the Answer Brief, the focal point of the Respondents' arguments is that 21 U.S.C. § 877 (hereinafter, "Section 877"), is applicable to somehow permitting their assertion of authority.

However, as – in measurable part – already discussed in the Petitioner's Petition for Review, the Respondents lack any lawful authority to be able to assert the applicability of Section 877 over matters pertaining to the rights granted to Petitioners pursuant to the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* (hereinafter, "RFRA").  The defects in the Respondents' arguments are found directly within the text of RFRA; the text of subchapter which includes Section 877; the abject, dysfunctional failure of the Respondents to conform to the requirements of the Administrative Procedure Act, 5 U.S.C. § 553, *et seq.*; and the failure by Respondents to adhere to their own departmental policies.

In short, just because the Respondents keep idly repeating the mantra of

authority – regardless of however many times – simply does not make it so.

## 2.    Rebuttal to Appellee's Arguments

In the context of this Reply Brief, it is appropriate to simply provide a series of point-by-point rebuttals to demonstrate the dubious nature of the Respondents' varied assertions.  Again, many of these points are already rebutted in the Initial Brief.  However, some trigger further discussion, herein.

### a.    The Controlled Substance Act Does Not Provide Respondents with Lawful Authority Over the Petitioners' Asserted Rights Under the RFRA.

First, the Respondents erroneously assert empowerment pursuant to the "Drug Abuse Prevention and Control" provisions of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*  Section 877, the crux of the Respondents' assertions of authority, is found within this subchapter (hereinafter, referred to as "the Subchapter").

By doing so, it seeks to upend the controlling authority presented under the RFRA, which specifically provides, at 42 U.S.C. § 2000bb-1(c), the exclusive remedy for assertions under RFRA requires an aggrieved individual or institution to institute "a judicial proceeding and obtain appropriate relief against the government."  In other words, judicial authority pursuant to Article III of the United States Constitution is deemed by Congress to be exclusive.

2

As the Petitioners – who were pursuing their protected religious freedoms by engaging in religious sacraments – were threatened with the use of the Respondents' criminal prosecutorial authority in correspondence dated August 1, 2016, unless it filed an "exemption application," Petitioner Soul Quest Church of Mother Earth, Inc. (hereinafter, "Soul Quest Church") initially succumbed to the Respondents' threats of authority.

However, upon filing an application for "religious exemption" (one predicated entirely upon a 1½ page interim and non-binding "Guidance"), Soul Quest Church waited approximately 3½ years for a response from the Respondents, never receiving any response, even to continuous inquiries by its legal counsel. Certainly, there is a necessity attached to the reasonable disposition of issues impacting critical statutory and constitutional freedoms. *Mathews v. Eldridge*, 424 U.S. 319, 341 (1976) ("the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process"); *KH Outdoor v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *see also Craig v.*

3

*Carson*, 449 F. Supp 385, 395 (M.D. Fla. 1978) ("[s]ome form of fair and impartial hearing" when someone has been deprived of their property "must be provided within a prompt and reasonable time period").

Obviously, when the deprivation entails the loss of defined religious liberties – as in the case-at-bar – the Respondents' lack of any defined process disqualifies it from reliance on the notion of a valid and lawful process as anticipated under the APA.   This delay, this inaction by Respondents necessitated the Petitioners filing their lawsuit in the United States District Court for the Middle District of Florida, asserting – in part – their rights under RFRA, as well as the Free Exercise Clause of the First Amendment.   Even if the Court of Appeals, herein, determines that there was vested authority with the Respondents – one which the Petitioners would emphatically continue to contest – the act of filing the lawsuit asserting RFRA grounds would divest the Respondents of any such authority.

Adjoining this authority is the RFRA's admonition, under 42 U.S.C. § 2000bb-3(a) that its scope "applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993."   Likewise, this interpretation is reaffirmed by the plain language of 42 U.S.C. § 2000bb-3(b) and (c), respectively titled "Rule of construction" and "Religious belief unaffected," with the latter specifically prohibiting any

4

government entity from burdening any religious belief.

      b.    <u>The Controlled Substance Act's Specific Statutory Language Demonstrates Its Inapplicability to RFRA Claims.</u>

In developing an understanding of the scope of the Respondents' authority under the Controlled Substance Act's applicable Subchapter – and how such authority does not and cannot extend to cases invoking the rights articulated under the RFRA – a review must also include the other, related sections of the Subchapter.

      *i.*    *21 U.S.C. § 823*

Title 21 U.S.C. § 823(a)(1), defines the scope of the Respondents' authority as being limited to "manufacturers of controlled substances in schedule I or II if there is a determination of "public interest." This authority, though, is specifically limited to determinations rendered for "legitimate medical, scientific, research or industrial channels."

In other words, the Subchapter, which was almost entirely promulgated in the early-1970s, possesses no component applicable to the religious uses of alleged controlled substances. Congress has never authorized such authority; Congress has specifically and exclusively delegated such responsibilities to the Judiciary; and the Respondents – whose duties are focused upon law enforcement and prosecution of drug crimes – is decidedly the worst authority to render determinations regarding the

sincerity of religious practices.[1]

> ii.    *21 U.S.C. §§ 871, 875*

There's more:  21 U.S.C. § 871(b), states that "[t]he Attorney General may promulgate and enforce any rules, regulation, and procedures which he may deem necessary and appropriate for the efficient execution of his functions under this subchapter."  And yet, the Attorney General never promulgated *anything* pertaining to RFRA exemptions.  The entire thrust of this section anticipates that the Attorney General will comply with the Administrative Procedure Act ("APA").  However, in this instance such was never done – despite five (5), separate Presidential Administrations, and nine (9) different Attorneys General.

This is further supported by 21 U.S.C. § 875, titled "Administrative hearings," and which states in its subsection (b) that "[e]xcept as otherwise provided in this

---

[1]   Indeed, by the terms of 21 U.S.C. § 878(a)(5), the scope of authority of "[a]ny officer or employee of the Drug Enforcement Administration … designated by the Attorney General may … perform *such other law enforcement duties* as the Attorney General may designate."  First, this language establishes that the Respondents operate in an exclusively law enforcement capacity; this is further bolstered by 21 U.S.C § 880(2), requiring – in relevant part – that an "inspector" possess "appropriate credentials" and presentation of "written notice of his inspection authority."  Second, any other interpretation would directly conflict with the terms set by Congress in RFRA.  Third, as further discussed in this Reply Brief, any other interpretation would conflict with internal directives imposed by the Attorney General.  In short, there is no authority whatsoever for the Respondents to render any RFRA determinations, *especially* on the subject of religious sincerity.

subchapter, notice shall be given and hearings shall be conducted *under appropriate procedures of subchapter II of chapter 5 of title 5.*"   (Emphasis added).   This language reaffirms the Respondents' duties to comply with the terms of the APA.  It also reflects the wholesale failure of the Respondents to comply with the APA.

The APA limits the ability of a subsequent statute to modify or supersede its procedures "except to the extent that it does so expressly." 5 U.S.C. § 559.  Consistent with this limiting text, appellate courts have held that 5 U.S.C. § 559 "forbids amendment of the APA by implication." *Lane v. USDA*, 120 F.3d 106, 110 (8th Cir. 1997).  "Exemptions from the terms of the Administrative Procedure Act are not lightly to be presumed in view of the statement in [5 U.S.C. § 559] that modifications must be express." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955).

Consider that, if the Respondents genuinely believed that it possessed lawful authority, it would have promulgated proposed regulations, and subjected them to the APA regime including, but not limited to, subjecting such proposed regulations to public notice and hearing requirements, before submitting them to Congress for review and ratification. *See Mann Construction, Inc. v. U.S.*, 27 F.4th 1138 (6th Cir. 2022) (IRS notice deemed invalid for failure to comply with the APA's tenets); *Green Valley Investors, LLC v. Comm'r*, 159 T.C. No. 5 (2022) (overruling IRS

7

notice as invalid for its failure to comply with APA).

The only method by which the Respondents can act – when there is a clear invocation by an individual or entity of RFRA protections (something which DEA apparently recognized in their August 2016, threat letter, wherein Petitioner was confronted with the imminent prospect of criminal arrest and prosecution) – is if they are specifically provided such authority by Congress. No such authority exists; thus, DEA cannot then blurt out the phrase "final administrative ruling" and then attempt to cloak themselves in § 877. Section 877 simply does not apply to the current instance of unbridled executive overreach – overreach which breaches Congressional RFRA mandates, breaches the APA, and violates the separation of powers doctrine.

The Respondents never did so. Instead, over 15+ years ago, the Respondents crafted a 1½ page "guidance." This "guidance" openly identifies itself as both "non-binding" and "interim." This "guidance" lacks any detail, any standards for ensuring any uniform standards for measurement of any bases for issuance of an exemption. The Respondents have never produced any such standards, as none exist.

Indeed, in contradiction to the Respondents' arguments in its Brief, the Respondents have argued in a recent case that the "guidance" alone actually constitutes a "final ruling," in and of itself. In *Arizona Yage Assembly v. Garland*,

595 F. Supp. 3d 869, 881-82 (D. Ariz. 2022), the District Court overruled the

Respondent Garland's contention, and expanded further stating that

> [c]ontrary to the Federal Defendants' argument, original
> jurisdiction over Plaintiffs' RFRA claim is not vested the
> United States Courts of Appeals. Although courts have
> held original jurisdiction for challenges to CSA scheduling
> decisions exists only in the courts of appeals pursuant to
> 21 U.S.C. § 877, *see, e.g.*, *John Doe, Inc.*, 484 F.3d at 568;
> *Nation v. Trump*, 818 F.App'x 678, 681 (9th Cir. 2020),
> the jurisdictional limitation has not been applied in cases
> seeking a CSA exemption pursuant to RFRA. Section 877
> applies only to "final decision[s] of the Attorney General."
> *See* 21 U.S.C. § 877; *Advanced Integrative Med. Sci. Inst.,*
> *PLLC v. Garland*, 24 F.4th 1249, 1252 (9th Cir. 2022).
> The Federal Defendants argue that the decision to
> promulgate the Guidance constituted a final decision of
> the Attorney General. (Doc. 112 at 13). But it does not
> matter whether the Guidance is a final decision that
> triggers § 877 because Plaintiffs do not have standing to
> challenge the Guidance. On the claim for which Plaintiffs
> may have standing—the RFRA challenge seeking a CSA
> exemption—there has been no decision of the Attorney
> General that could trigger § 877's jurisdictional limitation.
> *Cf. id.* at 1260 (holding a letter sent by the DEA that "did
> not grant or deny any request, nor impose any legal
> consequence" did not constitute a final decision of the
> Attorney General).

*Id.* (Emphasis added) (footnote citations omitted).

Footnote 9, associated with the above *Arizona Yage Assembly* excerpt, cracks

apart the notion that § 877 blocks the ability of the District Court to address the

Petitioners' RFRA challenge, herein, stating that

[f]or example, in *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006), the Supreme Court upheld a preliminary injunction issued by a district court requiring the federal government to provide a Christian Spiritist sect a CSA exemption so that the sect could import and use ayahuasca. *See id.* at 437, 126 S.Ct. 1211. And in *Church of the Holy Light of the Queen v. Mukasey*, 615 F.Supp.2d 1210 (D. Or. 2009), a district court issued a permanent injunction permitting the plaintiffs, followers of the Brazilian Santo Daime religion, to import and use ayahuasca. *Id.* at 1221. Although the Ninth Circuit subsequently vacated the injunction as overbroad, it did not hold the district court was without jurisdiction to consider the challenge pursuant to § 877. *See Church of the Holy Light of the Queen v. Holder*, 443 F.App'x 302 (9th Cir. 2011). Like in *O Centro* or *Church of the Holy Light*, Plaintiffs seek a religious exemption for themselves and their alleged congregants, not a rescheduling of DMT.

*Arizona Yage Assembly,* 595 F. Supp. 3d at 882 n.9.

Seventeen (17) years after the Supreme Court's precedent in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (hereinafter, "*UDV*"), and fourteen (14) years after suffering another defeat for its unlawful efforts to abridge the rights articulated under the RFRA in *Church of the Holy Light of the Queen v. Mukasey*, 615 F. Supp. 2d 1210 (D. Or. 2009) (hereinafter, "*CHLQ*"), the Respondents – who profess to know of no case where it ever granted any

10

"exemption" under its *ad hoc* and *ultra vires* non-binding, interim "process" – assert some form of mystical, non-existent authority.[2]

### iii.    21 U.S.C. § 882

Last, 21 U.S.C. § 882(5), titled "Injunctions" would otherwise directly conflict with the RFRA's plain language and the specified intent of Congress. Subsection 5 removes any "private right of action." In other words, the Respondents are claiming hegemony over any other legal authority including the "super-statute" that is RFRA. *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1754 (2020). The Respondents arguments lack any rational basis, especially within the specific context of the RFRA-predicated Petitioners' matter.

c.    Respondents' Internal Directives Prohibit Its Purported "Final Agency Ruling"

Further demonstrating the incongruity of the Respondents' arguments is that internal Department of Justice directives – consistent with RFRA, no less – specifically prohibit the Respondents from doing exactly what they did in issuing

---

[2] *See* https://www.ca11.uscourts.gov/system/files_force/oral_argument_recordings/22-11072.mp3?download=1, at 19:02-19:40 (where, in response to a question from the appellate panel, Respondents were unaware of any instance where an RFRA exemption was issued under its "process," and instead deflected to two instances where churches were forced to take action through the District Courts – *UDV* and *CHLQ, supra.*)

11

their suspect "final agency ruling" in the case-at bar.

Aside from the facts already elucidated, both below and in the Petitioners' Petition for Review, reflecting that the Respondents used the subterfuge of negotiating case resolution with the Petitioners, the October 2017, Memorandum of then-Attorney General Sessions, titled "Federal Law Protections for Religious Liberty," specifically prohibited the Respondents from second-guessing the sincerity of an individual or group's religious beliefs. *Federal Law Protections for Religious Liberty*, U.S. Attorney General Jeff Sessions, October 6, 2017, at 4 (hereinafter, "2017 Sessions Memorandum") ("… government is not competent to assess the reasonableness of such lines drawn, nor would it be appropriate for government to do so."). (Emphasis added).

Yet, this executive proscription once again shines the light on the fundamental defect in the Respondents' assertions of authority under the CSA: if the Respondents are correct (which Petitioners vigorously contest), then their own executive authority specifically denies them the ability to make rulings that would impact RFRA claims and, thus, bring it under any CSA umbrella via Section 877.

The principle articulated by the 2017 Sessions Memorandum is reinforced by the Supreme Court's decision in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) (hereinafter, "*Little Sisters*"), which the

12

Respondents continuously attempt to recast.  Of critical importance, is the directive from the Court that the Government *cannot* make determinations of religious sincerity under RFRA.  *Id.* at 2380 (mandating the acceptance of sincerely-held beliefs of religious entities; *see also Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) ("state interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or event to influence such matters would constitute one of the central attributes of an establishment of religion").

*Little Sisters* is about the ability of the Government to make and enact rules – something which never occurred in the case-at-bar.  The case is about how federal agencies come within the purview of the APA through an invocation of the 'good-cause exception' in order to "dispense with notice and comment and promulgate an [interim final rule] that carries the force of law.  *Little Sisters*, 140 S. Ct. at 2374 (citing 5 U.S.C. § 553(b)(3)(B)).  Yet, the Respondents have never asserted any 'good-cause exception.'  Nor could they effectively do so, considering the statutory rights – being tied directly into fundamental constitutional protections – encompassed by the plain language of RFRA.

13

## **CONCLUSION**

Obviously, an administrative review process must be predicated upon *lawful authority*, rather than the mere assertion of such. The crux of the Petition for Review is about the predicate issue of whether the Respondents possessed any authority under law to make its "determination."

The Petitioners have clearly demonstrated the legal untenability of the Respondents' actions. The Petitioners have demonstrated that – despite the efforts of the Respondents to attempt to contort the law to somehow fit its contentions, there exists a cohesion between all three (3) branches of Government strictly prohibiting Respondents from attempting to engage in RFRA determinations. Consequently,

**REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK**

14

Section 877 has no applicability to this matter.  Any efforts by Respondents – using

legally inconsistent arguments and inapplicable authority – to have the federal courts

brand their unlawful, *ad hoc* and *ultra vires* actions as legitimate must be rejected.

Dated this 17th day of February 2023.


s/Derek B. Brett, Esq.               s/A. Brian Phillips, Esq.    ___
**DEREK B. BRETT, ESQ.**          **A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0090750               Fla. Bar No. 0067113
**BURNSIDE LAW GROUP**          **A. BRIAN PHILLIPS, P.A.**
202 Brownlow Avenue, Suite 400     912 Highland Avenue
Dartmouth, NS, Canada B3B 1T5      Orlando, Florida 32803
Telephone: (902) 468-3066          Telephone: (407) 872-0777
Telecopier: (902) 468-4803         Telecopier: (407) 872-0704
Email: dbb@burnsidelaw.net         Email:
Lead Counsel for Petitioners       brian.phillips@phillips-law-firm.com
                                   Local Counsel for Petitioners

15

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation, in accordance with Fed.R.App.P. 32(a)(7)(B), because this brief contains 3015 words, excluding the parts of the motion exempted by Fed.R.App.P. 32(f).

*s/Derek B. Brett, Esq.*
**DEREK B. BRETT, ESQ.**
Fla. Bar No. 0090750
**BURNSIDE LAW GROUP**
202 Brownlow Avenue, Suite 400
Dartmouth, NS, Canada B3B 1T5
Telephone: (902) 468-3066
Telecopier: (902) 468-4803
Email:dbb@burnsidelaw.net
Lead Counsel for Petitioners

*s/A. Brian Phillips, Esq.*
**A. BRIAN PHILLIPS, ESQ.**
Fla. Bar No. 0067113
**A. BRIAN PHILLIPS, P.A.**
912 Highland Avenue
Orlando, Florida 32803
Telephone: (407) 872-0777
Telecopier: (407) 872-0704
Email:
Brian.Phillips@Phillips-Law-Firm.com
Local Counsel for Petitioners


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing have been brief was filed using CM/ECF that will automatically send a copy of this document to Assistant United States Attorney Lowell V. Sturgill.

*s/A. Brian Phillips , Esq.*
**A. BRIAN PHILLIPS, ESQ.**
Local Counsel for Petitioners

16